UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(FT LAUDERDALE DIVISION)

CASE NO. 0:19-cv-61430- MORENO/Seltzer

ELIZABETH E. BELIN, *et al.*,

       Plaintiffs,

v.

HEALTH INSURANCE INNOVATIONS, INC.,
*et al.*,

       Defendants.

_____/

**DEFENDANTS HEALTH INSURANCE INNOVATIONS, INC., HEALTH PLAN
INTERMEDIARIES HOLDINGS, LLC, AND MICHAEL KOSLOSKE'S REPLY IN
SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT AND
TO STRIKE AND SUPPORTING MEMORANDUM**

    Defendants, Health Insurance Innovations, Inc. ("HII"), Health Plan Intermediaries Holdings, LLC ("HPIH") and Michael Kosloske ("Kosloske"), hereby submit this Reply in support of Defendants' Motion to Dismiss Amended Class Action Complaint and to Strike (the "Motion to Dismiss") (D.E. 27), and in opposition to Plaintiffs' Response (D.E. 32).

**SUPPORTING MEMORANDUM**

**I.    Introduction.**

    In their Response, Plaintiffs fail to articulate any cogent reason why Defendants' Motion to Dismiss should not be granted. The Amended Complaint is a confusing amalgamation of parties, nonparties, and boilerplate allegations in which 54 pages and 229 lengthy paragraphs are wholly incorporated into six separate counts, each of which are comprised of distinct legal elements. By repeating in their Response the formalistic labels and boilerplate terms in this prolix pleading, Plaintiffs do not make the Amended Complaint any less obscure. It is clear, however, that absent from the Amended Complaint are the requisite factual allegations necessary to satisfy the particularity and plausibility pleading standards and to provide each Defendant fair notice of the grounds upon which claims rest. Indeed, Plaintiffs concede that HII and HPIH are separate legal entities, yet are collectively referred to as "HII Defendants." (D.E. 32, p.5). For Kosloske, Plaintiffs' allegations are limited to his role as a founder and role as an executive.

The Amended Complaint is a flawed attempt to manufacture a tagalong case behind an FTC enforcement proceeding against a marketing company involving products issued by insurance carriers. Filings in the FTC proceeding, however, demonstrate that the marketing company—Simple Health—ignored HII disclosure requirements and misled HII about its sales practices. *See* Memorandum in Support of Plaintiff's Ex Parte Motion for Temporary Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue, Exhibit 11 at 115, *FTC v. Simple Health Plans, LLC, et al.*, No. 18-cv-62593 (S.D. Fla. Oct. 29, 2018), ECF 12-11.

## II.    Argument.

### A.    The Amended Complaint Should be Dismissed as a Shotgun Pleading

Plaintiffs cite *JPMorgan Chase Bank, N.A. v. Hayhurst Mortgage, Inc.*, 2010 WL 3952005 (S.D. Fla. Oct. 8, 2010) and S.*E.C. v. Levin*, 2013 WL 594736 (S.D. Fla. Feb. 14, 2013). As noted by Plaintiffs, the complaint in each one of these cases contained "counts similar in nature." (D.E. 32, p.5). This is precisely what distinguishes those cases from the prolix pleading filed by Plaintiffs. In *Levin*, the complaint contained six related counts for violations of the federal securities laws. 2013 WL 594736, at *3. The court dismissed counts two through six for failure to satisfy Rule 9(b)'s particularity standard. *Id.*, at *8. Each of the 49 paragraphs in the "background section" was incorporated into six counts for securities violations. The court observed that "while it may not be ideal for Plaintiff to incorporate by reference forty-nine paragraphs, Count I is not rendered invalid by Plaintiff's having done so." *Id.*, at *9. However, the court directed the S.E.C. to amend the complaint and strike impertinent allegations "which have little or no factual relevance to" that securities claim. *Id*. The court did not address the propriety of incorporating the "background section" into the other five related securities counts because each one had been previously dismissed under Rule 9(b).

In *JP Morgan*, the amended complaint "parsed into separate counts each underlying loan" as required by the court in a prior order. Without reference to the number of paragraphs, the court observed that the bank "may incorporate its general allegations into each separate count *without automatically* transforming the Amended Complaint into an impermissible shotgun pleading." 2010 WL 3952005, at *1 (emphasis supplied). Here, the Amended Complaint contains six separate federal RICO and common law claims, each with very distinct legal elements. Thus, the impermissible prolix pleading filed by Plaintiffs is fatally similar to the one

dismissed in *Al-Rayes v. Willingham*, 2016 WL 6080826 (M.D. Fla. Aug. 15, 2016), a decision Plaintiffs overlooked in their Response.

As in this case, the complaint in *Al-Rayes* contained multiple counts for RICO, common law and state statutory claims, all with distinct legal elements. The court dismissed the complaint as a shotgun pleading which incorporated 202 paragraphs into each count. *Id.*, at *3. The court noted that the amended complaint "begins by reciting a laundry list of detailed allegations of misconduct, then brings numerous claims based on all of these allegations collectively, and concludes by seeking numerous types of relief, all without sufficiently tying specific allegations to specific claims that request specific relief." *Id*. The court observed that this impermissible pleading style results in the incorporation of irrelevant allegations into many counts, confusion as to which allegations are primarily relied upon in each count, and leaves the court with the onerous task of parsing through an unwieldly set of allegations in search of any support for the legal elements of each claim against each defendant. *Id.*, at *3-4.

### B.    Count I Should be Dismissed as Plaintiffs Fail to Adequately Allege RICO Causation or Standing

Plaintiff cannot satisfy RICO's standing and causation requirements with conclusory allegations that lack any plausible factual detail to show participation in any conduct attributable to any of the three separate Defendants. The Amended Complaint is devoid of any specific facts to establish that Defendants had actual knowledge that misleading sales scripts were used by Simple Health and Nationwide or actively participated in creating and distributing the sale scripts.

Plaintiffs' general allegations that Nationwide used misleading scripts also lack plausible factual support. Plaintiffs' case is predicated on information obtained from the FTC proceeding, and Nationwide is not a defendant in that matter. The language contained in the scripts, which are cited throughout the Amended Complaint, relate to Simple Health, not Nationwide. (D.E. 18 ¶¶62-93). Plaintiffs do not attach as an exhibit to the Amended Complaint a single script either company used. Plaintiffs simply allege "Nationwide Health used a similar script, requiring its sales agents to adhere to the script or face disciplinary action." *Id.* at ¶86. Without any plausible allegations that Defendants actually prepared, approved, and distributed fraudulent scripts and intentionally participated in the scheme to defraud, Plaintiffs cannot satisfy causation or standing to pursue RICO claims against these Defendants.

Relying on *United States v. Hasson*, 333 F. 3d 1264, 1272-73 (11th Cir. 2003), Plaintiffs argue it makes no difference whether the predicate acts, i.e. the mailing and emailing of membership cards and fulfilment documentation, contained misrepresentations. Plaintiffs' reliance on *Hasson* is misplaced because *Hasson* requires actual material misrepresentations to be made by the defendant for the purpose of executing the scheme to defraud. In observing that "[t]o violate the wire fraud statute, it is not necessary that the transmitted information include any misrepresentation," the *Hasson* court noted that the wire transmissions were part of defendant's scheme and misrepresentations which induced purchases of jewelry. *Id.* at 1272-73.

Here, Plaintiffs fail to plead with particularity how any of Defendants participated in the fraud and the specific misrepresentations made for the purpose of executing the scheme to defraud. Plaintiffs merely rest upon boilerplate allegations such as Defendants "reviewed, edited and tacitly or expressly approved the fraudulent scripts used by Simple Health and Nationwide Health to sell the products." (D.E. 18 ¶3). With respect to the allegations regarding access to the HII online platform to quote and sell various products from insurance carriers (D.E. 18 ¶190), Simple Health and Nationwide's access to Defendants' online platform to sell insurance products that were improperly marketed by them does not plausibly infer that any of the Defendants had actual knowledge of this conduct or shared Simple Health and Nationwide's fraudulent purpose. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1354 (S.D. Fla. 2016) (in affirming the dismissal of a RICO complaint for failure to allege sufficiently proximate cause and existence of a RICO enterprise, the Eleventh Circuit noted that "Spirit's alleged misuse of a software platform does not suggest that the maker of that platform knew anything of, let alone shared, Spirit's allegedly fraudulent purpose").

### C.   Count I Should be Dismissed as Plaintiffs Fail to Plead Plausible Allegations of Fraud and a Pattern of Racketeering with Particularity

"An essential element of any RICO claim is a 'pattern of racketeering activity.'" *Palm Beach County Envtl. Coal. v. State*, 651 F. Supp. 2d 1328, 1349-50 (S.D. Fla. 2009) (citation omitted). Plaintiffs must satisfy Rule 9(b)'s heightened pleading standard to show the predicate racketeering acts and each Defendant's participation in the fraud. *Lawrie v. Ginn Dev. Co., LLC*, 656 F. App'x 464, 468 (11th Cir. 2016); *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). Plaintiffs have not, as they suggest, alleged fraud with specificity as to the misrepresentations made to Plaintiffs during the marketing calls. Absent from the Amended

Complaint are plausible and particularized allegations detailing Defendants' role or participation in any scheme to defraud, including the time, place, manner, and method that Defendants created, approved, and distributed the fraudulent sales scripts to Simple Health and Nationwide.

As Plaintiffs note, there may be "alternative means" to satisfy Rule 9(b)'s heightened particularity pleading standard. *See In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1347 (S.D. Fla. 2001) (dismissing RICO claims because even with the alternative means the particularity standard was not met). In this case, however, Plaintiffs offer no alternative means and fail to allege any particularized facts plausibly inferring direct participation by any of the Defendants in a pattern of racketeering. Generalized allegations that HII monitored customer service calls, collected monthly premiums, distributed commissions, and allowed Simple Health and Nationwide access to the online platform to quote and sell products are factually neutral under the *Twombly* standard. Moreover, Plaintiffs' conclusory statement that Defendants installed representatives at call centers fails for the same reasons. Plaintiffs cannot plausibly allege the identity of representatives, the dates and specific recordings monitored, that those recordings included the specific fraudulent scripts, and that these representatives did nothing about it.

The relationship between HII and Simple Health and Nationwide is based on commercial, arm's-length transactions. Kosloske was the founder and former executive. That Kosloske recruited Simple Health and Nationwide provides no plausible inference of wrongdoing. Plaintiffs ignore that the services HII provided to Simple Health and Nationwide were part of normal business practices and are part of conducting their regular business affairs. Plaintiffs' allegation that Defendants "bankrolled" the enterprise misses the mark as well. Providing advanced commissions to independent sales agencies is commonplace in the insurance industry to enable insurance agencies to get off the ground and commence operations. *See Bell Atlantic v. Twombly*, 550 S. Ct. 1955, 1972-74 (the plaintiffs' complaint did not plausibly suggest an illegal conspiracy by merely alleging parallel conduct – because such parallel conduct was more likely explained by lawful, independent market behavior).

**D.**   **Count I Should be Dismissed as Plaintiffs' Fail to Plead and Association-In-Fact Separate from Defendants' Business**

Plaintiffs ignore Defendants' argument that the Amended Complaint fails to contain specific allegations of the alleged enterprise structure for making decisions, mechanisms for controlling and directing the affairs of the group, or coordination in furtherance of a common

purpose. *See Ray*, 836 F. 3d 1340, 1352 (S.D. Fla. 2016) (association-in-fact requires "evidence of an ongoing organization, formal or informal, and … evidence that the various associates function as a continuing unit") (quotation omitted). Review of the portions of the Amended Complaint referenced by Plaintiffs underscores the absence of plausible allegations of an association-in-fact enterprise. Paragraph 44 of the Amended Complaint (which is repeated in paragraph 207), formalistically alludes to a wide cast of entities and individuals (including employees, independent contractors, third-party subagents, and member associations), all of whom "created, operated and managed an associated-in-fact 'enterprise,'" with the purpose to "deceptively maximize profitability" through "cheap and relatively worthless products."

As for the footnote reference to Kosloske, he is generally described in paragraphs 41, 211 and 212 as a founder who, at some unspecific time, approved products, recruited agents, and developed distribution channels. Without any further fact-specific context, Kosloske is conclusorily alleged to have participated in the enterprise. The Amended Complaint contains no more than generalized allegations listing a variety of entities and activities under the formalistic label of an "associated-in-fact enterprise." Yet, the Amended Complaint is bereft of plausible details regarding the structural components of the enterprise, such as decision-making, control and direction of the affairs of the group, and coordination in furtherance of a common purpose. There is simply an absence of content-specific averments to show the existence of a RICO enterprise distinct from business relationships.

The FTC proceeding challenges whether insurance products were properly marketed by Simple Health. Nonetheless, it is an implausible leap from issues regarding third parties' marketing of products issued by insurance carriers and benefit providers to the conclusory assertion that there was a RICO enterprise to "deceptively maximize profitability" through "worthless products." *In re Managed Care Litig.*, 298 F. Supp. 2d 1259 (S.D. Fla. 2003) is inapposite because the plaintiffs plausibly described in detail the enterprise's operation and control by alleging that defendants played a part in directing the affairs of the enterprise by developing guidelines and standards to use as criteria to deny claims, hiring others to develop automated systems for manipulating claims, creating MedUnite as a common entry point for physician data, and approving on a CEO-by-CEO basis the joint actions of the Coalition for Quality Healthcare. *Id.* at 1277. Here, Plaintiffs implausibly rely upon business-to-business

conduct bootstrapped to formalistic labels in an unsuccessful attempt to plead an enterprise distinct from the business of HII.

>    **E.**    **Count I Should be Dismissed as Plaintiffs Fail to Plead Participation in the Affairs of the Enterprise**

Plaintiffs also fail to plausibly allege that Defendants conducted or participated in the conduct of the enterprise's affairs. Section 1962(c) imposes RICO liability on a defendant conducting or participating in the conduct of the enterprise's affairs, not just their own affairs. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). HII had contractual relationships with Simple Health and Nationwide to market insurance products for carriers. The fact that HII, as part of its normal business practice, sent compliance personnel to audit Simple Health and Nationwide's operations does not rise to the level of participating in conduct of the enterprise's affairs. RICO requires that defendants must exercise some degree of direction of the enterprise as well as an element of control. The allegations in the Amended Complaint fall woefully short of plausibly establishing the facts supporting the degree of direction and control any of the Defendants had over any RICO enterprise.

>    **F.**    **The RICO § 1962(d) Conspiracy and the RICO Aiding and Abetting Claims in Counts II and III Should be Dismissed**

Plaintiffs do not attempt to defend the pleading deficiencies fatal to the RICO conspiracy and aiding and abetting claims. Instead, Plaintiffs incorrectly suggest that conspiracies may be generally inferred. Reliance on *In re Managed Care Litig.*, 298 F. Supp. 2d 1259 (S.D. Fla. 2003) does not cure Plaintiffs' fatal pleading defect. In that case, the court previously "found that the Plaintiffs had adequately pled a conspiracy" but dismissed the underlying RICO claim for failure to satisfy "the enterprise pleading requirements." *Id*. at 1281. Notably, the court in *In re Managed Care Litig.* acknowledged that "[t]he existence of an agreement to further illegal acts that is the key." *Id.*

The Eleventh Circuit decision in *American Dental Ass'n* supports the dismissal of Plaintiffs' conspiracy claim because once the boilerplate and conclusory allegations are removed, parallel conduct accompanied by bare allegations of a conspiracy do not plausibly suggest the existence of a conspiracy. 605 F.3d at 1294-95. Nothing in the Amended Complaint plausibly infers that "Defendants have acted in any way inconsistent with the independent pursuit of their own economic self-interest." *Id*. at 1295. The conspiracy claim in this case should be dismissed as it was in *American Dental Ass'n* insofar as "Defendants' parallel conduct is equally indicative

of rational independent action as it is concerted, illegitimate conduct and thus 'stays in neutral territory.'" *Id.* (citation omitted). For these same reasons, Plaintiffs' claim for aiding and abetting a RICO claim must fail. Beyond the conclusory allegations, the Amended Complaint lacks plausible allegations of fact to infer a claim for aiding and abetting.

> **G.     Counts IV and V for Aiding and Abetting Fraud and Fiduciary Duty Should be Dismissed**

The claims for aiding and abetting are defective given that Plaintiffs have not alleged plausible facts that Defendants had actual knowledge or substantially assisted the primary wrongdoer. *Lamm v. State St. Bank & Trust Co.*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012) (allegations that bank's disregard of "obvious red flags" such as atypical and non-routine banking transactions insufficient to establish conscious awareness of wrongdoing to maintain an aiding and abetting cause of action). Without specific plausible allegations of fact, Plaintiffs generally assert that HII and HPIH had actual knowledge of the scheme by providing training and compliance monitoring, reviewing and editing the sales scripts, monitoring calls, reviewing call transcripts and acting as post-closing service agent. Beyond these boilerplate allegations regarding typical business entities, the Amended Complaint lacks any plausible allegations that HII or HPIH actually reviewed a fraudulent script, monitored a call where misrepresentations where made, or had actual knowledge of the scheme to defraud. In *Lamm,* the court dismissed the aiding and abetting breach of fiduciary duty and fraud claims because "[t]hough Plaintiff has generally alleged actual knowledge, the factual allegations at most establish that [the bank] should have known of the underlying breaches." *Id.* at 1332-33. Here, these allegations do not even plausibly infer that Defendants should have known about any misrepresentations, let alone satisfy the plausibility standard for actual knowledge.

Plaintiffs fail to address *Johnson v. Catamaran Health Solutions, LLC*, 687 F. App'x. 825, 831 (11th Cir. 2011) (affirming the dismissal of an aiding and abetting breach of fiduciary claim where plaintiffs alleged that the insurance broker solicited, marketed, and collected premiums and administered the plan). Instead, Plaintiffs merely allege certain representations were made during one marketing and sales phone call that created a special relationship with a sales agent. A fiduciary duty cannot exist based on this limited interaction.

Plaintiffs cite *Tiara Condo. Ass'n, Inc. v. Marsh, USA, Inc.*, 991 F. Supp. 2d 1271, 1281-82 (11th Cir. 2014) for the proposition that "[w]hether an insurance broker shared a 'special

relationship' with its client is a question of fact for the jury" (citation omitted). But *Tiara* did not address whether a plaintiff had satisfied the pleading requirements to state a plausible claim for a special relationship. Instead, in *Tiara*, the court determined that there were factual issues to preclude summary judgment on the issue of whether an insurance broker had a special relationship with its client. *Id.* (long-term relationship with the insurance broker, reliance on the insurance broker to keep it appraised of its property insurance needs, regular participation in the association's insurance committee meetings to offer counsel and advice on insurance needs, and the insurance broker's role as the association's exclusive insurance and risk financing advisor and insurance broker).

H. **Count V for Unjust Enrichment Should be Dismissed**

Plaintiffs refer to HII and HPIH collectively as the "HII Defendants" throughout the Amended Complaint. In the Response, Plaintiffs assert that HII is a holding company whose sole asset is ownership of 100% of HPIH. The corporate structure and parent/subsidiary relationship between the parties undermines Plaintiffs' claim that Plaintiffs conferred a direct benefit to both HII and HPIH. *See Extraordinary Title Servs., LLC v. Florida Power & Light Co.*, 1 So.3d 400, 404 (Fla. 3d DCA 2009) (rejecting unjust enrichment claim and holding that a plaintiffs payments to a defendant's subsidiary company did not constitute a direct benefit to defendant even though defendant ultimately retained a portion of the payments).

Plaintiffs do not cite to any authority that supports their contention that retaining a portion of fees and premiums is not an indirect benefit. Indirect benefits cannot serve as the basis for an unjust enrichment claim. *Harvey v. Florida Health Scis. Ctr., Inc.*, 728 F. App'x 937, 946-47 (11th Cir. 2018) (indirect benefit does not support first element of unjust enrichment). Instead, Plaintiffs merely state that whether a party did or did not receive a direct benefit is a question of fact.

Moreover, in a case Plaintiffs chose not to address, the Eleventh Circuit applied the direct vs. indirect benefit analysis and affirmed the dismissal of a complaint in connection with payments and disbursements of fees and premiums. *See Johnson,* 687 F. App'x at 829-30 (11th Cir. 2017) (affirming dismissal of unjust enrichment claim and determining fees paid to company that created benefits program who in turn paid premiums to insurance carrier created at best an indirect benefit even if a portion of the payments were retained).

9

I.       **Motion to Strike Should be Granted**

The Amended Complaint is replete with references to the FTC proceeding and state agency matters. (D.E. 18 ¶¶2, 4, 74, 79, 184, 193, 194, 198, and 202 to 206). The prejudice to Defendants is clear. Unless stricken, references to the FTC proceeding against third parties and state administrative matters unconnected to the core allegations in the Amended Complaint will only create significant confusion and diversion into immaterial matters. Thus, the prejudice to Defendants and inefficiencies to the administration of justice will be significant.

III.      **Conclusion.**

For all of these reasons, Defendants, Health Insurance Innovations, Inc., Health Plan Intermediaries Holdings, LLC, and Michael Kosloske, respectfully request this Court grant the Motion to Dismiss, dismiss the Amended Complaint for failure to state a claim upon which relief may be granted, and strike the allegations regarding unrelated administrative proceedings and an FTC case.

Dated:  September 23, 2019.

By: *s/ Garry W. O'Donnell*
**Garry W. O'Donnell, Esq.**
Florida Bar No. 0478148
Email: garry.odonnell@gmlaw.com
**Dariel J. Abrahamy, Esq.**
Florida Bar No. 0014901
Email: dariel.abrahamy@gmlaw.com
GREENSPOON MARDER LLP
2255 Glades Road, Suite 400-E
Boca Raton, Florida 33431
Telephone: (561) 994-2212
Facsimile:  (561) 807-7527
*Attorneys for Defendants,*
*Health Insurance Innovations, Inc., Health Plan*
*Intermediaries Holdings, LLC, and Michael Kosloske*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing document was filed with the Clerk of Court using the Court's CM/ECF system on this 23rd day of September, 2019, which will generate notification to all known counsel of record or pro se parties.

By: *s/ Garry W. O'Donnell*
Garry W. O'Donnell, Esq.