UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-61430-CIV-MORENO/SELTZER

ELIZABETH E. BELIN,
CHRISTOPHER MITCHELL,
KEVIN FURMAN, MITCHELL KIRBY,
GABRIELLE WATSON and KATHRYN
SVENSON, individually and on behalf of all
others similarly situated,

       Plaintiffs,

v.

HEALTH INSURANCE INNOVATIONS, INC.,
HEALTH PLAN INTERMEDIARIES
HOLDINGS, LLC and MICHAEL KOSLOSKE,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendants Health Insurance Innovations, Inc., Health Plan Intermediaries Holdings, LLC, and Michael Kosloske's Motion to Dismiss Amended Class Action Complaint and to Strike and Supporting Memorandum ("Motion" or "Motion to Dismiss") (DE [27]), which was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 (DE [28]).  For the reasons that follow, the undersigned respectfully RECOMMENDS that the Motion (DE [27]) be GRANTED IN PART and DENIED IN PART.

I.      AMENDED COMPLAINT

Plaintiffs are individual consumers who were not covered by employer health plans. They allege that Defendants[1] engaged in a fraudulent scheme that misled them and others into believing that they were purchasing major medical insurance when, in reality, they were purchasing "limited benefit indemnity plans" and "medical discount plans" that, at best, defrayed a fraction of the out-of-pocket costs.   Cplt. ¶ 1, DE [1].  The Amended Complaint accuses Defendants of developing the limited benefit indemnity and medical discount plans, as well as the distribution channels for those plans.

The alleged distribution channels included two distributors: Simple Health and Donisi Jax, Inc., d/b/a Nationwide Health Advisors ("Nationwide Health").  Plaintiffs allege, among other things, that Defendants funded the sales operations at Simple Health and Nationwide Health, trained their sales agents, reviewed and edited the scripts used by their agents, provided an online platform for sales agents to quote and sell Defendants' insurance products, collected monthly premiums for plans sold by Simple Health and Nationwide Health, and accounted for and distributed "extremely generous commissions" for those sales.  Further, Plaintiffs allege that the sales agents at Simple Health and Nationwide Health induced consumers to purchase Defendants' products by reading a uniform script that misrepresented that they were purchasing a "PPO" from a reputable, "A-rated" insurance carrier when, in fact, they were purchasing "virtually worthless" limited benefit indemnity and medical discount plans.

---

[1]   Defendants are Health Insurance Innovations, Inc. ("HIIQ") and Health Plan Intermediaries Holdings, LLC ("HPIH") (collectively, the "HII Defendants") and their founder and former CEO, Michael Kosloske ("Kosloske") (collectively, "Defendants").

The Amended Complaint raises six counts: Count I – Violation of RICO 1962(c) Against all Defendants; Count II – Section 1962(d) RICO Conspiracy Against all Defendants; Count III – Aiding and Abetting a Violation of RICO 1962(c) Against all Defendants; Count IV – Aiding and Abetting Breach of Fiduciary Duty Against the HII Defendants; Count V – Aiding and Abetting Fraud Against the HII Defendants; and Count VI – Unjust Enrichment Against the HII Defendants.

II.    <u>MOTION TO DISMISS</u>

Defendants move to dismiss the Amended Complaint for being a shotgun pleading in violation of Rules 8(a) and 10(b), Federal Rules of Civil Procedure, and for failing to plausibly allege sufficient facts to state claims for violations of RICO, RICO conspiracy, aiding and abetting a RICO violation,  and the common law counts of aiding and abetting a breach of fiduciary duty and fraud and of unjust enrichment.  Defendants also move to strike allegedly immaterial and impertinent portions of the Amended Complaint.  Plaintiffs responded (DE [32]) ("Response") to the Motion, and Defendants replied thereto (DE [36]) ("Reply").  The Motion to Dismiss is now ripe for review.

III.    <u>LEGAL STANDARDS</u>

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atl. Corp v. Twombly</u>, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face."  <u>Id.</u> at 555, 570.  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009), abrogated on other grounds by Mohamad v. Palestian Authority, 132 S. Ct. 1702 (2012).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009) (quoting St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002)). In reviewing the complaint, the court must do so in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted); see also Iqbal, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions ").

Further, Rule 9(b), Federal Rules of Civil Procedure, requires that allegations of fraud must be pled with particularity. "To comply with Rule 9(b), a plaintiff must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud.'"

Cardenas v. Toyota Motor Corp., 2019 WL 4777891, at *2 (S.D. Fla. Sept. 30, 2019) (Moreno, J.) (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997) (per curiam)).  "At bottom, the purpose of particularity pleading is to alert defendants to their precise misconduct and protect them against baseless charges of fraudulent behavior."  Id.

IV.   ANALYSIS

A.   Shotgun Pleading

Defendants argue that the Amended Complaint's "wholesale references to the FTC and state agencies' proceedings and the incorporation of 229 paragraphs of conclusory, vague, and immaterial allegations into each of the six counts without any obvious connection between the counts" is an "impermissible style of shotgun pleading, which violates Rules 8(a)(2) and 10(b), [and] requires a dismissal of the Amended Complaint because it fails to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  Motion at 7 (DE [27]) (citations and internal quotations omitted).  See Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (discussing how a shotgun pleading is designed to confuse the opposition and the court by masking theories of relief not provided by law and which can prejudice an opponent's case).

The incorporation of general allegations into each separate count within a complaint does not transform it into a shotgun pleading, particularly where the counts are similar in nature.  See S.E.C. v. Levin, 2013 WL 594736, at *9 (S.D. Fla. Feb. 14, 2013) (explaining that pleadings which merely incorporate the same set of factual circumstances into each count are sufficient to state a claim).  Such a structure "avoids redundant and repetitive

pleading." JPMorgan Chase Bank, N.A. v. Mortg. Inc., 2010 WL 3952005, at *1 (S.D. Fla. Oct. 8, 2010). Here, however, Plaintiffs erred by incorporating all factual allegations – including claim-specific factual allegations – into every count.

Plaintiffs are on solid ground when they maintain: "[T]he Amended Complaint is well organized and specifically detailed. It contains allegations that focus on the particular claims and provide necessary background. Plaintiffs included numerous headings to help the reader understand the content and direction of each group of paragraphs." Response at 5 (DE [32]). Given the Amended Complaint's meticulous organization and headings, Defendants cannot persuasively argue that they are unaware as to which factual allegations pertain to which claims, as that information is explicitly set forth in the headings. Nonetheless, in the first paragraph of each count, Plaintiffs unnecessarily incorporate all of the first 229 paragraphs – not just the general allegations, but the claim-specific factual allegations as well – thereby introducing an element of confusion. As a result, sets of paragraphs containing factual allegations clearly directed to only one count have been incorporated into every count. By way of example only, in paragraphs 100-08 (addressing aiding and abetting the breach of fiduciary duty), Plaintiffs set forth allegations showing the existence of a fiduciary duty. Yet, these paragraphs are also incorporated into the RICO count. And in paragraphs 109-11 (addressing aiding and abetting fraud), Plaintiffs set forth allegations in support of reliance. Yet, these paragraphs are also incorporated into the unjust enrichment count. To the extent Defendants argue that incorporating by reference all allegations into every count results in some "of the counts contain[ing] irrelevant factual allegations," Pupke v. McCabe, 2014 WL 12621479, at *2 (S.D. Fla. Jan. 30, 2014), their argument is well taken. Accordingly, the undersigned recommends that the Motion to

-6-

Dismiss be granted to the extent that the incorporation paragraphs in each of the six counts – ¶¶ 230, 242, 246, 251, 256, 263 – be amended to include only those preceding paragraphs that pertain to that specific claim.

      B.    <u>RICO</u>

Count I of the Amended Complaint alleges a civil RICO violation against all Defendants. The relevant portion of the RICO statute at issue provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).   A civil RICO claim, therefore, requires a demonstration of the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) that caused injury to business or property." <u>Ace Pro Sound and Recording, LLC v. Albertson</u>, 512 F. Supp. 2d 1259, 1266 (S.D. Fla. 2007) (citing <u>Langford v. Rite Aid of Ala., Inc.</u>, 231 F.3d 1308, 1311 (11th Cir. 2000)).

      1.    <u>Causation and Standing</u>

Defendants first argue that Plaintiffs failed to adequately plead RICO causation and standing.  They note that the central question for this Court is whether the alleged violation led directly to Plaintiffs' injuries, without which Plaintiffs would lack standing to bring a RICO claim.  <u>See</u> <u>Anza v. Ideal Steel Supply Corp.</u>, 547 U.S. 451, 461 (2006); <u>Ray v. Spirit Airlines, Inc.</u>, 836 F.3d 1340, 1349 (11th Cir. 2016).  According to Defendants, the RICO claim fails because Plaintiffs only assert that the sales calls constituting the alleged RICO

violations were made by sales representatives of two independent marketing companies that are not parties to this action. The undersigned does not agree.

An examination of the Amended Complaint makes plain that Plaintiffs allege a direct injury caused by Defendants. More specifically, Plaintiffs allege that, together with Simple Health and Nationwide Health, Defendants developed, reviewed, and approved a series of scripts to sell limited benefit indemnity plans and medical discount plans to consumers. Cplt. ¶¶ 3, 57, 165, 208, 210. Those scripts allegedly contained misrepresentations (while omitting other key information) aimed at leading consumers to believe they were purchasing major medical insurance. Id. ¶¶ 5, 6, 7, 45, 64, 68-80, 82-86. Simple Health and Nationwide Health employees read those scripts to consumers (including Plaintiffs and class members) over the phone – thereby repeatedly committing RICO predicate acts in the process. Id. ¶ 45. With knowledge of this scheme, Defendants then followed up with RICO predicates of their own, sending (and in Kosloske's case causing to be sent) thousands of membership cards and other product information to those consumers, as part of the overall scheme. Id. ¶¶ 45, 219.

As a direct result, Plaintiffs and class members suffered injury. Relying on the misrepresentations, they were fraudulently induced to pay fees and commissions for products that were not major medical insurance. Id. ¶¶ 109-11, 195-98. According to the Amended Complaint, "Class Plaintiffs and class members paid fees and premiums that they otherwise would not have paid in the absence of the misrepresentations and omissions." Id. ¶ 195. Had Plaintiffs and class members known they were not receiving major medical insurance, but instead would pay hundreds of dollars each month for an indemnity plan that provided a $50 per night discount, they allegedly would not have

purchased the product.  Id. ¶¶ 40, 81, 200.  In addition, the Amended Complaint alleges

that a subset of those Plaintiffs and class members – the "Medical Expense Subclass" –

suffered further direct and foreseeable injury when their medical expenses later went

unpaid.  Id. ¶¶ 109, 199-201, 220.

Defendants counter that they are not liable for any wrongdoing because the acts

they committed – the mailing and emailing of membership cards and fulfillment

documentation – did not themselves contain misrepresentations or omissions.  For a

violation to occur, however, the law does not require that the transmitted information itself

contain the misrepresentation:

> To violate the wire fraud statute, it is not necessary that the transmitted
> information include any misrepresentation. The transmission itself need not
> be essential to the success of the scheme to defraud. An interstate wire
> transmission is "for the purpose of executing" the scheme to defraud if it is
> "incident to an essential part of the scheme" or "a step in the plot."

United States v. Hasson, 333 F.3d 1272, 1272-73 (11th Cir. 2003) (citing Schmuck v.

United States, 489 U.S. 705, 715 (1989)). "The gravamen of the offense is the scheme to

defraud, and any 'mailing that is incident to an essential part of the scheme satisfies the

mailing element.'" Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 647 (2008)

(quoting Schmuck, 489 U.S. at 712).  Because the membership documents and other

post-closing activities were incident to an essential step in the scheme – leading Plaintiffs

and class members to continue to pay for the products each month, and facilitating those

payments – Defendants may be liable under RICO.  Cplt. ¶ 216.

Defendants also argue that Plaintiffs fail to allege Defendants' participation in the

fraudulent sales calls.  Again, a review of the Amended Complaint reveals otherwise.

Plaintiffs allege that Defendants maintained a "Call Center Quality Department" that

monitored the calls made by Simple Health and Nationwide Health sales agents.  Id.  ¶¶ 3, 165.  Yet, even if Plaintiffs had not alleged Defendants' actual participation in the sales calls, they nonetheless do allege that Defendants caused the use of the mails or wires; id. ¶ 216, and that they "directed" Simple Health and Nationwide Health to use Defendants' online platform to quote and sell the products. Id. ¶¶ 3, 190. See  SKS Constructors v. Drinkwine, 458 F. Supp. 2d 68, 76 (E.D.N.Y. 2006) ("[I]t is not necessary to allege . . . that the defendants have personally used the mails or wires; it is sufficient that a defendant 'causes' the use of the mails or wires.") (quoting Jerome M. Sobel & Co. v. Fleck, 2003 WL 22839799, at *5 (S.D.N.Y. Dec. 1, 2003)); see also 18 U.S.C. §§ 1341, 1343.

### 2.   Pleading with Particularity

Defendants additionally move to dismiss the Amended Complaint on the ground that Plaintiffs fail to satisfy the heightened pleading standard of Rule 9(b).  They argue:  "Fatally absent from Plaintiffs' allegations are any of the requisite particularized facts regarding the precise documents and misrepresentations, the time and place of the statements, the content and manner in which Plaintiffs were misled, and what Defendants gained."  Motion at 9 (DE [27]) (citing Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010)).  The undersigned, however, is not persuaded.

"[A]llegations of date, time or place satisfy the Rule 9(b) requirement that the circumstances of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule."  In re Managed Care Litig., 150 F. Supp. 2d 1330, 1347 (S.D. Fla. June 12, 2001) (Moreno, J.) (citing Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1512 (11th Cir. 1988)); see also Diamond Resorts Int'l, Inc. v. U.S. Consumer Att'ys, P.A., 2019 WL 3412169, at *3 (S.D. Fla. May 14, 2019) ("These factors

are not exclusive, however, and a plaintiff may satisfy Rule 9(b)'s particularity requirements through alternative means") (citation omitted).   Plaintiffs plead the underlying fraud in significant detail.  Indeed, Plaintiffs devote nearly 40 paragraphs to describing the contents of the standardized sales script used by Defendants' agents and explaining how the scripts misled consumers.  Cplt. ¶¶ 62-99.

More specifically, the scripts used wording designed to lead consumers to believe they were buying ACA-compliant, comprehensive medical insurance through an exchange, telling consumers, "we want to find you a PPO," although the plans being sold were not PPOs.  Id. ¶¶ 68-69, 71, 75-76.  Sales agents also told consumers they would search for different insurance options, when in reality the agents were allgedly always going to offer a limited benefit indemnity benefit plan regardless of the consumer's individual needs.  Id. ¶¶ 73-74. Indeed, Plaintiffs allege that no searches were conducted.  Id. ¶ 74.  Sales agents also allegedly told consumers that approval was contingent on health status when, in reality, approval was certain.  Id. ¶ 72.  Agents offered day-one coverage for preexisting conditions, which was untrue.  Id. ¶ 77. They told consumers that the "insurance" could be used with any physician and at virtually any facility in the country – another falsehood.  Id. ¶ 78.  And the agents made statements designed to lead consumers to incorrectly believe that enhanced dental, vision, accidental death, and pharmacy coverage would be included at no extra cost.  Id. ¶¶ 82-84.

More fundamentally, the Amended Complaint alleges that agents failed to disclose to consumers that they were purchasing limited benefit indemnity plans, rather than comprehensive medical insurance.  Id. ¶ 85. Compounding this failure, after agents had taken consumers' payments, their post-close script instructed them to tell consumers:

"Now, they [the verification department] ALSO will tell you that this is not a major medical plan OR A DISCOUNT PLAN.  Obviously this isn't a discount plan. This IS INSURANCE." Id. ¶¶ 87-93.  At the verification stage – which occurred after the consumer had already paid – verification agents were prompted by the scripts to dissuade consumers from asking any questions.  Id. ¶¶ 94-99.

As to the timing of the misrepresentations, those facts are adequately pled in the Amended Complaint as well.  According to the Amended Complaint, the statements were made to consumers over a five-year period, with Simple Health starting in 2013 and with Nationwide Health starting in 2015.  Id. ¶¶ 44, 47-48, 215.  As to the location of the misrepresentations, the Amended Complaint makes clear that agents made them from offices in South Florida to consumers throughout the nation.  Id. ¶ 10(a)(ii)2.  As to the gain from the fraud, Plaintiffs specifically allege that the scheme brought a stream of fees and premiums and allowed Defendants to bundle cheap and relatively worthless products and represent them as something more valuable and expensive – that is, major medical insurance – thereby, enabling them to sell the products at an unfair premium and causing Plaintiffs to overpay. Id. ¶¶ 44, 49, 52, 54-55, 195-198, 201, 207.

Beyond describing with particularity the common scheme as it applied to all class members, the Amended Complaint also alleges with particularity how that scheme was applied personally to each named Plaintiff; it describes the "who, what, when and where" of the fraud for each Plaintiff.  Id. ¶¶ 112-162.

Defendants argue that Plaintiffs failed to identify misrepresentations within the post-sale fulfillment documents that Defendants sent to Plaintiffs. Yet, as previously noted, "[t]o violate the wire fraud statute, it is not necessary that the transmitted information

include any misrepresentation." <u>Hasson</u>, 333 F.3d at 1272.  Plaintiffs allege that Defendants' transmission of fulfillment documents and other post-closing activities constitute predicate acts because they were incident to essential steps in the fraudulent scheme.  Furthermore, Plaintiffs allege other essential steps taken by Defendants: they bundled the products, establishing an inflated premium, Cplt. ¶¶ 3, 44, 46, 78, 207, 210; they created the distribution channels for those products, <u>id.</u> ¶¶ 3, 46, 102, 210, 211, 214; with knowledge of the scheme, Defendants reviewed, edited, and approved the scripts, <u>id.</u> ¶¶ 3, 57, 164, 165, 210; they trained, monitored, and audited the sales agents, <u>id.</u>; they licensed the sales agents, <u>id.</u> ¶¶ 3, 172, 210; and they financed the operations of Simple Health and Nationwide Health, <u>id.</u> ¶¶ 3, 10, 11, 52, 186, 210.

Finally, Defendants argue that Plaintiffs fail to plausibly allege a "pattern of racketeering activity" because, at its core, the Amended Complaint is merely a commercial dispute over the marketing of health insurance products. Motion at 10 (DE [27]) (citing <u>In re Mouttet</u>, 493 B.R. 640, 661 (Bankr. S.D. Fla. 2013) ("The RICO statutes are not designed as a vehicle to resolve general commercial disputes.").

Although RICO statutes were not designed as a vehicle to resolve general commercial disputes, the "United States Supreme Court repeatedly has rejected the argument that RICO should be narrowly construed as a per se exclusion of business disputes." <u>Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co.</u>, 202 F. Supp. 2d 1339, 1346 (S.D. Fla. 2002) (citing <u>H.J. Inc. v. NW Bell Tel. Co.</u>, 492 U.S. 229, 246 (1989) ("[T]he legislative history shows that Congress knew what it was doing when it adopted commodious language capable of extending beyond organized crime.")); <u>see also</u> <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 499 (1985) ("Congress wanted to

reach both 'legitimate' and 'illegitimate' enterprises. The former enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences.") (citations omitted).

The undersigned concludes that Plaintiffs have adequately pled a RICO scheme and Defendants' participation in it.

### 3. Association-in-Fact Enterprise

Defendants argue that the Amended Complaint contains no plausible allegations of an association-in-fact enterprise required to state a RICO claim.  See 18 U.S.C. § 1961(4).  Having reviewed the Amended Complaint, the undersigned is not persuaded by Defendants' argument.

In Boyle v. United States, 556 U.S. 938, 948 (2009), the Court determined that a RICO enterprise does not need to have a "hierarchical structure or 'chain-of-command'" or "a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies." But the Court determined that, at a minimum, an enterprise must possess three structural features:  "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit those associates to pursue the enterprise's purpose." Id. at 946.  Toward this end, Plaintiffs must plausibly allege: (1) the identity of a RICO defendant that is distinct from the RICO enterprise; see Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001); and (2) that the RICO person conducted or participated in the conduct of the affairs with the RICO enterprise.  See  Reves v. Ernst & Young, 507 U.S. 170, 185 (1993).

Defendants argue that Plaintiffs fail to "allege an enterprise distinct from Defendants' business."  Motion at 11 (DE 27).  This distinction element, however, requires only that "a Section 1962(c) enterprise cannot be comprised of a corporation and its employees or

subsidiaries."   In re Managed Care Litig., 150 F. Supp. 2d at 1342 (S.D. Fla. 2001) (Moreno, J.)) (citing United States v. Goldin Indus., Inc., 219 F.3d 1271, 1275 (11th Cir. 2000). Here, the enterprise alleged by Plaintiffs extends beyond Defendants and their employees.  Moreover, Plaintiffs do allege that the enterprise is distinct from Defendants' business; more specifically, they allege that Defendants "sold other products legitimately," and that not all of Defendants' revenues were generated by sales of limited benefit indemnity and medical discount plans through Simple Health and Nationwide Health. Cplt. ¶ 43.

Plaintiffs also plead the association-in-fact enterprise's purpose – "to deceptively maximize profitability."  Id. ¶¶ 44, 207.  See Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1284 (11th Cir. 2006)[2] (stating that "the common purpose of making money [is] sufficient under RICO") (citing U.S. v. Church, 955 F.2d 688, 698 (11th Cir. 1992)). Defendants argue that "[m]aximizing profits is a legitimate goal in any free economy," and therefore not actionable under RICO, yet Plaintiffs point out that the enterprise bundled products that were not major medical insurance, fraudulently referred to them as "major medical insurance," and sold them for more than they were worth.  Id.  Furthermore, although deceptively maximizing profitability was the ultimate purpose of the enterprise, Plaintiffs allege that its methods were illegitimate and in violation of RICO.

Plaintiffs also plead the relationships between Defendants and Simple Health and between Defendants and Nationwide Health in detail.  Defendants created the products that Simple Health and Nationwide Health sold through a network of independent

---

[2] Abrogated on other grounds as recognized in Simpson v. Sanderson Farms, Inc., 744 F.3d 702, 714-15 (11th Cir. 2014).

contractors and subagents. Cplt. ¶¶ 44, 207. The sales were made through a common scheme of fraudulent sales scripts read by the agents and reviewed, edited, and monitored by Defendants. Id. ¶¶ 3, 45, 65, 164-65, 210. Defendants then collected and distributed the proceeds. Id. ¶¶ 3, 49, 210. Specifically as to Kosloske, Plaintiffs allege that he: approved the products; recruited Simple Health and Nationwide Health through their principals, Dorfman, Spiewak, Donisi, and Jaxheimer; developed distribution channels through their companies; approved the financing of those companies; and participated in the management and operation of the enterprise's compliance, training, and administrative functions. Id. ¶¶ 43, 211-12.

    Defendants argue that "[t]he business relationships of Defendants and Simple Health are merely business-to-business." Motion at 10-11 (DE [27]). Yet, the fact that the relationships between Defendants and Simple Health and Defendants and Nationwide Health are grounded, at least in part, in contract does not place this arrangement beyond the reach of a RICO claim and transform it into a legitimate business relationship. In In re Managed Care Litig., the defendants sought dismissal of a RICO claim on the ground that the alleged enterprise was nothing more than a group of contracting parties. See 298 F. Supp. 2d at 1274-75. The court rejected that argument, stating "[o]nce again, Defendants turn to authority outside the Eleventh Circuit holding that severally contracting with various Defendants is insufficient." Id. at 1274 (footnote omitted). Yet, the Eleventh Circuit has not bound itself to strict metaphysical structural requirements and has authorized just the type of allegations made in this case." Id. at 1275 (citing Goldin II, 219 F.3d at 1274-75). To borrow the language of the Managed Care Litigation opinion, the undersigned "finds that the preliminary sketch of a RICO enterprise provided by the Plaintiffs" is sufficiently

detailed, particularly given that those "pleadings are justifiably limited at this stage because Plaintiffs have not had the aid of discovery."  Id.

### 4.   Participation in Affairs of Enterprise

According to Defendants, "[w]ithout any detailed allegations about the specific roles or interaction, Plaintiffs formalistically assert that these putative members 'operated, managed, directed and/or conspired with an associated-in-fact enterprise.'" Motion at 11 (DE [27]) (citing Cplt. ¶ 207).  The undersigned does not agree.

"The operation or management test requires that 'in order to participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs."  In re Managed Care Litig., 150 F. Supp. 2d at 1324 (quoting Reves, 507 at 179). Thus, the Amended Complaint need only allege facts from which one can infer that Defendants "have some part in directing" the affairs of the enterprise.

Here, the Amended Complaint is replete with allegations of Defendants' role in operating and managing the enterprise.  The pleading recites that Kosloske recruited Simple Health and Nationwide Health.  Cplt. ¶ 211.  Defendants financed the agents' operations, thereby bankrolling, at least in part, the enterprise's operations.  Id. ¶¶ 186-87. Additionally, Defendants allegedly undertook the following acts: they set the agents' commission rates,  id. ¶ 192; they directed the enterprise's billing and premium collection services, id. ¶¶ 49, 188-89; they directed call training and compliance monitoring, installing representatives at its agents' call centers, id. ¶¶164-65; they reviewed, edited, and approved the fraudulent scripts, id. ¶¶ 3, 165; they registered the licenses of more than 40 sales agents, id. ¶¶ 172, 191; they directed Simple Health and Nationwide Health to use Defendants' online platform, id. ¶¶ 51, 190; and they "managed the 'non-claims related

experience' of consumers," including post-sale customer service and complaints, id. ¶ 166. Accordingly, the Amended Complaint's factual allegations more than "support the inference that the Defendants have some part in directing the affairs of [the] Enterprise." In re Managed Care Litig., 150 F. Supp. 2d at 1324.

In sum, although Defendants argue that "[t]he allegations of Defendants' participation in the enterprise are limited to activities which suggest nothing more than normal market arrangements," Motion at 13 (DE 27), the undersigned concludes that the factual allegations plausibly take Plaintiffs' claims beyond the realm of a garden-variety commercial relationship and instead "support the inference that the Defendants have some part in directing the affairs of [the] Enterprise." In re Managed Care Litig., 150 F. Supp. 2d at 1324.

C.    RICO Conspiracy

Preliminarily, Defendants argue that Count II, the RICO conspiracy claim, should be dismissed.  According to Defendants, this derivative claim must be predicated upon a substantive RICO violation, yet Plaintiffs have failed to successfully state a claim for violation of § 1962(c).  However, as set forth above, the undersigned has concluded that Plaintiffs have sufficiently plead a substantive RICO violation under § 1962(c), and, therefore, the predicate exists for Plaintiffs' RICO conspiracy claim under § 1962(d).

A RICO conspiracy requires either showing: (1) an agreement with the overall objective of the conspiracy; or (2) an agreement to commit two predicate acts.  Am. Dental, 605 F.3d at 1293.   The court may infer such agreements from a plaintiff's allegations.  See In re Managed Care Litig., 298 F. Supp. 2d at 1281. Direct evidence is not required. See Am. Dental, 605 F.3d at 1293.  Defendants argue that the Amended

-18-

Complaint fails to allege any plausible facts to show an agreement with HII, HPIH, or Kosloske to pursue the overall objective of any conspiracy or that they agreed to commit two predicate acts.  The undersigned does not agree.

The allegations of the Amended Complaint strongly suggest or, at the very least, permit the inference that  Defendants agreed to the conspiracy's overall objective. Plaintiffs allege that Defendants knew of the agents' fraudulent sales practices.  Indeed, Defendants allegedly monitored the agents' sales practices, handled thousands of customer complaints that Defendants themselves categorized as "Agent Misreps," and received numerous inquiries from state agencies regarding the agents' sales practices. Cplt. ¶¶ 163-84.  Had Defendants objected, rather than agreed, to the conspiracy's objective – to mislead consumers to believe they were purchasing major medical insurance – it would be reasonable to assume that Defendants, upon learning of these sales practices, would have stopped Simple Health and Nationwide Health from continuing to engage in them.  The fact that Defendants did not stop these practices permits the inference that Defendants consented to them.

This inference is further strengthened by allegations of Defendants' complicity. Far from intervening to stop these practices, Defendants continued to finance the operations of Simple Health and of Nationwide Health.  Id. ¶¶ 3, 10, 11, 52, 186, 210.  They licensed Simple Health's and Nationwide Health's sales agents.  Id. ¶¶ 3, 172, 210. They paid high commissions to Simple Health and Nationwide Health, encouraging more sales.  Id. ¶ 192. And they paid the agents' legal fees when regulators investigated.  Id.  ¶ 193.

Plaintiffs additionally allege an agreement to commit two predicate acts.  Again, Plaintiffs allege that as part of the overall scheme, Defendants used the wires and mail to

send enrollment packets, membership cards, billing statements, and customer service-related letters and to solicit customer payments. Id. ¶ 216. The undersigned, therefore, concludes that Plaintiffs have satisfactorily stated a claim for RICO conspiracy.

      D.    Aiding and Abetting Claims

The Amended Complaint sets forth three aiding and abetting claims: aiding and abetting a RICO violation (Count III), aiding and abetting breach of fiduciary duty (Count IV), and aiding and abetting fraud (Count V).

      1.    Knowledge and Substantial Assistance

Generally, the requisite elements for aiding and abetting include: (1) knowledge of the underlying violation; and (2) substantial assistance in committing the wrongdoing. See In re Palm Beach Fin. Partners L.P. v. BMO Harris Bank, N.A., 488 B.R. 758. 771 (Bankr. S.D. Fla. 2013). The Amended Complaint sufficiently alleges actual knowledge and substantial assistance in support of the three aiding and abetting claims.

The Federal Rules of Civil Procedure require that knowledge, the first element, be pled only generally. See Fed. R. Civ. P. 9(b). Nonetheless, as set forth in Section C, supra, the Amended Complaint pleads facts giving rise to a strong inference that Defendants knew of the scheme. Cplt. ¶¶ 163-84. These allegations plausibly support the knowledge element of an aiding and abetting claim.

Substantial assistance, the second element, "occurs when a defendant affirmatively assists, helps conceal[,] or fails to act when required to do so, thereby enabling the breach to occur." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 295 (2d Cir. 2006). "Whether the assistance was 'substantial' depends on the totality of the circumstances." Rudolph v. Arthur Anderson & Co., 800 F.2d 1040, 1046 (11th Cir. 1986). Here, the Amended

Complaint contains numerous allegations showing that despite knowing of the scheme, Defendants substantially assisted Simple Health and Nationwide Health.  Cplt. ¶¶ 185-94. Among the several actions that Defendants took with knowledge of the scheme were the following: they financed the agents' operations, id. ¶¶ 186-87; they acted as the agents' third-party administrator, which included dealing with the customers who were victimized, id. ¶¶ 188-89; and they facilitated Simple Health's licensing requirements and covered their legal fees arising out of the state regulatory investigations. Id. ¶¶ 191, 193.  In sum, therefore, the Amended Complaint sufficiently alleges both knowledge and substantial assistance.

2.    Aiding and Abetting a Violation of the RICO Act

Defendants suggest that Count III, the claim for aiding and abetting a § 1962(c) violation of the RICO Act, should be dismissed for one of the same reasons that they argue the RICO conspiracy claim should be dismissed.  According to Defendants, this derivative claim must be predicated upon a substantive RICO violation, yet Plaintiffs have failed to successfully state a claim for violation of § 1962(c).  Again, for the reasons set forth above, the undersigned has concluded that Plaintiffs have sufficiently plead a substantive RICO violation under § 1962(c), and, therefore, the predicate exists for claiming the aiding and abetting of a RICO Act violation.  Furthermore, although Defendants suggest that it is an open question whether RICO aiding and abetting liability exists in the Eleventh Circuit, Motion at 15 (DE [27]), this Court has previously acknowledged controlling precedent holding that it does. See In re Managed Care Litig., 135 F. Supp. 2d 1253, 1267 (S.D. Fla. 2001) (Moreno, J.) (citing Cox v. Admin. U.S. Steel & Carnegie, 17 F.3d 1386, 1410 (11th

-21-

Cir.1994)).  Accordingly, the Amended Complaint states a claim for aiding and abetting a RICO violation.

### 3.    Aiding and Abetting a Breach of Fiduciary Duty

Count IV is a claim for aiding and abetting a breach of fiduciary duty against the HII Defendants only.  Unlike Counts I-III, Kosloske is not named as a defendant in this count. Defendants argue that the allegations of the Amended Complaint do no more than describe the marketing of an insurance product and "fail to plausibly infer a fiduciary relationship 'where confidence is proposed by one party and a trust is accepted by the other, or where confidence has been acquired and abused.'" Motion at 15-16 (DE [27]) (Gracey v. Eaker, 837 So. 2d 348, 352 (Fla. 2002) (citations omitted)).

In Florida, insurance brokers like Simple Health and Nationwide Health owe a fiduciary duty of care to the insured that requires "the broker to inform and explain the coverage it has secured at the client's direction." Tiara Condo. Ass'n, Inc. v. Marsh, USA, Inc., 991 F. Supp. 2d 1271, 1279-80 (Fla. 2014) (citation omitted).  An enhanced duty "to advise the client about the amount of coverage prudently needed to meet its complete insurance needs" applies when the broker encourages and engages in a "special relationship" with the customer. Id. at 1281.  This "special relationship" can be shown where, among other actions, the agent: (i) "misrepresented the nature of the coverage being offered or provided, and the insured justifiably relied on that representation in selecting the policy";  (ii) "voluntarily assumed the responsibility for selecting the appropriate insurance policy for the insured (by express agreement or promise to the insured)"; or (iii) "held itself out as having expertise in a given field of insurance being sought by insured, and the insured relied on that expertise." Id. (citations omitted).

-22-

Here, the Amended Complaint sufficiently alleges the requisite special relationship to establish a fiduciary duty.  More specifically, it alleges a common scheme by Simple Health and Nationwide Health to misrepresent limited benefit indemnity and medical discount plans as comprehensive medical insurance.  Cplt. ¶¶ 5-8, 64, 56-99.  And it alleges that Plaintiffs reasonably relied thereon.  Id. ¶¶ 101, 109-111.

The Amended Complaint further alleges that, as evidenced by the scripts, agents held themselves out as experts and voluntarily assumed a fiduciary role.  Agents touted their expertise:

> The name of my company is Simple Health, and we represent most of the MAJOR "A Rated" CARRIERS in the state of _____ . . .  So I'm able to give all of your options, and find you the BEST PLAN for the **BEST PRICE!**
>
> * * * *
>
> Remember, I work with virtually EVERY PLAN available in your state, so if I thought there were ANYTHING OUT THERE that was more beneficial for you than THIS plan, then THAT is what I'd be offering you! I take a lot of pride in what I do and I like to think that our relationship starts TODAY, okay?

Id. ¶ 105.  The Simple Health script also directed the sales agents to essentially choose the product for the customer:

> [You need a] PPO, that way you can keep your own doctors and hospitals. I want to get you prescription and lab coverage for your preventative care and maintenance. . . .
>
> Now, for your benefit I have included an additional dental plan along with your policy. This additional card gives you a dental and vision savings benefit which give you more coverage than any other traditional insurance plan. Also, I have included additional insurance benefits such as Accidental Death AND an Accident Medical Expense plan along with your package.

Id. ¶¶ 104, 106.  And to further cultivate the special relationship with customers, the Simple Health and Nationwide Health scripts encouraged customers to rely on sales agents to

-23-

answer questions and assist with the plans they purchased, touting superior licensing,

knowledge and training:

> Again, (first name) although you were able to contact your carrier directly and they are very nice people, they literally get paid minimum wage to read the answers to your questions off a piece of paper. Everyone here at Simple Health is fully licensed, trained on your policy, and here to help you. Please keep in touch with us for any question or concerns about your plan.

Id. ¶ 107.  The fiduciary duty allegations set forth in the Amended Complaint are sufficient

under Florida law to overcome Defendants' Motion to Dismiss.  Ultimately, "[w]hether an

insurance broker shared a 'special relationship' with its client is a question of fact for the

jury."  Tiara Condo. Ass'n, Inc., 991 F. Supp. 2d at 1281-82.

                4.     Aiding and Abetting Fraud

Count V is a claim for aiding and abetting fraud against the HII Defendants only;

again, Kosloske is not named as a defendant in this count. Defendants argue only that

Plaintiffs fail to plead facts supporting a plausible inference that Defendants had knowledge

of the fraud or that they rendered substantial assistance in connection with the marketing

calls referenced in the Amended Complaint.  Motion at 16 (DE [27]).

In addition to knowledge and substantial assistance, the elements of a Florida

common-law claim for aiding and abetting fraud require allegations that there existed an

underlying fraud.  See F.D.I.C. v. Group One Mortg., Inc., 2013 WL 2035150, at *3 (S.D.

Fla. May 14, 2013) (citation omitted).  The elements of common-law fraud in Florida

include: (i) "a false statement concerning a material fact"; (ii) "knowledge by the person

making the statement that the representation is false";  (iii) "the intent by the person making

the statement that the representation will induce another to act on it"; and (iv) "reliance on

the representation to the injury of the other party." Bruhl v. Conroy, 2007 WL 983228, at *8 (S.D. Fla. Mar. 27, 2007) (citation omitted).

The Amended Complaint satisfactorily alleges each of these elements. The Amended Complaint alleges in particularized detail the materially false (and standardized) statements and omissions made by Simple Health and Nationwide Health, including details regarding the who, what, where, and when of statements and omissions to each Class Plaintiff. Cplt. ¶¶ 58-86, 112-62. The Amended Complaint additionally alleges the knowledge and intent of Simple Health and Nationwide Health, id. ¶¶ 56, 68, 85, 257, as well as the detrimental reliance by Plaintiffs and class members, id. ¶¶ 109-11, 195-201, 258. The allegations of the Amended Complaint for aiding and abetting fraud are sufficient to overcome Defendants' Motion to Dismiss.

E.    Unjust Enrichment

Count VI is a claim for unjust enrichment against the HII Defendants only; again, Kosloske is not named as a defendant in this count. Defendants argue that Plaintiffs cannot state a claim for unjust enrichment because the allegations indicate that Plaintiffs received only an "indirect benefit" and because this equitable claim relies upon the same factual predicates as, and is therefore duplicative of, the legal claims. Motion at 16-17 (DE [27]). "The prima facie case for a claim of unjust enrichment under Florida law requires 1) that the plaintiff conferred a benefit on the defendant, who has knowledge of the benefit; 2) that the defendant voluntarily accepted and retained the benefit conferred; and 3) that the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value of it to the plaintiff." Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc., 770 F. Supp. 2d 1261, 1266–67 (S.D. Fla. 2011) (citing Hillman

Const. Corp. v. Wainer, 636 So.2d 576, 577 (Fla. 4th DCA 1994)).  "[A] party must allege that it had directly conferred a benefit on the defendants."  Id. at 1267 (internal quotations and citations omitted).

The Amended Complaint alleges that Defendant Health Insurance Innovations, Inc. ("HIIQ") is a publicly-traded holding company owning 100% of Defendant Health Plan Intermediaries, LLC ("HPIH").  Cplt. ¶¶ 18.  "HIIQ receives distributions from [HPIH] to pay taxes and other expenses."  Id.  Plaintiffs refer to HIIQ and HPIH collectively as HII Defendants.  Id. ¶ 3.  Plaintiffs allege unjust enrichment against both HIIQ and HPIH, that is, the HII Defendants collectively.  Id. ¶¶ 263-266.  Defendants argue that Plaintiffs' assertion as to the corporate structure "undermines Plaintiffs' claim that Plaintiffs conferred a direct benefit to both HII and HPIH."  Reply at 9 (DE 36).  The undersigned agrees.

Indeed, it appears that HIIQ, the holding company, is only receiving an "indirect benefit" from Plaintiffs as a corporate parent, even if Plaintiffs were paying HPIH directly.  "A benefit that a defendant gains that does not come directly from the plaintiff does not give rise to a claim for unjust enrichment."  Century, 770 F. Supp. 2d at 1267; see also Harvey v. Florida Health Scis. Ctr., Inc., 728 Fed. Appx. 937, 946-47 (11th Cir. 2018) (stating that an indirect benefit does not support first element of unjust enrichment).  Thus, as presently pled, the unjust enrichment claim fails because Plaintiffs pleaded their unjust enrichment claim against both HIIQ and HPIH, that is, the HII Defendants, collectively; yet, HIIQ (the parent) is not receiving a direct benefit, as is required to state a claim for unjust enrichment.  See Extraordinary Title Servs., LLC v. Florida Power & Light Co., 1 So.3d 400, 404 (Fla. 3d DCA 2009) (rejecting unjust enrichment claim and holding that a plaintiff's payments to a defendant's subsidiary company did not constitute a direct benefit to

-26-

defendant even though defendant ultimately retained a portion of the payments).  In sum, because HIIQ, the parent (holding) company, is only receiving an indirect benefit, that party (only) must be dismissed from Count VI.

With respect to Defendants' argument that an unjust enrichment claim should be dismissed where there is an adequate legal remedy, the Eleventh Circuit has stated that the rule in Florida does not apply to unjust enrichment claims.  See State Farm Mut. Auto Ins. Co. v. Physicians Injury Care Ctr., Inc., 427 Fed. Appx. 714, 722 (11th Cir. 2011), rev'd in part on other grounds State Farm Mut. Auto. Ins. Co. v. Williams, 563 Fed. Appx. 665 (11th Cir. 2014)); see also Feiner v. Innovation Ventures LLC, 2013 WL 2386656, at *5 (S.D. Fla. May 30, 2013) (Dimitrouleas, J.) ("[U]njust enrichment claims are available under Florida law even where adequate legal remedies exist.").  It is only where an express contract exists between the parties that an unjust enrichment count fails.  See Feiner, 2013 WL 23866565, at * 5.

Although the Amended Complaint's unjust enrichment count does rely upon the same general allegations as those incorporated into the Amended Complaint's other counts, it is also based on particular facts that extend beyond those general allegations – the payment of fees and premiums to HIIQ and HPIH, and the unjust retainment of those payments.  Cplt. ¶¶ 188, 264-65.  Accordingly, the Amended Complaint adequately states a claim for unjust enrichment against Defendant HPIH (only).

V.   MOTION TO STRIKE

Finally, Defendants move to strike immaterial and impertinent portions of the Amended Complaint.  Motion at 17-18 (DE 27).  According to Defendants:

>The Amended Complaint is replete with references to the FTC proceeding and state agency matters. (D.E. 18 ¶¶ 2, 4, 74, 79, 184, 193, 194, 198, and 202 to 206). The prejudice to Defendants is clear. Unless stricken, references to the FTC proceeding against third parties and state administrative matters unconnected to the core allegations in the Amended Complaint will only create significant confusion and diversion into immaterial matters.

Reply at 10 (DE 36).

Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike serve "to 'clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.'"  Wiand v. Wells Fargo Bank, N.A., 938 F. Supp. 2d 1238, 1250 (M.D. Fla. 2013) (quoting Slone v. Judd, 2009 WL 5214984, at *1 (M.D. Fla. Dec.29, 2009)).  Yet, motions to strike "are not favored . . . and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties."  King v. Metropolitan Life Ins. Co., 331 F. Supp. 2d 1361, 1362 (M.D. Fla. 2003) (citing Poston v. Am. President Lines, Ltd., 452 F. Supp. 568, 570 (S.D. Fla. 1978)); accord Augustus v. Bd. of Public Instruction of Escambia County, Fla., 306 F.2d 862, 868 (5th Cir. 1962) ("The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy") (citation omitted); 5C Wright and Miller, Federal Practice and Procedure: Civil 3d § 1380 (2004) (noting that to prevail on a motion to strike a party must show "that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading . . . will be prejudicial to the moving party").

Although Defendants move the Court to strike references to the FTC case and interactions with state regulatory agencies as immaterial and impertinent, they fail to

identify any particular portions of those allegations, nor do they explain why those allegations are prejudicial.  To the contrary, a review of the Amended Complaint makes the relevance of both the FTC  and the state regulatory references readily apparent.  The references to the FTC action support Plaintiffs' allegations regarding the underlying scheme, as United States District Judge Darrin Gayles had previously conducted an evidentiary hearing and found (i) that one of Defendants' agents, Simple Health, made misrepresentations to consumers, and (ii) that "[t]hough consumers believed they were purchasing comprehensive health insurance coverage, [Simple Health] sold them practically worthless indemnity or discount plans." Cplt. ¶ 206.  Additionally, references to the state regulatory inquiries are relevant to the knowledge element of Plaintiffs' claims.  Id. ¶¶ 175-84.  Over a period of years, Defendants received extensive state regulatory scrutiny relating to its agents' "fraudulent and dishonest" sales practices, yet they failed to stop those practices.  Accordingly, these allegations directly support Plaintiffs' claims, and Defendants' Motion to Strike should be denied.

VI.    CONCLUSION

       For the foregoing reasons, the undersigned respectfully recommends that Defendants' Health Insurance Innovations, Inc., Health Plan Intermediaries Holdings, LLC, and Michael Kosloske's Motion to Dismiss Amended Class Action Complaint and to Strike (DE [27]) be GRANTED IN PART and DENIED IN PART.  More specifically, the undersigned RECOMMENDS that the Motion be granted to the extent that the incorporation paragraphs in each of the six counts – ¶¶ 230, 242, 246, 251, 256, 263 – be amended to include only those preceding paragraphs that pertain to that specific claim.  The undersigned further RECOMMENDS that the Motion as to Count VI (Unjust

Enrichment Against the HII Defendants) be granted to the extent that HIIQ (only) be dismissed.   In all other respects, the undersigned RECOMMENDS that the Motion be DENIED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.   Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.   See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 22nd day of October 2019.

BARRY S. SELTZER
United States Magistrate Judge

Copies via CM/ECF to:

Honorable Federico A. Moreno

All counsel of record