UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:19-cv-61430- MORENO/Seltzer

ELIZABETH E. BELIN, *et al.*,

      Plaintiffs,

v.

HEALTH INSURANCE INNOVATIONS, INC.,
*et al.*,

      Defendants.

_____/

**DEFENDANTS HEALTH INSURANCE INNOVATIONS, INC. AND HEALTH PLAN INTERMEDIARIES HOLDINGS, LLC'S OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION WITH <u>INCORPORATED MEMORANDUM OF LAW</u>**

Defendants, Health Insurance Innovations, Inc. ("HII"), Health Plan Intermediaries Holdings, LLC ("HPIH") (collectively, "HII Defendants") pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), hereby submit the following objections to the Report and Recommendation ("Magistrate's Report") dated October 22, 2019 (D.E. 39), with respect to Defendants' Motion to Dismiss Amended Class Action Complaint and to Strike (the "Motion to Dismiss") (D.E. 27).

**I.**      **<u>Introduction and Background</u>**

Plaintiffs' allege the following six causes of action against the HII Defendants: I) Violation of RICO 1962(c); II) Section 1962(d) RICO Conspiracy; III) Aiding and Abetting Violation of RICO 1962(c); IV) Aiding and Abetting Breach of Fiduciary Duty; V) Aiding and Abetting Fraud; VI) Unjust Enrichment.

41742253

The Magistrate Judge recognized that the Amended Complaint (D.E. 18) was a shotgun pleading, yet failed to dismiss the Amended Complaint in full. The Magistrate Judge also incorrectly relied on allegations directed to legitimate business conduct to support a RICO claim.

This Court should decline to adopt the Magistrate's Report for several compelling reasons. First, the Amended Complaint is a shotgun pleading and fails to give the HII Defendants notice of the claims against them. Second, in relying on claims directed to Simple Health's alleged scripts, the Magistrate Judge improperly determined that Plaintiff, Kevin Furman stated a plausible claim against the HII Defendants for violations connected to Nationwide Health. Third, the Magistrate Judge incorrectly determined that the Plaintiffs adequately pled the HII Defendants' conduct in the RICO scheme through a pattern of predicate offenses (mail and wire fraud) on which the RICO claim is based with particularity as required by Rule 9(b). Fourth, the allegations of HII Defendants' alleged participation in the affairs of the enterprise's affairs are nothing more than actions taken as part of the HII Defendants' ordinary operation of its business. Fifth, the Magistrate Judge improperly determined that failing to object after allegedly monitoring calls and fielding consumer complaints creates an inference of actual knowledge of the sales agents' fraudulent practices and an agreement with the overall objective of the conspiracy to defraud consumers using fraudulent scripts. Sixth, Plaintiffs have failed to sufficiently plead facts to support that the HII Defendants had actual knowledge and provided substantial assistance in support of the alleged RICO violations. Seventh, the Magistrate Judge failed to recognize that merely retaining a portion of a premium is an indirect benefit and not a direct benefit that supports a viable claim for unjust enrichment.

The Magistrate's Report recommended that the Motion to Dismiss be granted to the extent the incorporation paragraphs in each of the six counts be amended to include only those

preceding paragraphs that pertain to that specific claim and to the extent that HII (Only) be dismissed from the Unjust Enrichment Count. (D.E. 39). In all other respects, the Magistrate's Report recommended the Motion to Dismiss be denied. *Id.*

Plaintiffs have offered no realistic theory, by any stretch of the legal imagination, to support a RICO claim against the HII Defendants. The Amended Complaint does not contain any plausible facts to support the HII Defendants' participation in the preparation, review, and editing of fraudulent scripts, or in a scheme to defraud consumers through the use of fraudulent scripts. The Amended Complaint does not contain facts to support common law claims against the HII Defendants for aiding and abetting and unjust enrichment.

## II.     Argument.

### A.     Legal Standards

Upon receipt of objections to the Magistrate's Report, the Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 631(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *Carr v. Singletary,* 904 F. Supp. 1356, 1358 (M.D. Fla. 1995) (when a party makes a timely objection to a Magistrate Judge's Report and Recommendation, the determination is subject to a de novo determination of those portions of the report and recommendation to which objection is made). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. 636(b)(1)(C).

### B.     Amended Complaint is a Shotgun Pleading

The Magistrate Judge recognized that the Amended Complaint (D.E. 18) incorporated all of the first 229 paragraphs into the first paragraph of each of the causes of action directed toward the HII Defendants. The Magistrate Judge correctly determined that the Amended Complaint was a shotgun pleading, yet failed to dismiss the Amended Complaint with respect to the HII

Defendants. This impermissible shotgun pleading, which violate Rules 8(a)(2) and 10(b), requires dismissal of the Amended Complaint because it fails to "give the defendants adequate notice of the claim against them and the grounds upon which each claim rests." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015).

### C. Plaintiff, Kevin Furman's Claims Regarding Simple Health

Plaintiff, Kevin Smith is the only plaintiff who alleges he purchased products from Nationwide Health. The other plaintiffs allege they purchased products from Simple Health. The Magistrate Judge incorrectly determined that Kevin Furman adequately pled a RICO scheme, the HII Defendants' participation in the scheme and enterprise with particularity as required by Rule 9(b), conspiracy to commit RICO, and plausible claims for aiding and abetting and unjust enrichment. The Magistrate Judge's focus on the allegations regarding the alternative means to substantiate the fraud, the underlying fraud, and alleged misrepresentations made by Nationwide Health during the phone calls is error. (D.E. 39, p. 11). Kevin Furman fails to allege facts supporting the HII Defendants' actual role in the scheme to defraud and the actual fraud with specificity to comply with Rule 9(b)'s heightened pleading standard.

The initial Complaint was filed against the HII Defendants by two Plaintiffs, Elizabeth Belin and Chris Mitchell. (D.E. 1). Elizabeth Belin and Chris Mitchell, relying on information presumably obtained through the FTC action filed against Simple Health in the case entitled *FTC v. Simple Health Plans, LLC*, *et al.*, Case No. 18-cv-62593 (S.D. Fla. Oct. 29, 2018) ("FTC Action"), included allegations about scripts allegedly used by Simple Health in the marketing of insurance to consumers. (D.E. 1, ¶¶49-84). Nationwide Health and the HII Defendants are not named as defendants in the FTC Action.

In the Amended Complaint, Mitchell Kirby, Kathryn Svenson, Gabrielle Watson, and Kevin Furman were added as plaintiffs. Of the six named plaintiffs, Kevin Furman is the only

4

individual who allegedly purchased products through Nationwide Health. Yet, Plaintiffs include the exact same allegations about the scripts allegedly used by Simple Health during the phone calls in the Amended Complaint as alleged in the initial Complaint. (Compare D.E. 1, ¶¶49-84 to D.E.18, ¶¶62-98). These scripts are replete with references to Simple Health and are scripts allegedly *used by Simple Health not Nationwide Health*. (D.E. 18, ¶¶63, 65, 66, 69, 71, 74, 82, 96). Plaintiffs simply added paragraphs 86 and 99 to the Amended Complaint because they added Kevin Furman as a plaintiff and now allege that "Nationwide Health used a similar script". *Id.* at ¶¶86, 99. Simply pleading that a similar script was used does not satisfy Rule 9(b)'s pleading with particularity requirement to state a plausible claim for fraud to support a RICO claim connected to Nationwide Health. Kevin Furman does not allege any facts about the actual scripts used by Nationwide Health or that the scripts used by Nationwide Health contained fraudulent statements. *Id.*

Despite simply adding Kevin Furman as a plaintiff and failing to provide any actual fraudulent statements made to Kevin Furman from an actual script used by Nationwide Health, the Magistrate Judge determined that Kevin Furman pled the fraud with particularity. The Magistrate Judge determined that Plaintiffs plead the underlying fraud in significant detail devoting nearly 40 paragraphs to describing the contents of the standardized sales scripts used by Defendants' agents and explaining how the scripts misled consumers. (D.E. 39, p. 11). This is error as the Amended Complaint is devoid of particular facts of the scripts used by Nationwide Health and fraudulent statements to Kevin Furman from those scripts. The 40 paragraphs cited to by the Magistrate Judge are allegedly Simple Health's scripts. *See In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1347 (S.D. Fla. 2001) (dismissing RICO claims because even with the alternative means the particularity standard was not met).

5

Kevin Furman has failed to plead the fraud with specificity as it relates to Nationwide Health's alleged misrepresentations to satisfy Rule 9(b) particularity requirement. Kevin Furman's claims against the HII Defendants should be dismissed and all references to Nationwide Health should be stricken from the Amended Complaint.

**D.     RICO**

To state a plausible Section 1962(c) claim, a plaintiff must allege that defendants: (1) engaged in conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Williams v. Mohawak Indus., Inc.* 465 F.3d 1277, 1282 (11th Cir. 2006), abrogated on other grounds by *Ray v. Spirit Airlines, Inc.,* 836 F.3d 1340, 1349 (11th Cir. 2016). As Plaintiffs' racketeering claim is predicated on mail and wire fraud, the allegations in the Amended Complaint must comply not only with the plausibility criteria articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), but also with Rule 9(b)'s heightened pleading standard. *Cardenas v. Toyota Motor Corporation*, 2019 WL 4777891, at *3 (S.D. Fla. Sept. 30, 2019).

The Plaintiffs' racketeering claim is predicted on mail and wire fraud, and thus they must allege: (1) intentional participation in a scheme to defraud; and (2) the use of the interstate mails or wires in furtherance of that scheme. *Id.* A "scheme to defraud" requires proof of a material misrepresentation or the omission or concealment of a material fact calculated to deceive another out of money or property. *Id.*

**1.     Conduct and Pattern of Racketeering Activity**

The Magistrate Judge relies on general, conclusory allegations to support a finding that the HII Defendants engaged in essential steps in the fraudulent scheme and that sales were made through a common scheme of fraudulent scripts used by Defendants agents, read by the agents and reviewed, edited, and monitored by the Defendants. (D.E. 39, p. 11, 13, 15). The Magistrate

6

Judge's erred in relying on general allegations contained in paragraphs 3, 44, 46, 57, 78, 102, 164, 165, 172, 186, 207, 210, 214 to support the conclusion that the HII Defendants engaged in activities that were essential steps in the fraudulent scheme. The focus of this case is on fraudulent scripts allegedly used by Simple Health and Nationwide Health. There are no specific allegations supporting the HII Defendants' role in creating the scripts, approving the use of these scripts, authorizing Simple Health or Nationwide Health to use fraudulent scripts, or an inference that the HII Defendants had actual knowledge of the fraudulent scripts. Therefore, when you remove the conclusory statements about the fraudulent scripts, Plaintiffs are left with no plausible allegations to support their claims. The allegations against the HII Defendants must be dismissed.

This Court's recent opinion in *Cardenas*, 2019 WL 4777891 (S.D. Fla. Sept. 30, 2019) is instructive. In *Cardenas*, plaintiffs alleged various Toyota entities defrauded consumers by concealing a defect in the Heating, Ventilation, and Air Conditioning Systems installed in 2012-2017 Toyota Camrys and Camry Hybrids. *Id.* at 1. The plaintiffs alleged the Toyota entities violated RICO. The Court determined that the plaintiffs had alleged enough facts to support plausible RICO and RICO conspiracy claims against the Toyota Defendants. *Id.* at 6. In reaching its decision, the Court relied on allegations in the Complaint showing specific examples of Bulletins the Toyota Defendants posted describing the issues with the Heating, Ventilation, and Air Conditioning system. *Id.* at 3-4. Most importantly, the complaint alleged multiple, *specific examples of actual internal communications* between the Toyota Defendants showing that the Toyota Defendants knew about the issue and were hesitant to attempt to repair the issues because of Lemon Law liability. *Id.* at 4.

7

Here, Plaintiffs fail to allege any specific communications between the HII Defendants and any of the entities or individuals allegedly involved in the RICO enterprise about fraudulent scripts or misrepresenting the type of insurance products sold. Plaintiffs fail to allege specific facts showing how or when the HII Defendants created, edited, reviewed, and approved any fraudulent scripts allegedly used by Simple Health or Nationwide Health. Plaintiffs do not allege any facts supporting a plausible claim that the HII Defendants ever communicated with anyone, let alone Simple Health or Nationwide Health, about fraudulent scripts or that they knew about the enterprise and the scheme to defraud. The Magistrate's Report concluded that the HII Defendants must have known that fraudulent scripts were being used. However, this does not equate to actual knowledge that fraudulent scripts were being used to misrepresent the type of insurance being sold and does not create an inference that the HII Defendants participated in the scheme to defraud.

Citing to *United States v. Hasson*, 333 F.3d 1272, 1272-1273 (11th Cir. 2003), the Magistrate's Report states that for a violation to occur, the law does not require that the transmitted information itself contain the misrepresentation. (D.E. 39, p. 9). "An interstate wire transmission is 'for the purpose of executing' the scheme to defraud if it is 'incident to an essential part of the scheme' or 'a step in the plot'". *Hasson*, 333 F.3d 1272, 1272-1273 (11th Cir. 2003). However, *Hasson* still requires actual material misrepresentations to be made by the defendant for the purpose of executing the scheme to defraud. This applies regardless of whether the predicate act of mail or wire fraud included the misrepresentations.

In *Hasson*, Mr. Hasson was charged and convicted after a seven-week jury trial of wire fraud and conspiracy to commit wire fraud. *Id.* at 1269. Mr. Hasson sold customers gems, jewelry, and decorative pieces that failed to match the descriptions he gave. *Id.* at 1268. Mr.

8

Hasson frequently supported his representations with false appraisals prepared by himself or by a co-conspirator falsely represented to be independent and sometimes misrepresented his own credentials and provided forged appraisals. *Id.* Individuals then wire transferred funds to Mr. Hassan to purchase the jewelry. *Id.* 1272. While the Court stated "[t]o violate the wire fraud statute, it is not necessary that the transmitted information include any misrepresentations" the Court also stated that the misrepresentations made by Mr. Hasson were material to fraudulently induced the purchase. *Id.* at 1273.

The Amended Complaint does not contain any facts to establish that the HII Defendants made material misrepresentations of any kind in a scheme to defraud. *See In re Managed Care Litigation*, 150 F. Supp. 2d 1330, 1343 (S.D. Fla. 2001) (a "scheme to defraud" entails the making of misrepresentations intended and reasonably calculated to deceive persons or ordinary prudence and comprehension).

The Plaintiffs fail to allege specific facts supporting a plausible claim that the HII Defendants made any material misrepresentations to anyone, actively participated in creating and distributing the sales scripts allegedly used by Simple Health and Nationwide Health, or had actual knowledge that fraudulent sales scripts were being used by Simple Health and Nationwide Health in a scheme to defraud consumers. *See Cardenas*, 2019 WL 4777891, at *6 (S.D. Fla. 2019) (to plead the necessary scienter for a racketeering claim premised on mail and wire fraud, a plaintiff must allege the defendants "knowingly devised or participated in a scheme to defraud plaintiffs" and that they "did so willingly with an intent to defraud").

Unlike *Cardenas* where the Plaintiffs alleged actual internal communications and bulletins supporting a reasonable inference that the Toyota Defendants took actions to mislead consumers or conceal them to avoid liability and maintain revenue, Plaintiffs fail to allege

communications to support an inference that the HII Defendants took actions to engage in a scheme to defraud consumers. Plaintiffs' claims rest on mere conjecture.

Moreover, Plaintiffs fail to allege the precise documents the HII Defendants provided to Simple Health and Nationwide Health, including the time, place, and manner the documents were provided, who they were specifically provided to, and the content of those documents that ultimately misled the Plaintiffs. *See American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (in a RICO case, the plaintiff must allege facts with respect to each defendant's participation in the fraud). Plaintiffs fail to allege specific facts to support a plausible claim that the Defendants knowingly devised or participated in a scheme to defraud and did so willingly and with intent to defraud. Plaintiffs' general, conclusory allegations that the HII Defendants reviewed, edited, and approved the scripts do not satisfy the specificity requirement of Rule 9(b).

### 2. Participation in the Affairs of Enterprise

The Magistrate's Report states that purpose of the enterprise was to bundle products that were not major medical insurance, fraudulently refer to them as "major medical insurance," and sell them for more than they are worth. (Doc. 39, p. 15). The Magistrate Judge erred in determining that the factual allegations plausibly take Plaintiffs' claims beyond the realm of a garden-variety commercial relationship and "support the inference that the Defendants have some part in directing the affairs of [the] Enterprise." *Id.* at p. 18.

Plaintiffs fail to plead plausible facts showing "affirmative and deliberate participation" by the HII Defendants in the "conduct of the affairs of the enterprise" by knowingly implement[ing] and mak[ing] decisions" concerning the alleged racketeering activity pattern. *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1145 (11th Cir. 2016).

The allegations of HII Defendants' alleged participation in the affairs of the enterprise's affairs are nothing more than actions taken as part of the HII Defendants' ordinary operation of its business. The allegations that the HII Defendants provided advanced commissions to Simple Health and Nationwide Health to allow them to operate their call centers is normal practice in the insurance industry. Furthermore, setting commission rates, directing billing practices and premium collection services, directing call center training and compliance, directing the use of the HII Defendants online platform to quote the products and process the products sold, managing non-claims process are all functions of a normal business operation. *See Cisneros v. Petland, Inc.*, 341 F. Supp. 3d 1365, 1372 (N.D. Ga. 2018) (where businesses are alleged to be in a RICO enterprise, a plaintiff must allege activity that goes beyond normal self-interested business behavior). This is even the case where the plaintiff alleges that the individuals making up the enterprise acted fraudulently in pursuing their own business interests. *Id.*, citing *Parm v. Nat'l Bank of Cal. N.A.*, 242 F. Supp.3d 1321, 1347 (N.D. Ga. 2017) ("Even if Defendant used fraudulent means to carry out those activities, the activities constituted Defendant's own business affairs, not acts to further the goals of a separate enterprise).

With respect to the allegation that the HII Defendants reviewed, edited, and approved the fraudulent scripts, Plaintiffs fail to allege specific facts to infer that this actually happened, what scripts were reviewed, and how they were edited or approved by the HII Defendants. Again, the Plaintiffs fail to allege plausible facts to support an inference that the HII Defendants' directed the affairs of the enterprise and that the HII Defendants directed the enterprise to use fraudulent scripts to sell insurance.

Numerous other district courts have held that commercial relationships, like the ones alleged here, did not constitute RICO enterprises where plaintiff did not allege plausible actions

separate from the individual member's business objectives. *See Singh v. NYCTL 2009-A Tr.*, 2016 WL 3962009, at *10 (S.D.N.Y. July 20, 2016), aff'd, 683 F. App'x 76 (2d Cir. 2017) ("[T]he mere existence of routine business relationships among the defendants is insufficient to establish an 'enterprise' under RICO."); *Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, 2015 WL 4394408, at *15 (D. Md. July 15, 2015) ("[T]he allegations in the complaint are consistent with SurgCenter and each ASC carrying out their own business initiatives albeit perhaps in a fraudulent manner."); *Crissen v. Gupta*, 994 F.Supp.2d 937, 947 (S.D. Ind. 2014) ("Even if Banco Popular used fraudulent means to carry out those activities, those activities constituted Banco Popular's own business affairs and were not, as alleged, acts to further the goals of a separate enterprise."); *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 2012 WL 10731957, at *8 (C.D. Cal. June 29, 2012) (Parties that enter commercial relationships for their own gain or benefit do not constitute an enterprise.").

E.    **RICO Conspiracy**

Plaintiffs fail to allege a plausible claim for RICO Conspiracy against the HII Defendants. "A RICO Conspiracy requires either showing: (1) an agreement with the overall objective of the conspiracy; or (2) an agreement to commit two predicate acts." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010). The Magistrate Judge erred in determining that the allegations strongly suggest or, at the very least, permit the inference that the HII Defendants agreed to the conspiracy's overall objective. (D.E. 18, p. 19).

While this Court in *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1281 (S.D. Fla. 2003) acknowledged that an agreement with the overall objective of the conspiracy or an agreement to commit two predicate acts may be inferred, the Court also stated that "[t]he existence of an agreement to further illegal acts that is the key." *Id.* "Proof of the agreement is at the heart of a conspiracy claim." *Cardenas*, 2019 WL 4777891, at *6 (S.D. Fla. Sept. 30, 2019)

(the essence of a RICO conspiracy is that each defendant has *agreed* to participate in the conduct of an enterprise's illegal activity).

The Magistrate's Report finding that the HII Defendants should have objected after allegedly learning that Simple Health and Nationwide Health were misleading consumers into believing they were purchasing major medical insurance cannot support a RICO conspiracy claim. The Magistrate Judge improperly determined that failing to object after allegedly monitoring sales practices and handling consumers' complaints rises to the level of actual knowledge of the agents' fraudulent practices and an agreement with the overall objective of the conspiracy to defraud consumers using fraudulent scripts. Failing to object to consumer complaints does not create an inference that the HII Defendants entered into an agreement with Simple Health and Nationwide Health to engage in a conspiracy to fraudulently misrepresent the products to further the scheme to defraud consumers.

In *Cardenas,* the Complaint contained specific examples of actual internal communications between the Toyota Defendants showing that the Toyota Defendants knew about the issue and were hesitant to attempt to repair the issues because of Lemon Law liability to create an inference of knowledge of the conspiracy. Unlike *Cardenas*, the Magistrate Judge's reliance on the HII Defendants' regular business activities in handling consumer complaints and inquiries from state agencies, does not create an inference that the HII Defendants had actual knowledge that Simple Health and Nationwide Health were engaged in a scheme to defraud and agreed with the overall objective of the scheme to defraud.

The Eleventh Circuit decision in *American Dental Ass'n* supports the dismissal of Plaintiffs' conspiracy claim because once the boilerplate and conclusory allegations are removed, parallel conduct accompanied by bare allegations of a conspiracy do not plausibly suggest the

13

existence of a conspiracy. 605 F.3d at 1294-95. Nothing in the Amended Complaint plausibly infers that "Defendants have acted in any way inconsistent with the independent pursuit of their own economic self-interest." *Id*. at 1295. The conspiracy claim in this case should be dismissed as it was in *American Dental Ass'n* insofar as "Defendants' parallel conduct is equally indicative of rational independent action as it is concerted, illegitimate conduct and thus 'stays in neutral territory.'" *Id*. (citation omitted).

### F. Aiding and Abetting RICO, Aiding and Abetting Breach of Fiduciary Duty, and Aiding and Abetting Fraud

For the reasons set forth above, Plaintiffs' claim for aiding and abetting a RICO claim fail. Plaintiffs have failed to sufficiently plead facts to support that the HII Defendants had actual knowledge and provided substantial assistance in support of the alleged RICO violations, the fraud, and the breach of fiduciary duty. *See In re Palm Beach Fin. Partners L.P. v. BMO Harris Bank, N.A.*, 488 B.R. 758, 771 (Bankr. S.D. Fla. 2013). As aiding and abetting RICO is predicated on a RICO claim, and the RICO claim fails, the Magistrate Judge erred in finding that Plaintiff's stated a plausible claim for aiding and abetting RICO.

Plaintiffs allegations directed to the HII Defendants are nothing more than allegations regarding normal business functions. Furthermore, as stated above, Plaintiffs fail to allege facts supporting a plausible claim that the HII Defendants had actual knowledge and substantially assisted the common law fraud and breach of fiduciary duty claims. *Lamm v. State St. Bank & Trust Co.*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012) (allegations that bank's disregard of "obvious red flags" such as atypical and non-routine banking transactions insufficient to establish conscious awareness of wrongdoing to maintain an aiding and abetting cause of action).

Without specific plausible allegations of fact, Plaintiffs generally assert that the HII Defendants had actual knowledge of the scheme by providing training and compliance

14

monitoring, reviewing and editing the sales scripts, monitoring calls, reviewing call transcripts and acting as post-closing service agent. Beyond these boilerplate allegations regarding typical business functions, the Amended Complaint lacks any plausible allegations that the HII Defendants actually reviewed a fraudulent script, monitored a call where misrepresentations where made, or had actual knowledge of the scheme to defraud. In *Lamm,* the court dismissed the aiding and abetting breach of fiduciary duty and fraud claims because "[t]hough Plaintiff has generally alleged actual knowledge, the factual allegations at most establish that [the bank] should have known of the underlying breaches." *Id.* at 1332-33. Here, these allegations do not even plausibly infer that the HII Defendants should have known about any misrepresentations, let alone satisfy the plausibility standard for actual knowledge. *Johnson v. Catamaran Health Solutions, LLC*, 687 F. App'x. 825, 831 (11th Cir. 2011) (affirming the dismissal of an aiding and abetting breach of fiduciary claim where plaintiffs alleged that the insurance broker solicited, marketed, and collected premiums and administered the plan).

### G. Unjust Enrichment

The Magistrate Judge erred in determining that the Amended Complaint adequately states a claim for unjust enrichment against HPIH. (D.E. 39, p. 27). The Magistrate Judge recognized that a party must allege that it had directly conferred a benefit on the defendants. *Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1266-67 (S.D. Fla. 2011) (citing *Hillman Const. Corp. v. Wainer*, 636 So.2d 576, 577 (Fla. 4th DCA 1994)). However, the Magistrate Judge failed to recognize that merely retaining a portion of a premium is an indirect benefit and not a direct benefit that supports a viable claim for unjust enrichment. *Harvey v. Florida Health Scis. Ctr., Inc.*, 728 F. App'x 937, 946-47 (11th Cir. 2018) (indirect benefit does not support first element of unjust enrichment). Instead, the Magistrate Judge stated that unjust enrichment claims are available under Florida law even where adequate legal remedies exist.

15

## III. Conclusion.

For all of these reasons, Defendants, Health Insurance Innovations, Inc., Health Plan Intermediaries Holdings, LLC, respectfully request this Court decline to adopt the portions of the Magistrate's Report denying the Motion to Dismiss, and dismiss the Amended Complaint for failure to state a claim upon which relief may be granted.

Dated: November 5, 2019.

> By: s/ Dariel Abrahamy
> Garry W. O'Donnell, Esq.
> Florida Bar No. 0478148
> Email: garry.odonnell@gmlaw.com
> Dariel J. Abrahamy, Esq.
> Florida Bar No. 0014901
> Email: dariel.abrahamy@gmlaw.com
> GREENSPOON MARDER LLP
> 2255 Glades Road, Suite 400-E
> Boca Raton, Florida 33431
> Telephone: (561) 994-2212
> Facsimile: (561) 807-7527
> *Attorneys for Defendants,*
> *Health Insurance Innovations, Inc., Health Plan*
> *Intermediaries Holdings, LLC, and Michael Kosloske*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was filed with the Clerk of Court using the Court's CM/ECF system on this 5th day of November, 2019, which will generate notification to all known counsel of record or pro se parties.

> By: s/ Dariel Abrahamy
> Dariel Abrahamy