UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(FT LAUDERDALE DIVISION)

CASE NO. 0:19-cv-61430- MORENO/Seltzer

ELIZABETH E. BELIN, *et al.*,

    Plaintiffs,

v.

HEALTH INSURANCE INNOVATIONS, INC., *et al.*,

    Defendants.

_____/

**PLAINTIFFS' OMNIBUS RESPONSE TO DEFENDANTS' OBJECTIONS
TO THE MAGISTRATE'S REPORT AND RECOMMENDATION
WITH INCORPORATED MEMORANDUM OF LAW**

Class Plaintiffs, Elizabeth E. Belin, Christopher Mitchell, Kevin Furman, Mitchell Kirby, Gabrielle Watson and Kathryn Svenson, individually and on behalf of those similarly situated (collectively, "Plaintiffs"), respond to the Objections to the Magistrate's Report and Recommendation [D.E. 42, 43] filed by Defendants, Health Insurance Innovations, Inc., Health Plan Intermediaries Holdings, LLC's and Michael Kosloske (together, "Defendants' Objections").

## I. INTRODUCTION

Magistrate Judge Seltzer's well-reasoned, 30-page report and recommendation (the "R and R") stands on its own and should be affirmed and adopted by this Court. In their objections to the R and R, Defendants improperly raise new arguments, and raise other issues that are refuted by the R and R and Plaintiffs' Amended Complaint. None of the arguments supports dismissal of the Amended Complaint. This Court should, as recommended by the Magistrate Judge, deny Defendants' Motion to Dismiss Amended Class Action Complaint and to Strike and Supporting

Memorandum of Law, (D.E. 27), and grant leave for Plaintiffs to amend those portions of the Amended Complaint specified by the R and R.

Defendants' newly raised arguments "singling out" the sufficiency of Plaintiff Kevin Furman's allegations were not presented to Magistrate Judge Seltzer and therefore are untimely and improper. Regardless, Furman pleads his claims with the requisite level of particularity, and Defendants' arguments to the contrary are without merit.

Regarding Plaintiffs' RICO claim, Plaintiffs have pled sufficient allegations of RICO conduct and a pattern of racketeering activity. Magistrate Judge Seltzer correctly held that the Amended Complaint is "replete" with allegations regarding Defendants' role in operating and managing the RICO Enterprise. Plaintiffs have adequately alleged Defendants' relationship to the RICO Enterprise, and Defendants' conduct amounts to more than a mere "commercial relationship with other RICO entities."

As for the HII Defendants' founder and former president, Kosloske, his argument regarding his role in the RICO Enterprise is also untimely and improperly raised. Regardless, as Magistrate Judge Seltzer noted, the Amended Complaint contains sufficient allegations detailing Kosloske's role in the RICO Enterprise.

As for Plaintiffs' RICO conspiracy claim, Magistrate Judge Seltzer correctly found that Plaintiffs provide sufficient allegations supporting the permissive inference that Defendants consented to and participated in the RICO conspiracy, as well as the existence of two predicate acts. Not only did Defendants fail to stop fraudulent practices from occurring, they financed the operations of Simple Health and Nationwide Health, licensed their sales agents, paid high commissions to encourage more sales, and paid agents' legal fees when regulators investigated.

Magistrate Judge Seltzer also correctly held that Plaintiffs sufficiently pled their aiding and abetting RICO, fraud and fiduciary duty claims. Plaintiffs more than adequately allege the actual knowledge and substantial assistance elements of those claims. Plaintiffs describe the underlying fraud in detail, and cite extensively to the standardized scripts as evidence that the agents created a "special relationship" necessary to establish a fiduciary duty under Florida law.

Plaintiffs also adequately pled their unjust enrichment claim against HPIH, as Magistrate Judge Seltzer held. The ill-gotten premiums are paid to and received by HPIH, which distributes commissions to Defendants' agents and keeps the remaining premium. (Am. Compl. ¶ 188).

Finally, Defendants do not challenge Magistrate Judge Seltzer's denial of Defendants' motion to strike portions of the Amended Complaint referring to the FTC Action and state regulatory agency investigations. Those portions directly support Plaintiffs' claims and should not be stricken from the Amended Complaint.

## II. ARGUMENT

### A. Magistrate Judge Seltzer's "Shotgun Pleading" Recommendation Does Not Warrant Dismissal With Prejudice

Magistrate Judge Seltzer found that Plaintiffs' Amended Complaint "is well organized and specifically detailed. . . . Given the Amended Complaint's meticulous organization and headings, Defendants cannot persuasively argue that they are unaware as to which factual allegations pertain to which claims . . . ." (R and R at 6).

Nonetheless, Magistrate Judge Seltzer found that Plaintiffs' allegations violated the rule that prohibits incorporating all allegations into all counts. Plaintiffs will amend the Amended Complaint and correct this technical violation.

Defendants seek more: a dismissal with prejudice. But where a plaintiff files a shotgun pleading, "a district court must sua sponte give him one chance to replead before dismissing his

3

case with prejudice on non-merits shotgun pleading grounds." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018).  Indeed, dismissal with prejudice "is an extreme sanction" in the context of a shotgun pleading that may be imposed only when "(1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 n.10 (11th Cir. 2015).

None of these factors are relevant here, and nowhere in their objections do Defendants contend that they are.  This Court should permit Plaintiffs to amend the portions of the Amended Complaint identified by Magistrate Judge Seltzer.

**B.    Defendants Never Raised Their Argument Regarding Plaintiff Furman; Regardless, That Argument Has No Merit Because Furman's Claims Are Particularly Pled**

Where a party fails to present an argument to the Magistrate Judge, the district court may exercise its discretion to not review that argument at the objection phase. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009); *Wreal, LLC v. Amazon.com, Inc.*, No. 14-21385-CIV, 2019 WL 3890320, at *13 (S.D. Fla. July 26, 2019).  This Court should exercise that discretion here and reject Defendants' newly raised argument that plaintiff Kevin Furman failed to adequately plead his claims.  (D.E. 42 at 15; D.E. 43 at 4).  Defendants could have made the argument in their Motion to Dismiss, but failed to do so.  As such, Furman had no opportunity to address, and Magistrate Judge Seltzer had no opportunity to resolve, the argument.

If given the opportunity, Furman would have responded that he adequately pled the "who, what, where and when" of his particular interaction with the scheme alleged in the Amended

Complaint. Furman alleges that "in late 2017,"[1] he searched for the terms "major medical inexpensive" on his web browser. (Am. Compl. ¶ 137). This led him to a website containing the phone number for one of Nationwide Health's entities. (*See id.*). He called the number and spoke with a Nationwide Health sales agent whose name he cannot remember.[2] (*See id.* ¶ 138). The sales agent told Furman "that Furman would receive major medical insurance to protect against catastrophic health costs." (*Id.*). He received an information packet directly from the HII Defendants via email, and membership cards directly from the HII Defendants via U.S. mail. (*See id.* ¶ 140). And he paid an enrollment fee and monthly premiums for approximately one year. (*See id.* ¶¶ 138, 141). These particularized facts are sufficient for purposes of Rule 9(b) and RICO.

Defendants also argue for the first time that Plaintiffs failed to allege "particular facts of the scripts used by Nationwide Health and fraudulent statements to Kevin Furman from those scripts." (D.E. 43 at 5). That simply is not true. Plaintiffs allege that Nationwide Health used a similar script to that used by Simple Health, with similar ramifications for agents who did not adhere to it. (Am. Compl. ¶¶ 86, 99). These allegations are supported by Furman's allegations describing the scheme that befell him: quite simply, that he was told he would receive major medical insurance, but he did not. (*See id.* ¶¶ 137–41).

C.  **Magistrate Judge Seltzer Correctly Found Sufficient Allegations of RICO Conduct and a Pattern of Racketeering Activity**

Magistrate Judge Seltzer ruled that Plaintiffs' pleading "is replete with allegations of Defendants' role in operating and managing the enterprise." (R and R at 17). Magistrate Judge

---

[1] Plaintiffs submit that this timeframe is particular enough to put Defendants on notice as to when Furman contacted Defendants. Furman has reviewed files suggesting that the events occurred in early December 2017, and more specifically December 8 — a detail that Plaintiffs can add to the complaint if necessary.

[2] Plaintiffs have issued a subpoena to Nationwide Health seeking, among other things, information containing the sales agent's identity.

Seltzer then listed at least eight different allegations supporting that ruling. (*See id.*). Defendants' objection challenges only one of those allegations — that Defendants reviewed, edited and approved the fraudulent scripts — calling it "conclusory." (D.E. 43 at 7).

In making this argument, Defendants confuse the particularity required to plead the fraud — the who, what, where and when of the misrepresentations made to Plaintiffs by Defendants' agents — with the factual allegations that support Defendants' role in the scheme. It is enough at this stage of litigation to allege that Defendants reviewed, edited and approved the scripts, as that allegation must be taken as true. This is especially so when it is alleged with the following additional detail, which Defendants seem to ignore:

> 165. As part of this training and compliance process, the HII Defendants' representatives reviewed the misleading scripts and at times directed or suggested edits to be made to those scripts. The HII Defendants' "Call Center Quality Department" monitored and critiqued the sales agents' presentations, which were read verbatim from the script. Transcripts of those calls, and the Quality Department's critiques, were received, acknowledged and read by the HII Defendants' Vice President of Sales, Amy Brady. The HII's Defendants' representatives also discussed the script, and the sales pitches, with distributor sales agents.

(Am. Compl. ¶ 165).[3]

Defendants also argue that Plaintiffs were required to allege that Defendants themselves made material misrepresentations. (D.E. 43 at 8–9). But Magistrate Judge Seltzer's holding on this point is spot-on. (R and R at 9). Under *U.S. v. Hasson*, 333 F.3d 1272, 1272–73 (11th Cir. 2003), the law does not require that the wire, mail or email itself contain the misrepresentation.

---

[3] Although Plaintiffs maintain that their current allegations on this point are sufficient, Plaintiffs can also allege, for example, that on February 18, 2016, Simple Health's chief compliance officer, Cam Girourard, sent an email to its chief executive officer, Steve Dorfman, showing the HII Defendants' participation in the scripts. Girourard writes: "This is a copy of the script [HII] sent to us to use. I have also attached a copy of the script I tailored up for us to use that they were initially ok with, but then came up with other stuff." The script sent by HII looks substantially similar to the script that Simple Health used and that Plaintiffs excerpted in the Amended Complaint.

(*See id.*).  Defendants can be held liable under RICO for mailing and emailing membership cards and fulfillment documents that are postclosing activities incident to an essential step in the scheme: inducing victims to continue to make monthly payments, and facilitating those payments.

**D.      Magistrate Judge Seltzer Correctly Found Sufficient Allegations That Defendants Participated in the Enterprise**

Magistrate Judge Seltzer carefully considered and rejected Defendants' argument that Plaintiffs' allegations describe a "garden-variety commercial enterprise."  (R and R at 15–19).  Magistrate Seltzer acknowledged Plaintiffs' allegations of an Enterprise that "bundled products that were not major medical insurance, fraudulently referred to them as 'major medical insurance,' and sold them for more than they were worth."  (*Id.* at 15).  He considered Plaintiffs' allegations of the relationships between Defendants and agents like Simple Health and Nationwide Health, finding them "sufficiently detailed" at this stage of proceedings.  (*See id.* at 15–17).  And Magistrate Judge Seltzer catalogued Plaintiffs' allegations of Defendants' role in operating and managing the Enterprise, finding that they "support the inference that the Defendants have some part in directing the affairs of the Enterprise."  (*Id.* at 18).

Defendants' argument that Plaintiffs' allegations describe mere "commercial relationships" rather than a RICO enterprise was considered and rejected by Magistrate Judge Seltzer, who held that the "United States Supreme Court has rejected the argument that RICO should be narrowly construed as a per se exclusion of business disputes."  (R and R at 13) (quoting *Special Purpose Accounts Receivable Co-op. Corp. v. Prime One Capital Co.*, 202 F. Supp. 2d 1339, 1346 (S.D. Fla. 2002)).

In sum, the Amended Complaint's factual allegations more than support the inference that the Defendants played a role in directing the affairs of the Enterprise.  *See In re Managed Care Litig.,* 150 F. Supp. 2d 1330, 1342 (S.D. Fla. June 12, 2001) (Moreno, J.).  These allegations

plausibly take Plaintiffs' claims beyond the realm of a garden-variety commercial relationship or parallel, uncoordinated fraud, particularly at the motion to dismiss phase.

### E.  Magistrate Judge Seltzer Correctly Found That Plaintiffs Sufficiently Pled Kosloske's Role in the Enterprise

As for Kosloske's role in the RICO Enterprise, Kosloske contends that Plaintiffs' allegations are insufficient. (D.E. 42 at 5). This argument, which spans approximately six pages (D.E. 42 at 4–10), was absent from Defendants' Motion to Dismiss, other than a single sentence characterizing the allegations against Kosloske as "meager and formalistic." (D.E. 27 at 8). This Court can and should refuse to consider this argument because it was not first presented to the magistrate judge. *See Wreal,* No. 14-21385-CIV, 2019 WL 3890320, at *13.

Regardless, as Magistrate Judge Seltzer acknowledged on page 16 of the R and R, the Amended Complaint alleges that Kosloske "approved the products to be sold; recruited agents like Dorfman, Spiewak, Donisi and Jaxheimer; developed distribution channels through their companies; approved the HII Defendants' financing of those companies; and participated in the management and operation of the Enterprise's compliance, training and administrative functions." (Am. Compl. ¶¶ 43, 211–12). Kosloske did this despite knowing "that distributors including Simple Health and Nationwide Health were using misrepresentations and omissions to induce customers seeking major medical insurance to purchase relatively worthless limited benefit indemnity products and medical discount plans." (*Id.* ¶ 219). Plaintiffs allege that despite this knowledge, Kosloske caused the HII Defendants to commit predicate acts — including but not limited to sending enrollment packets, membership cards, billing statements, customer service letters and solicitations for payment. (*See id.* ¶ 216). These allegations are sufficient for purposes of establishing Kosloske's participation in the Enterprise.

**F.    Magistrate Judge Seltzer Correctly Found That Plaintiffs Sufficiently Pled RICO Conspiracy Under Section 1962(d)**

Attacking Plaintiffs' RICO conspiracy claim, Defendants argue that Magistrate Judge Seltzer "improperly determined that failing to object after allegedly monitoring sales practices and handling consumers' complaints rises to the level of actual knowledge of the agents' fraudulent practices and an agreement with the overall objective of the conspiracy to defraud consumers using fraudulent scripts." (D.E. 43 at 13). That mischaracterizes Magistrate Judge Seltzer's holding. Defendants' failure to stop such conduct from occurring "permits the inference" that Defendants consented to them. (R and R at 19). Such a permissive inference is entirely appropriate and comports with common sense.

Moreover, as Magistrate Judge Seltzer highlights, Defendants' participation in the conspiracy did not stop there. (R and R at 19). "Far from intervening to stop these practices," Defendants financed the operations of Simple Health and Nationwide Health, licensed their sales agents, paid high commissions to encourage more sales, and paid agents' legal fees when regulators investigated. (*Id.*).

Defendants cite this Court's recent decision in *Cardenas v. Toyota Motor Corp.*, No. 18-22798-CIV, 2019 WL 4777891 (S.D. Fla. Sept. 30, 2019). (*See* D.E. 42 at 6; D.E. 43 at 13). However, *Cardenas* supports Plaintiffs' argument.[4] In *Cardenas*, this Court reiterated the rule that "[a]n agreement under RICO need not be established by direct evidence, however; *it may be inferred* from the conduct of the participants." *Cardenas*, No. 18-22798-CIV, 2019 WL 4777891, at *6 (citation omitted) (emphasis added). There, this Court held that the plaintiffs had adequately

---

[4]    Indeed, Plaintiffs cited *Cardenas* in their Notice of Supplemental Authority in Support of Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss Amended Class Action Complaint. (D.E. 38).

alleged a scheme to defraud where, among other things, the defendants were aware of a certain defect "based upon numerous complaints filed with the National Highway and Traffic Safety Administration by consumers[.]" *Id.* at *3. So too here, Plaintiffs alleged that Defendants received complaints from consumers that the information they were provided "was not accurate or was misleading" (Am. Compl. ¶ 166). Those complaints included "thousands of calls from consumers complaining that they had been led to believe they had bought comprehensive medical insurance[,]" (*id.* ¶ 167), as well as complaints from the Better Business Bureau that Simple Health was generating numerous complaints amount its business practices. (*Id.* ¶ 174). Defendants knew of investigations conducted by state regulatory agencies — from Montana, Arkansas, Pennsylvania, Florida, California, Washington, and others. (*Id.* ¶¶ 176–83). These facts, which are thematically similar to those in *Cardenas*, support the inference that Defendants had actual knowledge that Simple Health and Nationwide Health were engaged in a scheme to defraud.

Magistrate Judge Seltzer also found that Plaintiffs alleged an agreement to commit two predicate acts. (*See id.* at 19–20). As such, the Magistrate Judge correctly concluded that the allegations in the Amended Complaint support the existence of a RICO conspiracy against the HII Defendants under § 1962(d).

Kosloske contends that, as to the conspiracy claim, Magistrate Judge Seltzer cites only to paragraphs within the Amended Complaint that relate to the HII Defendants and not to Kosloske. (D.E. 42 at 12). But other than a single-sentence argument that Plaintiffs' allegations were missing "any allegation directed to Kosloske[,]" (*see* D.E. 27 at 15), Kosloske never raised this issue in his Motion to Dismiss. This Court should not consider Kosloske's argument at this point. *See Wreal,* No. 14-21385-CIV, 2019 WL 3890320, at *13.

Even if it did, Kosloske's arguments are refuted by Plaintiffs' allegations and applicable law. As Magistrate Judge Seltzer noted, a RICO conspiracy requires either showing: (1) an agreement with the overall objective of the conspiracy; or (2) an agreement to commit two predicate acts. (R and R at 18) (citing *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010). The court may infer such agreements from a plaintiff's allegations. *See id.* (citing *In re Managed Care Litig.*, 298 F. Supp. 2d at 1281). Direct evidence is not required. *See id.* (citing *Am. Dental*, 605 F.3d at 1293). Here, Kosloske's involvement in the conspiratorial scheme is adequately pled. (*See* Am. Compl. ¶¶ 43, 211–12, 216, 219).

### G. Magistrate Judge Seltzer Correctly Found That Plaintiffs Sufficiently Pled Their Aiding and Abetting RICO, Fraud and Fiduciary Duty Claims

Magistrate Judge Seltzer correctly concluded that the Amended Complaint sufficiently alleges claims for aiding and abetting a RICO violation, breach of fiduciary duty and fraud. (R and R at 22, 24–25). As to the HII Defendants, Magistrate Judge Seltzer recognized that Plaintiffs allege facts establishing that Defendants actions were more than just "normal business functions" and that the HII Defendants had actual knowledge and substantially assisted the common law fraud and breach of fiduciary duty claims. (*See id.* at 14).

Plaintiffs plead facts giving rise to a strong inference that Defendants knew about the scheme. (Am. Compl. ¶¶ 163–84). Defendants provided training and compliance monitoring to Simple Health and Nationwide Health. (*See id.* ¶ 164). They reviewed and edited the fraudulent scripts. (*See id.* ¶ 165). They monitored calls to customers and reviewed transcripts of those calls. (*See id.*). Moreover, Defendants acted as post-closing customer service agent to consumers who purchased through Simple Health and Nationwide Health. (*See id.* ¶¶ 166–67). Defendants have acknowledged that in that role, they received thousands of complaints that Defendants themselves lodged as "Agent Misreps," and processed thousands of refunds. (*See id.* ¶¶ 167–71). Defendants

11

received dozens of inquiries from state agencies regarding these practices. (*See id.* ¶¶ 175–84). Taken together, these allegations plausibly support the knowledge element.

As for substantial assistance, it "occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 295 (2d Cir. 2006). "Whether the assistance was 'substantial' depends on the totality of the circumstances." *Rudolph v. Arthur Anderson & Co.,* 800 F.2d 1040, 1046 (11th Cir. 1986)). Here, the Amended Complaint alleges that despite Defendants' knowledge of the scheme, Defendants substantially assisted Simple Health and Nationwide Health. (Am. Compl. ¶¶ 185–94). With knowledge of the scheme, Defendants financed the agents' operations. (*See id.* ¶¶ 186–87). Defendants acted as the agents' third-party administrator, which included dealing with the customers who were victimized. (*See id.* ¶¶ 188–89). Defendants facilitated Simple Health's licensing requirements and covered their legal fees arising out of the state regulatory investigations. (*See id.* ¶¶ 191, 193). As the R and R correctly held, the allegations of the Amended Complaint for aiding and abetting fraud are sufficient to overcome Defendants' Motion to Dismiss. (D.E. 39 at 25).

The aiding and abetting claims are also adequately pled as to Kosloske. Again, Plaintiffs allege that, with knowledge of the fraudulent scheme,[5] Kosloske approved the products; recruited Simple Health and Nationwide Health through their principals, Dorfman, Spiewak, Donisi and Jaxheimer; developed distribution channels through their companies; approved the financing of those companies; and participated in the management and operation of the enterprise's compliance, training, and administrative functions. (Am. Compl. ¶¶ 43, 210–12).

---

[5] Knowledge can be alleged generally. Fed. R. Civ. P. 9(b).

H. **Plaintiffs' Unjust Enrichment Claim Is Adequately Pled**

Defendants object to Magistrate Judge Seltzer's holding that Plaintiffs adequately pled unjust enrichment against HPIH, arguing he "failed to recognize that merely retaining a portion of a premium is an indirect benefit and not a direct benefit." (D.E. 43 at 15). The argument ignores Plaintiffs' allegations that premiums are paid directly to HPIH, which distributes commissions to Defendants' agents and keeps the remaining premium. (Am. Compl. ¶ 188).

I. **Defendants Do Not Challenge the Magistrate Judge's Denial of the Motion to Strike**

When a party does not challenge a magistrate judge's report and recommendation to the district judge, the district court reviews the magistrate judge's ruling for "clear error on the face of the record" rather than de novo. *See Mitchel v. Franklin*, No. 18-CIV-61404-RAR, 2019 WL 5290876, at *1 (S.D. Fla. July 25, 2019). Here, none of the Defendants object to the Magistrate Judge's denial of Defendants' motion to strike portions of the Amended Complaint referring to the FTC Action and state regulatory agency investigations. [6] (*See* D.E. 42, 43).

No clear error exists on the face of the record. References to the FTC Action and state regulatory agencies are very relevant to Plaintiffs' claims, supporting allegations regarding the underlying scheme. In the FTC Action, Judge Gayles conducted an evidentiary hearing and found (i) that one of Defendants' agents, Simple Health, made misrepresentations to consumers, and (ii) that "[t]hough consumers believed they were purchasing comprehensive health insurance coverage, [Simple Health] sold them *practically worthless* indemnity or discount plans." (Am. Compl. ¶ 206) (emphasis added). And over a period of years, Defendants received extensive state

---

[6] The HII Defendants do bring a new argument: that all references to Nationwide Health should be stricken from the Amended Complaint. (D.E. 43 at 6). The argument is not properly raised, and this Court should decline to consider it here. *See Wreal*, No. 14-21385-CIV, 2019 WL 3890320, at *13 ("Because the argument was not properly presented to the magistrate judge, the Court exercises its discretion to not consider it here.").

13

regulatory scrutiny relating to its agents' "fraudulent and dishonest" sales practices. (*See id.* ¶¶ 175–84). Yet Defendants did not stop those practices. Far from "extraneous, irrelevant and confusing," these allegations directly support Plaintiffs' claims.

### III. CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court affirm and adopt the Report and Recommendation, and issue such further relief that this Court deems just and proper.

Respectfully submitted,

| | |
|---|---|
| LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP | THE DOSS FIRM, LLC |
| By: /s/Jason K. Kellogg<br>    Jeffrey C. Schneider, P.A.<br>    Florida Bar No. 933244<br>    Primary email: jcs@lklsg.com<br>    Secondary email: mt@lklsg.com<br>    Jason K. Kellogg, P.A.<br>    Florida Bar No. 0578401<br>    Primary email: jk@lklsg.com<br>    Secondary email: mco@lklsg.com<br>    Alexander Strassman, Esq.<br>    Florida Bar No. 111788<br>    Primary email: ags@lklsg.com<br>    Secondary email: ah@lklsg.com<br>    Tal Aburos, Esq.<br>    Florida Bar No. 1010901<br>    Primary email: ta@lklsg.com<br>    201 South Biscayne Boulevard<br>    Citigroup Center, 22nd Floor<br>    Miami, Florida 33131<br>    Telephone: (305) 403-8788<br>    Facsimile: (305) 403-8789 | By: /s/Jason Doss<br>    Jason R. Doss<br>    Florida Bar No. 0569496<br>    Primary email: jasondoss@dossfirm.com<br>    The Brumby Building<br>    127 Church Street, Suite 220<br>    Marietta, Georgia 30060<br>    Telephone: (770) 578-1314<br>    Facsimile: (770) 578-1302 |

CASE NO. 0:19-cv-61430-MORENO/SELTZER

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on November 19, 2019, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Jason K. Kellogg*
Jason K. Kellogg, P.A.