UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(FT LAUDERDALE DIVISION)

CASE NO. 0:19-cv-61430- SINGHAL/VALLE

ELIZABETH E. BELIN, *et al.*,

           Plaintiffs,

v.

HEALTH INSURANCE INNOVATIONS, INC.,
*et al.*,

           Defendants.

_____/

**DEFENDANT, HEALTH PLAN INTERMEDIARIES HOLDINGS, LLC'S
RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL BETTER
ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS
AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Health Plan Intermediaries Holdings, LLC ("HPIH"), submits the following response in opposition to Plaintiffs' Motion to Compel Better Answers to Interrogatories and Production of Documents [Doc. 59] (the "Motion").

**I.**      **Introduction and Relevant Background**

Plaintiffs allege HPIH participated in a federal racketeering scheme to defraud consumers related to the sale of insurance. [Doc. 53]. Specifically, Plaintiffs allege two non-party insurance agencies misrepresented the type of insurance being sold through the alleged use of fraudulent sales scripts by their sales persons.

Through their discovery tactics, Plaintiffs confirm they have no intention of simply conducting discovery "in earnest," as they claim in their Motion, but, rather, are intent on using discovery as a tool to harass and burden HPIH with overbroad and disproportional discovery before HPIH has even answered the Second Amended Complaint. Indeed, when viewed in their entirety, the numerous written discovery requests they have propounded, *all before HPIH has*

*answered the Second Amended Complaint* – including four sets of requests for production totaling 122 document requests, two sets of interrogatories numbering 36 separate interrogatories, and a Rule 30(b)(6) deposition notice which includes 53 overbroad topics, reflect Plaintiffs' "scorched earth" approach. Plaintiffs have also issued 10 third-party Subpoena Duces Tecum covering 37 categories of documents in each subpoena.

Plaintiffs expressly acknowledged in a motion to appoint interim class counsel filed at the initiation of this lawsuit that they had already obtained a significant number of essential documents, records, and evidence – in their own words, "thousands of documents" – to substantiate their claims.  Doc. 8 at p. 5.  Plaintiffs seek to capitalize on a lawsuit filed by the Federal Trade Commission ("FTC") in the Southern District of Florida, Case No. 2018-62593-CIV (the "FTC Lawsuit"), against Steven Dorfman and his related and affiliated entities (collectively, "Simple Health"). Simple Health is one of the aforementioned non-party sales agencies. HPIH is not a defendant in the FTC Lawsuit, yet Plaintiffs premise this entire lawsuit against HPIH on the FTC Lawsuit. Through the FTC Lawsuit, Plaintiffs were able to easily access publicly available documents in the tens of thousands of pages and other "evidence" the FTC relied upon in obtaining a preliminary injunction against Simple Health.

Because Plaintiffs have modeled their ill-conceived lawsuit against HPIH and the other Defendants after the FTC Lawsuit against Simple Health, they have gone through three iterations of a shotgun complaint that incorporates the FTC's entire comprehensive allegations regarding Simple Health's alleged misrepresentations; asserts merely conclusory allegations regarding HPIH's alleged role through its "knowledge" and "control" of the fraudulent scheme perpetrated directly by Simple Health. Not surprisingly, as discussed in more detail below, Plaintiffs'

problematic Second Amended Complaint with its conflated legal theories and threadbare factual allegations asserted against HPIH has led to equally problematic discovery requests.

Plaintiffs' "scorched earth" approach to litigation notwithstanding, HPIH has made every effort to comply with its own discovery obligations, having produced relevant and discoverable information and documentation to Plaintiffs which, as of the date of this opposition amounts to over 3,000 pages of documentation. HPIH has cooperated with Plaintiffs in narrowing numerous requests. Out of the 89 document requests, 15 meritorious objections remain (7 of which relate to the contention interrogatories). The only objections to the interrogatories are objections to contention interrogatories. Plaintiffs seek to compel HPIH to produce certain information and documentation well outside the permissible scope of discovery, which accords with Plaintiffs' discovery strategy to harass and burden its adversary. "[D]iscovery should be denied when a party's aim is to… harass the person from whom he seeks discovery." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978). The instant Motion should be denied in full.

**II.**    **<u>Argument</u>**

> **A. The Contention Interrogatories and Encompassing Document Requests Reveal Plaintiffs' Discovery Abuse**

Plaintiffs' discovery abuse is evident in their contention interrogatories – Interrogatory Nos. 1-7 – and document requests based on and encompassing such contention interrogatories – Document Request Nos. 3-10 – that purport to seek information regarding unspecified contentions that HPIH has not asserted in this action. Simply put, Plaintiffs contention interrogatories are premature as HPIH has not raised any defenses yet in this lawsuit. Therefore, Plaintiffs contention interrogatories are not targeted toward a claim or defense. Rule 26 of the Federal Rules of Civil Procedure sets forth the permissible scope of discovery and provides that

43167768

"[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to *any party's claim or defense* [.]"  Fed. R. Civ. P. 26(b)(1).

Plaintiffs only recently filed their Second Amended Complaint following the entry of the Court's Order that granted, in part, Defendants' Motion to Dismiss the First Amended Complaint. [Doc. 52]. The time for HPIH to file its response to the Second Amended Complaint has not elapsed.  *See* Doc. 58. Plaintiffs demanded in discovery requests – propounded, tellingly, *even before the resolution of the motion to dismiss* – that HPIH produce, among other things, information and documentation related to any of its (not yet asserted) "contentions" regarding class certification.  Plaintiffs cannot point to any specific contentions upon which they base any of their contention interrogatories because HPIH has not raised any defenses. Despite this fatal flaw, Plaintiffs somehow insist that the requests are not premature.

The discovery rules require Plaintiffs to narrowly tailor their discovery requests to seek only that information which is relevant to a claim or defense raised in the case.  *See Jeld-Wen, Inc. v. Nebula Glass Int'l Inc.*, 2008 WL 11333404, *11 (S.D. Fla. March 13, 2008) (stating that "[t]he Court [ ] reminds the parties of the requirement that discovery requests be narrowly tailored to seek information relevant to a claim or defense raised in the case" and that "it is not the Court's function to edit discovery requests that do not adhere to this requirement").  HPIH has not answered the Second Amended Complaint. Plaintiffs are unable to narrowly tailor their discovery requests to HPIH "that go directly to class-related issues," Motion at p. 3, because HPIH has yet to make any claim or defense regarding any class-related issues.  Each contention interrogatory begins by asking HPIH "*If it is your contention that*…"  Doc. 59, Ex. B, pp. 1-3 (emphasis added).  This will not suffice as a narrowly-tailored discovery request designed to elicit relevant information pertaining to a claim or defense in the action.

The discovery requests are facially deficient, failing to point to any particular "contention" at issue, and Plaintiffs cannot meet their initial burden of proving that the information sought is relevant. *See Mey v. Enterprise Financial Group, Inc.*, 2016 WL 9110357, *2 (M.D. Fla. July 27, 2016) (stating that "[t]he initial burden is on the proponent of a motion to compel to prove that the information is relevant" and that "[i]f the relevancy of the information sought cannot be discerned from the discovery request itself, then the party seeking to compel discovery must demonstrate relevancy) (internal citations omitted).

Plaintiffs' deficient discovery requests also do not meet the basic definitional requirement of contention interrogatories, nor do they comport with well-established standards governing the use of contention interrogatories for class actions. *Slavkov v. Fast Water Heater Partners I, LP*, 2015 WL 6648170, at *3 (N.D. Cal. Nov. 2, 2015) (sustaining objections to contention interrogatories in class action that requested defendant to state all facts and produce all documents that support defendant's denial of plaintiff's class action allegations). Furthermore, the contention interrogatories invades privileged work product involving legal strategy and legal conclusions. *See Oliver v. City of Orlando*, 2007 WL 3232227, at 4 (M.D. Fla. Sept. 21, 2007) (denying motion to compel contention interrogatories as an intrusion into counsel for protected work product.").

"Contention interrogatories are those that require the responding party to state the basis of particular claims, defenses, or contentions in pleadings or other documents." *McCarthy v. American Airlines, Inc.*, 2008 WL 11399631, *1 (S.D. Fla. March 12, 2008) *In re Checking Account Overdraft Litigation*, 2010 WL 5136043 at *3 (S.D. Fla. Dec. 16, 2010). Consequently, courts have also repeatedly stated that contention interrogatories "occupy a somewhat disfavored status and should be used sparingly." *McCarthy*, 2008 WL 11399631 at *1. Contention

5

interrogatories are used as a way to shed light on the specific legal claims and defenses an adversary makes in his filed pleading or other documents. Plaintiffs cannot point to any particular legal claims in their contention interrogatories because HPIH has not yet filed any.

The cases cited by Plaintiffs are distinguishable. *See Foster v. Green Tree Servicing, LLC*, 2016 WL 11493319, at *2 (M.D. Fla. Nov. 8, 2016) (allowing some discovery to proceed to determine whether a class may be certified after denying a motion to strike class allegation); *See Eisenband v. Starion Energy, Inc.*, 2017 WL 4685266, at *1 (S.D. Fla. Oct. 17, 2017) (discovery on a targeted request for a call log to determine ascertainability in a TCPA case). *Foster* and *Eisenberg* did not hold that contention interrogatories directed to class issues is permitted prior to the defendant filing an answer to the complaint and raising defenses.

For the reasons set forth above, the objections to the contention interrogatories and requests for production directed toward contentions interrogatories should be sustained.

**B. Plaintiffs' Requests for Consumer "Complaints" Seek Information That Is Overbroad, Disproportionate to the Needs of the Case, and Irrelevant.**

Document Request Nos. 51-53 seek HPIH's communications with certain insurance carriers and government agencies regarding consumer "complaints" relating to products sold by Simple Health or Nationwide Health.  None of the requests contain an accompanying definition for a "complaint", nor do they contain any limitations as to the *nature* of the consumer complaints – whether they should contain the same grievances alleged by Plaintiffs or otherwise, i.e. the use of fraudulent scripts to misrepresent the type of insurance sold. There are no limitations, resulting in discovery requests that are so broad as to possibly encompass *every type of consumer complaint that has HPIH has ever received*, limited only by a consumer complaint's "relat[ion] to Limited Benefit Indemnity Plans or Medical Discount Plans sold by Simple Health or Nationwide Health."

6

While Plaintiffs proposed to narrow the requests to only those "complaints alleging fraud, misrepresentations, trickery, or deceit, or the like by Simple Health or Nationwide Health" the request is still overbroad, vague, and disproportional. Plaintiffs' requests are not tailored to seek information concerning other complaints involving the same claims asserted by Plaintiffs, i.e. the use of fraudulent scripts to sell insurance, and should, therefore, be rejected as overbroad and disproportionate to the needs of the case. Furthermore, the use of the phrase "or the like" is overbroad, vague, and ambiguous. *See also Cerrato v. Nutribullet, LLC*, 2017 WL 3608266 (finding discovery request for "all accident reports and records relating to any injury allegedly caused by the product" to be overbroad and not proportional to the needs of the case where there is no time limitation or limitation as to the type of injury at issue, the subject matter of the complaints requested, the alleged defect at issue, or the circumstances of the incident in the materials requested).

Plaintiffs argue that its discovery requests regarding HPIH's receipt of consumer complaints seek relevant information "directly relate[d] to Plaintiffs' allegation that the Defendants had direct knowledge that their distributors, including Simple Health and Nationwide Health, were using misrepresentations and omissions to induce customers into purchasing relatively worthless limited benefit indemnity products."  Motion at pp. 8-9. Plaintiffs take a leap of faith to conclude that the receipt of consumer complaints equates to direct knowledge that Simple Health or Nationwide Health used fraudulent scripts in a scheme to defraud consumers. Plaintiffs' discovery requests are not designed to elicit any relevant or discoverable information, as is required, but constitute the type of "fishing expedition" that fail to comport with the discovery rules. *See Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006).

7

**C.  Plaintiffs Seek Irrelevant Documents Relating to Payment of Legal Fees.**

In Document Request No. 57, Plaintiffs request documents that show HPIH's payment of Simple Health's and/or Nationwide Health's legal fees related to regulatory investigations and point, as if for support, to a "publicly available document" they obtained in the FTC Lawsuit allegedly confirms such a payment arrangement.  *See* Motion at p. 8. Yet, the existence of any such financial relationship does not, itself, lend any support regarding the relevance of such information sought in the first place, and Plaintiffs fail to and cannot articulate *how, exactly*, such information would be relevant to any claim or defense raised in this lawsuit, in accordance with Rule 23's discovery standard and scope of relevance. Plaintiffs cannot satisfy their burden of proving the relevance of this document requests by insisting that "HPIH's payment of Simple Health or Nationwide Health's legal fees is more than just 'possibly relevant." Motion at p. 7.

Plaintiffs proposed narrowing of payment of legal fees to those proceedings involving complaints about sales practices "like the ones alleged in this lawsuit" does not rectify the overbroad and ambiguous nature of the request. Furthermore, even if HPIH paid legal expenses for regulatory matters, the payment of legal expenses would not relate to a claim or defense in this action. Plaintiffs' alleges that Simple Health and Nationwide Health allegedly used fraudulent scripts to sell insurance. Because Plaintiffs seek to hold HPIH accountable for the fraud and misrepresentations alleged in the complaint based on HPIH own alleged role in such misconduct, payment of legal defenses are not related to a claim or defense.

**D. Plaintiffs' Document Requests for Weekly Department Reports Seek Information That Is Overbroad, Disproportionate to the Needs of the Case, and Irrelevant.**

In Document Request Nos. 64-65, Plaintiffs seek weekly compliance and escalation reports, respectively, on the basis that such "reports are relevant to, among other things,

Plaintiffs' allegations of Defendants' knowledge of the fraud…" Motion at p. 9. For the same reasons mentioned above, the requested documents here are irrelevant and HPIH's objections on relevance grounds should be sustained.

Moreover, such an unmitigated request for all such reports, absent any limitation regarding time frame, scope, or subject matter is clearly overbroad and not tailored to seek information concerning compliance issues or other escalations involving the same issues asserted by Plaintiffs, i.e. the use of fraudulent scripts to sell insurance; and should, therefore, be rejected as overbroad and disproportionate to the needs of the case. *See Cerrato v. Nutribullet, LLC*, 2017 WL 3608266 at *3. For example, a compliance report showing that Simple Health failed to timely respond to an inquiry about an alleged Telephone Consumer Protection Act ("TCPA") violation would not be relevant to the claims and defenses in this lawsuit that involve the alleged use of fraudulent scripts to sell insurance.

Plaintiffs claim this information is relevant to the monitoring of sales calls. As will be explained below in response to Request #66 and #67, HPIH has responded to the request for production stating that the documents about secret shopper reports for Simple Health and Nationwide Health will be produced. Thus, Plaintiffs have received the discovery on this topic.

Finally, Plaintiffs request for compliance reports and escalations reports for entities other than Simple Health and Nationwide Health are not relevant to the claims and are disproportionate. Plaintiffs' allege that they purchased products from Simple Health and Nationwide Health through the use of fraudulent scripts. Plaintiffs do not allege, nor could they allege, that they purchased products using fraudulent scripts from any other sales agency. Information on any other sales agency is simply not relevant to Plaintiffs claims.

Plaintiffs' now allege that HPIH worked with others, i.e., Safeguard Insurance Market, Inc., Health Benefits Group, Inc., and Assurance IQ to effectuate the scheme. These conclusory allegations do not open the door to discovery for these entities or any other unidentified sales agencies. Plaintiffs do not allege that any of these entities used fraudulent scripts to sell insurance and do not allege that they purchased products from these entities. Therefore, discovery on these entities is not relevant to a claim or defense.

**E.  Plaintiffs Seek Irrelevant Secret Shopper and Grade Reports.**

In Document Request Nos. 66-67, Plaintiffs seek "secret shopper" and "grade reports" monitoring phone calls to and dealings with distributors and/or agents, including but not limited to Simple Health or Nationwide Health.  Motion at pp. 9-10. HPIH has responded that the responsive documents for Simple Health and Nationwide Health will be produced. HPIH only objects in part to this request to the extent is asks for secret shopper reports and grade reports for other agencies who Plaintiffs did not purchase products from.

For the same reasons the Court should sustain the objections to Requests No. 64-65 above, the Court should sustain the objections to these requests. The Court should not permit Plaintiffs to go on a fishing expedition to see if they can possibility information that is not relevant to their claims. *See Porter*, 461 F.3d 1315, 1324 (11th Cir. 2006). Plaintiffs' document requests should be rejected as overbroad and disproportionate to the needs of the case.

**III.  <u>Conclusion</u>**

Based upon the foregoing, the Court should deny Plaintiffs' Motion in its entirety.

43167768

Dated:  February 7, 2020

By: s/ DARIEL ABRAHAMY _____
Garry W. O'Donnell, Esq.
Florida Bar No. 0478148
Email: garry.odonnell@gmlaw.com
Dariel J. Abrahamy, Esq.
Florida Bar No. 0014901
Email: dariel.abrahamy@gmlaw.com
Aaron T. Williams, Esq.
Florida Bar No. 99224
Email: aaron.williams@gmlaw.com
GREENSPOON MARDER LLP
2255 Glades Road, Suite 400-E
Boca Raton, Florida 33431
Telephone: (561) 994-2212
Facsimile:  (561) 807-7527
*Attorney for Defendants,*
*Health Insurance Innovations, Inc., Health Plan*
*Intermediaries Holdings, LLC, and Michael*
*Kosloske*

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was filed with the Clerk of Court using the Court's CM/ECF system on this 7th day of February, 2020, which will generate notification to all known counsel of record or pro se parties.

By: DARIEL ABRAHAMY
       Dariel Abrahamy

43167768