UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(FT LAUDERDALE DIVISION)

CASE NO. 0:19-cv-61430-SINGHAL/Valle

ELIZABETH E. BELIN, *et al*.,

      Plaintiffs,

v.

HEALTH INSURANCE INNOVATIONS, INC., *et al*.,

      Defendants.

_____/

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AGREEMENT, CONFIRMATION OF CLASS, APPROVAL
OF CLASS NOTICE AND SCHEDULING OF A FAIRNESS HEARING,
AND INCORPORATED MEMORANDUM OF LAW**

      Plaintiffs, Elizabeth Belin, Christopher Mitchell, Kevin Furman, Mitchell Kirby, Kathryn Svenson, Gabrielle Watson, Jesse Manley, Randall Spitzmesser and Michael Escobar ("Plaintiffs"), for themselves and the Settlement Class Members, move for (i) preliminary approval of the Settlement[1] of this Action against Defendants, Health Insurance Innovations, Inc. ("HII"), Health Plan Intermediaries Holdings, LLC ("HPIH")[2] and Michael Kosloske ("Kosloske") (collectively, the "Defendants"); (ii) confirmation of the Class for purposes of settlement; (iii) approval of the form and manner of the Class Notice; and (iv) a Fairness Hearing on final approval of the Settlement.

---

[1]     All capitalized terms shall have the meanings set forth in the parties' Settlement Agreement, which is attached as **Exhibit 1**.

[2]     HII and HPIH (the "HII Defendants") now go by the name Benefytt Technologies, Inc. ("Benefytt").  Benefytt is a signatory to the Settlement Agreement.

## I.     INTRODUCTION

In late 2018, the FTC filed a lawsuit against Simple Health Plans LLC and related entities and individuals (collectively, "Simple Health") alleging that Simple Health misled consumers to believe they were buying comprehensive medical insurance when they were really buying limited benefit indemnity plans and medical discount plans.  *See FTC v. Simple Health Plans LLC*, No. 18-cv-62593-GAYLES (S.D. Fla.).  That court appointed Michael I. Goldberg, Esq. as receiver to take control of Simple Health (the "Receiver"), finding after an evidentiary hearing that "[t]hough consumers believed they were purchasing comprehensive health insurance coverage, [Simple Health] sold them practically worthless limited indemnity or discount plans."

On June 7, 2019, Plaintiffs brought this class action alleging that Defendants and a group of companies and individuals, including Simple Health and Donisi Jax, Inc. f/k/a Nationwide Health Advisors and d/b/a Atlantic Health ("Nationwide Health"), working together, misled hundreds of thousands of consumers nationwide to believe that their limited benefit indemnity plans and medical discount plans were major medical insurance.  Plaintiffs claimed violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), aiding and abetting fraud and fiduciary duty and unjust enrichment.

Plaintiffs survived no less than four motions by Defendants targeting Plaintiffs' claims. Plaintiffs also fought hard to obtain discovery, filing nine motions to compel arising out of 16 written discovery requests to Defendants and 15 subpoenas to third parties.  Plaintiffs ultimately gathered and reviewed 98,000 documents containing hundreds of thousands of pages of information.  Class Counsel took or defended 16 depositions.

Plaintiffs' discovery efforts culminated in a detailed, 42-page motion to certify a nationwide class.  After a full briefing of that motion and Defendants' simultaneous motion to deny certification, as well as Defendants' *Daubert* motions directed at Plaintiffs' two experts, this Court granted class certification on February 1, 2021.  Shortly thereafter, the Court appointed the undersigned as lead Class Counsel.

The next month, the parties went to their second mediation, this time with nationally recognized class action mediator Hunter R. Hughes III.  Months-long negotiations continued, with Plaintiffs requesting and the HII Defendants providing confidential information about the HII Defendants' financial viability and ability to pay a settlement.  During that time, the HII Defendants sought and ultimately received third-party financing, which enabled them to reach an agreement with Plaintiffs to settle the case for $27.5 million.

By this motion, Plaintiffs seek this Court's preliminarily approval of the Settlement under Rule 23(e).  The Settlement is fair, adequate and reasonable under the circumstances.  Notice of the Settlement will be sent to each of the 230,113 class members using the existing records of the HII Defendants.  The Notice will direct class members to a Settlement Website containing a Claim Form to complete and submit in order to receive a *pro rata* distribution of the net settlement proceeds and receive an immediate distribution.  The Claim Form will also ask class members who meet the requirements of members of the Medical Expense Subclass and/or Tax Penalty Subclass to certify under penalty of perjury that they incurred qualifying medical expenses or tax penalties.  Medical Expense Subclass members will receive a 25% multiplier on their *pro rata* distribution, with Tax Penalty Subclass members receiving a 3.5% multiplier.  Given the size of the settlement amount compared to the number of potential claimants, the concept of a multiplier is preferable to a lengthy and likely far more expensive claims process with its considerable costs relating to expert review of medical and tax records.

The $27.5 million settlement amount represents a significant recovery, particularly given the HII Defendants' financial condition, the lack of available insurance and the risks of continued litigation.  If finally approved, the Settlement will end more than two years of litigation and a pending Eleventh Circuit appeal, and provide immediate compensation to consumer victims.

The Settlement also contains nonmonetary relief aimed at protecting consumers from future harm.  Subsequent to the filing of this lawsuit, the HII Defendants discontinued the sale of limited benefit indemnity plans through all but one distributor.  For those remaining plans, the HII

Defendants agree to make business practice changes and/or maintain changes implemented within the last two years, including requiring agents and distributors of the plans to record and maintain all sales calls.

Plaintiffs have patterned the proposed Class Notice on the Federal Judicial Center models. The Notice, attached as **Exhibit 1.A**, describes in plain English the history of the litigation, the definition of the Class and who is excluded, the amount of the Settlement and the maximum amount of attorneys' fees that may be requested (33 1/3%). The Notice further informs class members of the procedures to be followed if they wish to be heard and informs them of their right to opt out or object.

Notice will be made by a third-party class action administrator, JND Class Action Administration. Notice will be sent first by email, then by first-class mail to all those for whom there is no available email address or whose email bounces back. As mentioned above, a Settlement Website will be created as a portal to submit Claim Forms and obtain information about the Settlement. A copy of the proposed Claim Form is attached as **Exhibit 1.B**.

While the Settlement is necessarily a compromise, the path to a greater recovery is daunting. After avoiding Rule 23(f) review, Plaintiffs would then likely face additional risks and delays presented by summary judgment before reaching a trial of peers who may or may not accept Plaintiffs' claims. Even if Plaintiffs obtain a successful verdict, Defendants would not likely have the ability to pay a verdict of the size sought by Plaintiffs. For these reasons, Plaintiffs and Class Counsel, who have experience in similar litigation, support the Settlement. The Simple Health Receiver, Michael I. Goldberg, Esq., attended mediation and also supports the Settlement, which provides another form of recovery for the Simple Health victims. (Goldberg Decl. ¶ 6, attached as **Exhibit 2**).

The thorough record developed over years of litigation, the extensive mediation talks leading to the Settlement and the consensus support from concerned parties give every indication that the Settlement is procedurally and substantively fair, and merits the Court's approval.

## II.   BACKGROUND AND PROCEDURAL HISTORY

On June 7, 2019, Plaintiffs brought this class action lawsuit against the HII Defendants. [D.E. 1].  On July 17, 2019, Plaintiffs filed an Amended Complaint adding Kosloske and claims for RICO conspiracy and aiding and abetting a RICO violation.  [D.E. 18].  Defendants moved to stay discovery pending their motion to dismiss the Amended Complaint, arguing that Plaintiffs failed to state a claim.  [D.E. 24, 27].  Judge Moreno denied the motion to stay [D.E. 33], and Magistrate Judge Seltzer issued a Report and Recommendation denying the substantive portions of Defendants' motion to dismiss (while instructing Plaintiffs to correct some technical pleading deficiencies).  [D.E. 39].  Defendants objected to the R&R [D.E. 42, 43] but Judge Moreno overruled the objections and adopted the R&R.  [D.E. 47].  Shortly thereafter, the case was reassigned to Judge Singhal.  [D.E. 49].  Plaintiffs filed a Second Amended Complaint adding allegations and two more class representatives.  [D.E. 53].  Defendants filed a motion to dismiss [D.E. 68, 69], which the Court denied after a hearing on April 9, 2020.  [D.E. 133].

Plaintiffs engaged in extensive and hard-fought discovery.  (Kellogg Decl. ¶ 5, attached as **Exhibit 3**).  Plaintiffs issued 12 requests for production and four interrogatories to Defendants. (*See id.*).  Plaintiffs also served 15 third-party subpoenas.  (*See id.*).  Ultimately, Plaintiffs were forced to file no less than *nine motions to compel*, including four directed at Defendants and five directed at recipients of the third-party subpoenas.  [D.E. 59, 63, 64, 67, 71, 73, 130, 148, 154]. Several of those motions were the subject of a three-hour hearing held by Magistrate Judge Valle on March 13, 2020.  [D.E. 108].  Plaintiffs' efforts paid off, as they obtained more than 98,000 documents from Defendants and third parties.  (Kellogg Decl. ¶ 5).  Plaintiffs' counsel reviewed hundreds of thousands of pages of these documents.  (*See id.*).

Plaintiffs took the HII Defendants' corporate representative depositions over the course of four days, as well as depositions of Defendants' experts  (*See id.*).  Eight of the nine Plaintiffs, as well as Plaintiffs' two experts, spent considerable time preparing for and sitting for their

depositions.[3]   (*See id.* ¶ 6).   Plaintiffs each responded to lengthy requests for production, interrogatories and requests for admission.  (*See id.*).  Together Plaintiffs produced more than 4,800 documents, including health-related documents containing personal information.  (*See id.*).

On August 18, 2020, the Parties held an all-day mediation.  (*See id.* ¶ 7).  Each of the Plaintiffs and the Simple Health Receiver attended.  (*See id.*).  That mediation ended in an impasse. [D.E. 141].

Plaintiffs then moved for leave to file a Third Amended Complaint to make additional allegations based on information gleaned in discovery, to add a class representative and to add three more current or former HII executives as Defendants.  [D.E. 144].  This Court granted the amendment in part, denying Plaintiffs' request to add the individual defendants.  [D.E. 174].

On October 15, 2020, Plaintiffs moved to certify the class.  [D.E. 168].  Plaintiffs' motion included more than 128 exhibits obtained during discovery.  Defendants concurrently moved to deny class certification [D.E. 167] and filed *Daubert* motions directed at Plaintiffs' two experts. [D.E. 185, 186].  All of these certification-related motions were fully briefed.  [D.E. 182, 184, 185, 186, 192, 194, 196, 197, 203, 204].

On February 1, 2021, the Court granted Plaintiffs' motion for class certification. [D.E. 208].  In its 30-page Order, the Court certified the following Classes and Subclasses:

> "Simple Health Class."  All individuals who purchased the HII Defendants' limited benefit indemnity plans and/or ancillary products such as medical discount plans through Simple Health within the applicable statute(s) of limitation, and paid fee(s) and/or a premium(s) that were not completely recovered through a refund or chargeback.
>
> "Nationwide Health Class."  All individuals who purchased the HII Defendants' limited benefit indemnity plans and/or ancillary products such as medical discount plans through Nationwide Health within the applicable statute(s) of limitation, and paid fee(s) and/or a premium(s) that were not completely recovered through a refund or chargeback.
>
> "Medical Expense Subclass."  All individuals within the Simple Health Class or

---

[3]    The deposition of the ninth Plaintiff, Mr. Escobar, was pending at the time of settlement. (Kellogg Decl. ¶ 6).

Nationwide Health Class who incurred uncovered medical expense(s).

"Tax Penalty Subclass."  All individuals within the Simple Health Class or Nationwide Health Class who incurred a penalty under the ACA's individual mandate provisions.

Plaintiffs then moved for the appointment of undersigned counsel to be Lead Class Counsel [D.E. 218], which this Court granted on February 19, 2021.  [D.E. 229].

On February 16, 2021, Defendants filed a Rule 23(f) petition with the U.S. Court of Appeals for the Eleventh Circuit, seeking review of the Court's class certification Order.  (Kellogg Decl. ¶ 8).  The Parties fully briefed the petition.  (*See id.*).

On March 23, 2021, counsel for the parties and the Simple Health Receiver attended a second mediation, this time with nationally renowned class action mediator Hunter R. Hughes III. (*See id.* ¶ 9)  An agreement was not reached on March 23, but Hughes and the Parties continued to have informal discussions.  (*See id.*).  Plaintiffs requested, and the HII Defendants provided on a confidential basis, documents and information regarding the HII Defendants' financial viability. (*See id.*).  Plaintiffs' counsel consulted a forensic accounting firm about the information it received. (*See id.*).  Plaintiffs obtained the HII Defendants' assurance that when they were sold in a private sale in August 2020, no reserve of funds was created or withheld relating to the outcome of this lawsuit.  (*See id.*).  Plaintiffs obtained copies of the HII Defendants' insurance policies and hired and paid an insurance attorney to carefully review the policies to analyze potential coverage.  (*See id.*).  The HII Defendants' relevant liability insurance companies have contested insurance coverage for this litigation and have only paid $100,000 for defense litigation costs previously incurred.  (HII Decl. ¶ 4, attached as **Exhibit 4**).  And before Defendants could agree to make a substantial, multimillion-dollar settlement payment, the HII Defendants sought and obtained third-party financing.  (*See id.* ¶ 6).

The parties reached settlement in the amount of $27.5 million, and a formal Settlement Agreement was executed.

## III.    THE TERMS OF THE SETTLEMENT AGREEMENT

The Parties have agreed to the following settlement terms.

### A.    The Settlement Class

The Settlement Class Members include those Classes and Subclasses certified by this Court on February 1, 2021.

### B.    The Settlement Consideration

The HII Defendants will pay $27.5 million to resolve this class action.  No portion of the Settlement Fund will revert to Defendants.  (*See id.* § IV(m)).  Notice and Administrative Expenses will be deducted from the Settlement Fund and paid to the Settlement Administrator.  (*See id.* § VI(e)).  Attorneys' fees and expense reimbursements as approved by the Court will be paid to Class Counsel.  (*See id.* § IV(a)).  Plaintiffs may seek an award up to 33 1/3% of the class action settlement payment in attorneys' fees plus reimbursement of litigation expenses.[4]  (*See id.*).  The balance, along with any interest accrued on the Settlement Fund, will be applied to pay claims of Settlement Class Members.  Plaintiffs also ask this Court to reserve jurisdiction over the payment of a $6,250 Service Award to each of Plaintiffs (a total of $56,250), pending the resolution of *Johnson v. NPAS Solutions, LLC*.[5]  (*See id.* § IV(c)).

---

[4]    Class Counsel will file a motion for approval of fees and expenses within 45 days of Preliminary Approval. (SA § IV(a)).  Settlement is not contingent upon the award of any particular fee.  (*See id.* § VI(d-f)).  Class Counsel took on considerable financial risk to obtain these results.  (Kellogg Decl ¶ 4; Doss Decl. ¶ 4, attached as **Exhibit 5**).  Class Counsel devoted thousands of hours of time and fronted nearly $200,000 in costs on a contingency fee basis, with no guarantee of any recovery or reimbursement of expenses.  (*See id.*).  Class Counsel's firms have less than 20 lawyers combined, which increased the financial risk to the Firms from the use of significant Firm resources.  (*See id.*).  They faced formidable and sophisticated opposition from a 200-lawyer firm, Greenspoon Marder, and a 1,200 lawyer firm, King & Spalding.  *See* https://www.gmlaw.com/our-firm/; https://www.kslaw.com.

[5]    A panel of the U.S. Court of Appeals for the Eleventh Circuit entered an order last year that forbids Service Awards for lead plaintiffs in class settlements in this Circuit.  *See Johnson v. NPAS Solutions, LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020).  A petition for rehearing *en banc* has been filed, and the Eleventh Circuit clerk of court has entered an order indicating that a judge of the Eleventh Circuit has withheld the issuance of the mandate for the panel's opinion.  *See Dickenson v. NPAS Solutions, LLC*, 18-12344 (11th Cir. Nov. 9, 2020).

The class release is straightforward, encompassing claims that were or could have been asserted in the case.  (Settlement Agreement ("SA") §§ I(cc), IX).  The Released Parties and Releasing Parties are comprised of Defendants; Settlement Class Members who do not timely opt out of the Settlement; and Class Counsel.

The Settlement also contains nonmonetary relief.  (SA § III(c)).  Shortly after Defendants reached an agreement in principle to settle the Action, the HII Defendants announced that they would be almost entirely discontinuing the sale of limited benefit indemnity plans.  (HII Decl. ¶ 7).  For those plans that the HII Defendants may still market, they have agreed to make business practice changes to the extent not already implemented within the last two years.  (*See id.*).  Specifically, the HII Defendants must:

- Require agents and distributors of limited benefit indemnity and ancillary products to record and maintain all sales calls;
- Engage outside vendors to conduct secret shopper investigations for the purpose of detecting deceptive or fraudulent sales practices;
- Where the website of the HII Defendants or any of its distributors mentions limited benefit indemnity or ancillary products, require that a conspicuous disclaimer stating products are not major medical insurance and are not compliant with Affordable Care Act;
- Require the HII Defendants' compliance department to communicate directly with distributors about secret shopper reports and other compliance issues;
- Require the collection of credit card information in the verification stage or thereafter in sales calls; and
- Develop a disciplinary process for agents who mislead customers about coverage.

(SA § III(c)).

---

Plaintiffs ask this Court to reserve jurisdiction over the issue should the Eleventh Circuit reverse, abrogate or recede from the *Johnson* opinion's prohibition on Service Awards.  (SA § IV(c)).  Plaintiffs here devoted considerable time, effort and resources toward the case.  (Kellogg Decl. ¶ 6).  Each of them sought out counsel.  (*See id.*).  Each of them prepared for and sat for deposition, taking a day off of work and subjecting themselves to cross-examination.  (*See id.*).  Each of them produced documents with sensitive personal information.  (*See id.*).  And each spent an entire workday at mediation.  (*See id.* ¶ 8).

### C.     Notice and Administration

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The Parties have agreed that a third-party administrator, JND Class Action Administration, will act as Settlement Administrator.  (Kellogg Decl. ¶ 11).  JND will be responsible for giving and/or supervising Direct Notice to Settlement Class Members; sending, receiving, reviewing and adjudicating Claim Forms; obtaining new addresses for any returned emails or postal mailings; maintaining records of all activities relating to notice and administration of this Settlement; and other tasks reasonably required to effectuate the administration of the Settlement.  (*See* SA § VI(b)).  JND will establish a Settlement Website and post the Class Notice, Claim Form and related settlement documents on it.  (SA § VI(c)(ii)).  The HII Defendants will fund up to $150,000 in initial notice and administration costs prior to final approval.  (*See id.* § VI(f)).

The HII Defendants will reasonably cooperate in the notice and administration process by providing the Settlement Administrator with the available names and email or mailing addresses for Settlement Class Members (as reflected in reasonably available computerized account records) to the extent required to administer the Settlement.  (SA § VI(a)).

Notice of the Settlement will be sent directly to Settlement Class Members by email, requesting confirmation of receipt.  (*See id.* § VI(c)(i)(1)).  Emails will have a hyperlink to the Settlement Website, where Settlement Class Members can complete and submit a Claim Form.  (*See id.*).  For those Settlement Class Members for which neither the Settlement Administrator nor the HII Defendants have an email address, and for those whose emails are undeliverable, direct notice shall be made by postcard via U.S. mail to the last-known mailing addresses.  (*See id.*).  The postcard will direct the Settlement Class Members to the Settlement Website.  (*See id.*).  Each Settlement Class Member shall have a right to object to the Settlement within 90 days of Preliminary Approval.  (*See id.* § VI(c)(i)(2)).  The requirements for excluding oneself from the

Settlement or filing and pursuing an objection will be described for Settlement Class Members in the Class Notice.  (*See id.* § 1(u)).

The Settlement Administrator shall also be responsible for overseeing the calculation of, and implementing the distribution of, the Net Consideration to Settlement Class Members.  (*See id.* § VI(d)).  Each Settlement Class Member who timely submits a valid Claim Form and does not opt-out of the Settlement shall be a Participating Settlement Class Member and receive his or her *pro rata* share of the Settlement Fund.  (*See id.*).  The Settlement Administrator shall calculate each share according to a formula provided in the Settlement Agreement.  (*See id.*).  Participating Settlement Class Members who submit a Claim Form stating under penalty of perjury that he or she incurred Uncovered Medical Expenses will receive a multiplier of 1.25 times his or her base share.  Participating Settlement Class Members who submit a Claim Form stating under penalty of perjury that he or she incurred a Tax Penalty shall receive a tax penalty multiplier of 1.035 times his or her base share.  These multipliers, while not an exact determination of Participating Class Members' shares, recognize the enhanced damages of Subclass members while avoiding the considerable administrative burdens and costs of having a document-intensive, evidentiary claim process.[6]  (Kellogg Decl. ¶¶ 12-13).

Finally, the HII Defendants will, within 10 days after filing of this Motion, cause the mailing of CAFA Notice to appropriate officials pursuant to 28 U.S.C. § 1715(b).  (*See id.* § 6(f)).

## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

"There exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex."  *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (Altonaga, J.) (citations omitted).  "Thus, in reviewing a proposed settlement, as here, the Court must take into account 'the clear policy in

---

[6]     The multipliers are estimated from the tax penalty imposed by the I.R.S. against Mr. Furman, $1,607, as a percentage (14%) of Plaintiffs' average medical expenses, approximately $11,500.  Fourteen percent of a medical expense multiplier of 1.25 is 1.035.  (Kellogg Decl. ¶ 13).

favor of encouraging settlements, . . . particularly in an area where voluntary compliance by the parties over an extended period will contribute significantly toward ultimate achievement of statutory goals.'" *Id.* (quoting *Patterson v. Newspaper & Mail Deliverers' Union,* 514 F.2d 767, 771 (2d Cir.1975)).

Within this context, a district court's approval of a class action settlement proceeds in two steps. *See, e.g., Wilson v. Everbank, N.A.,* 2015 WL 10857344, at *1 (S.D. Fla. Aug. 31, 2015). The first step determines whether to conditionally certify a settlement class and notify class members of the pending settlement and a right to participate in a final fairness hearing. *See id.*; *see also* MANUAL FOR COMPLEX LITIG. (FOURTH) §§ 21.622-.623. The second step involves the fairness hearing itself, which occurs only after class members have been notified of their right to participate in the hearing and object to the settlement. *See Wilson*, 2015 WL 10857344, at *1; *Gevaerts v. TD Bank, N.A.*, 2015 WL 12533121, at *10 (S.D. Fla. Aug. 4, 2015).

During the first step — the preliminary approval stage — "approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (King, J.) (quotation omitted). "Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *Id.* at 661-62 (quoting MANUAL FOR COMPLEX LITIG. (THIRD) § 30.42).

Preliminary approval requires the Court to evaluate a number of factors. The December 2018 amendments to Rule 23 provide explicit new instructions, requiring notice to be issued if the court is likely to approve the settlement and certify a settlement class. *See* Fed. R. Civ. P. 23(e)(1)(B). The amendments specify that before finally approving a settlement, the court should consider whether:

> (A)     the class representatives and class counsel have adequately represented the class;
>
> (B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

(i)     the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In exercising its discretion, courts in this Circuit also continue to analyze class action settlements using the so-called *Bennett* factors. *See Ferron v. Kraft Heinz Foods Co.*, 2021 WL 2940240, at \*7-\*8 (S.D. Fla. July 13, 2021) (analyzing the Rule 23(e) and *Bennett* factors together to approve settlement). The *Bennett* factors consider (i) the likelihood of success at trial; (ii) the range of possible recovery; (iii) the range of possible recovery at which a settlement is fair, adequate and reasonable; (iv) the anticipated complexity, expense and duration of litigation; (v) the opposition to the settlement; and (vi) the stage of proceedings at which the settlement was achieved. *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.1984)).

Here, an analysis of both the new Rule 23(e)(2) factors and the *Bennett* factors shows that the proposed Settlement is fair, adequate and reasonable, and within the reasonable range of possible final approval.

A.     **The Adequacy of Representation by Class Representatives and Class Counsel**

Rule 23(e)(2)(A) considers whether the class received adequate representation. Here, the Court already has ruled in its Certification Order that Plaintiffs are adequate class representatives,

and has appointed Plaintiffs as such.  [D.E. 208].  Plaintiffs have pursued this litigation vigorously.  They actively sought out counsel, monitored the lawsuit throughout its pendency, sat for depositions, produced personal information and participated in mediation in an effort to obtain the maximum recovery for both themselves and for the other Settlement Class Members.  (Kellogg Decl. ¶ 6).  As for Class Counsel, adequacy is "presumed" absent specific proof to the contrary.  *Diakos*, 137 F. Supp. 3d at 1309.  In its Order dated February 19, 2021, this Court previously appointed the undersigned as Class Counsel in this case.  [D.E. 229].  Class Counsel are experienced in complex class litigation and have successfully prosecuted similar cases throughout the country.  (Kellogg Decl. ¶ 15-16; Doss Decl. ¶ 15-16).  There has been no challenge to Class Counsel's adequacy to serve as Class Counsel.

### B.        Whether Negotiations Were Conducted at Arms-Length

Rule 23(e)(2)(B) looks at whether the parties negotiated an arms-length settlement.  "In determining whether there was fraud or collusion, the Court examines whether the settlement was achieved in good faith through arm's-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel."  *Berman v. Gen. Motors, LLC*, 2019 WL 6163798, at *4 (S.D. Fla. Nov. 18, 2019) (citations omitted).

There is no hint of collusion here.  The Parties attended a full mediation in August 2020 that resulted in an impasse.  [D.E. 141].  After this Court entered its Certification Order, the Parties returned to mediation in March 2021 with nationally renowned class action mediator Hunter R. Hughes III.  *See Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of Mr. Hughes, a highly experienced mediator, lends further support to the absence of collusion.").  Negotiations lasted nearly four months, with the HII Defendants sharing certain confidential financial information with Class

Counsel that informed the nature and amount of the eventual Settlement.  The HII Defendants warrant in the Settlement Agreement that the information they provided to Class Counsel was true and correct, and acknowledge that the information was essential and material to Plaintiffs' decision to enter into the Settlement.  (SA § XIII(a)).

Furthermore, no portion of the settlement will revert to Defendants.  (*See id.* § VI (m)). And although Defendants agree not to oppose Class Counsel's request for an attorneys' fee award of up to 33 1/3%, Settlement is not contingent upon any particular award to Class Counsel.  (*See id.* § VI(d-f)).

Relatedly, the sixth *Bennett* factor looks at the stage of litigation at which the parties reached settlement.  By the time the Parties reached settlement here, they had been litigating heavily for nearly two years, had conducted significant discovery, briefed numerous motions relating to potentially dispositive legal issues and hired experts in the fields of insurance and consumer marketing to analyze their claims and defenses.  The Parties were well-positioned to evaluate the benefits of the Agreement and consider the expense, risks and uncertainty of continued and likely protracted litigation.  In sum, the Settlement was negotiated at arm's length, without collusion and at a mature stage of the litigation.

### C.     The Adequacy of Relief Provided by the Settlement

Rule 23(e)(2)(C) looks at whether the relief provided in the settlement is adequate, taking into account: (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of distributing relief and processing claims; (iii) the terms of any attorney's fees award, including timing of payment; and (iv) any agreements made in connection with the proposed settlement.  Relatedly, the first through fifth *Bennett* factors analyze the likelihood of success at trial; the range of possible recovery; the range of possible recovery at which a settlement is fair, adequate and reasonable; the anticipated complexity, expense and duration of litigation; and any opposition to the settlement.

*See Saccoccio*, 297 F.R.D. at 691.

Addressing the *Bennett* factors first, in determining whether the Settlement is adequate and fair in comparison to the potential range of recovery, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Berman,* 2019 WL 6163798, at *5 (quoting *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005)).  "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Ferron*, 2021 WL 2940240, at *7-8 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988)).  "A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."  *Id.*

Here, the potential damages that Class Members could be awarded at trial are immense. The fees and premiums paid by Class Members amount to hundreds of millions of dollars, and a successful RICO verdict would treble that number.  In addition, Medical Expense Subclass and Tax Penalty Subclass members incurred millions more in expenses.  Given the potential size of Plaintiffs' claims and Defendants' current financial positions, the possibility that class members collect on a victorious Final Judgment against solvent HII Defendants, or even collect $27.5 million, is remote.

The analysis therefore focuses on whether Plaintiffs and Class Counsel achieved an adequate settlement given the financial reality of this case.  To determine the parameters of that financial reality, Class Counsel obtained Defendants' insurance policies and hired an insurance expert to analyze their applicability to the claims brought by Plaintiffs, and the potential for coverage.  None of the Settlement Consideration to be paid by the HII Defendants comes from insurance proceeds.  The HII Defendants' relevant liability insurance companies have contested insurance coverage for this litigation and have only paid $100,000 for defense litigation costs

previously incurred.  Class Counsel also requested during settlement negotiations, and the HII Defendants provided and warranted the accuracy of, confidential information relating to the HII Defendants' financial condition.  Class Counsel confirmed that no "reserve funds" exist to pay this Settlement arising out of the HII Defendants' private sale in August 2020.  Relying upon this information, Plaintiffs and Class Counsel negotiated a $27.5 million settlement.  To pay that amount, the HII Defendants represented that they had to seek, and that they did receive, third-party financing.

The Settlement's nonmonetary benefits also factor in.  Shortly after the HII Defendants reached an agreement in principle to settle the Action, the HII Defendants announced that they would be almost entirely discontinuing the sale of limited benefit indemnity plans and ancillary products.  For those plans that the HII Defendants may continue to sell, they have agreed to a host of business practice changes.

In determining whether a settlement is adequate, the Court may rely at least somewhat upon the judgment of experienced counsel.  *See, e.g., Nelson v. Mead Johnson & Johnson Co*., 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.").  Here, Class Counsel have significant experience in class action and complex fraud litigation, and believe that under these circumstances, the multimillion-dollar relief provided by the Settlement is fair, reasonable and adequate under the circumstances.  (Kellogg Decl. ¶ 15; Doss Decl. ¶ 15).

### a. The Risks, Costs and Delay of Continued Litigation

The Settlement finds further support from the four specific factors enumerated in new Rule 23(e)(C).  Under Rule 23(e)(2)(C)(i), which examines the risks, costs and delay of continued litigation, the Court must "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after

protracted and expensive litigation." *Berman*, 2019 WL 6163798, at *6 (quoting *Lipuma*, 406 F. Supp. 2d at 1323). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigations." *Id.* (quoting *Behrens*, 118 F.R.D. at 543).

Here, the potential costs and delay of continued litigation in this case are substantial. The Settlement will bring to conclusion a complex class action lawsuit pending for more than two years. It will also bring to conclusion Defendants' Rule 23(f) appeal pending before the Eleventh Circuit. But for the Settlement, the Parties will continue to incur significant additional legal fees and expenses related to further discovery, motion practice and potentially trial. Any trial of this matter would not likely occur in the near future, particularly given the ongoing COVID pandemic, and any appeals would likely delay a final resolution by an additional year. A trial and final resolution would likely take years, delaying any benefit to the Class by years as well. Moreover, the risk for Plaintiffs and Class Members includes the potential that after a trial and possibly an appeal, any judgment against Defendants would be uncollectible.

Relatedly, the first *Bennett* factor examines the likelihood of success at trial. Here, Plaintiffs have successfully navigated through multiple motions to dismiss and achieved class certification. But Defendants have appealed class certification and have the ability to move to decertify the Class at any time before trial should new factual or legal arguments emerge. Defendants also possess defenses that they may assert at trial or via summary judgment, including but not limited to defenses based on the McCarran-Ferguson Act, evidentiary challenges and causation. Given these circumstances and the fact that a trial victory is rarely a given for any party, the risks attendant to continued litigation supports a settlement now.

Plaintiffs and Class Counsel also have considered the fact that Defendants continue to deny that they violated RICO or aided and abetted Simple Health and/or Nationwide Health, or that this

case is susceptible to class treatment.  Defendants have shown the willingness and ability to defend the lawsuit through trial and possibly appeal.  Yet Defendants have concluded that it is desirable to settle the claims to avoid the costs, disruption and distraction of further litigation.

### b.       The Effectiveness of Distributing Relief to the Class

Rule 23(e)(2)(C)(ii) examines the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  Here, the Settlement requires the Settlement Administrator to provide direct Notice, first by email and then by direct mail if it was necessary, to each Settlement Class Member using records provided by the HII Defendants.  (SA § VI(c)).  All notices will direct Settlement Class Members to a Settlement Website containing more information and the Claim Form.  (*See id.* § VI(c)(ii)).  Each Settlement Class Member who timely submits a Claim Form to the Settlement Administrator will receive payment.  The Claim Form contains boxes for a Settlement Class Member to affirm, under penalty of perjury, whether he or she is a member of the Medical Expense Subclass or Tax Penalty Subclass.  (*See id.* § I(c)).  Members of either or both subclasses will receive a multiplier of their pro rata share to as compensation for medical expenses and/or tax penalties.  (*See id.* § VI(d)). Given the size of the settlement amount compared to the number of potential claimants, the concept of a multiplier is preferable to a lengthy and likely far more expensive claims process with its attendant costs for expert review of medical and tax records.

### c.       The Reasonable Terms Relating to Attorneys' Fees

Rule 23(e)(2)(C)(iii) looks at "the terms of any proposed award of attorney's fees, including timing of payment."  Here, Class Counsel may request up to 33 1/3% of the net Settlement Amount of $27.5 million.  (SA § IV(a)).  Such a request is consistent with *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), which mandates use of the percentage method. Following *Camden I*, fee awards in the Eleventh Circuit have averaged around one-third.  *See*

*Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide — roughly one-third"); *see also George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1382 (N.D. Ga. 2019) (discussing the normality of 33% contingency fees); Eisenberg, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. LAW REV. 937, 951 (2017) (empirical study showing the median award in Eleventh Circuit is 33%). Given the diligence and experience of Class Counsel, which investigated and developed the claims, the complexity of the issues involved, the substantial amount of time dedicated to the Action and Settlement, and the financial risk associated with the representation, a fee of up to 33 1/3% fee would be reasonable here.

As to the timing of payment to the attorneys, the Settlement Agreement calls for payment within seven days of a Final Approval Order and Judgment of this Court.[7]  (SA §IV(b)).  Class Counsel agrees that to the extent its fees or costs are reduced, vacated or reversed, or should this Settlement be terminated or cancelled for any reason, it will return the funds to the Escrow Agent within 15 days.  (*See id.*).

### d.    Whether There Are Side Agreements

The Parties represent that they have made no agreements in connection with the proposed settlement.  (Kellogg Decl. ¶ 14; HII Decl. ¶ 8).

### D.    <u>The Equitable Treatment of Class Members Relative to Each Other</u>

Finally, Rule 23(e)(2)(D) analyzes whether the Settlement Agreement treats all members of the Settlement Class equally.  Here, the Settlement Agreement treats all members of the Settlement Class equally as each will receive the opportunity to submit a Claim Form and be paid a *pro rata* amount based on the amount of unrefunded or forgiven fees and premiums they paid.

---

[7]    A proposed Final Approval Order is attached as **Exhibit 1.D.**

CASE NO. 0:19-cv-61430-SINGHAL/Valle

Also, members of the Medical Expense Subclass and Tax Penalty Subclass will have the opportunity to affirm under penalty of perjury that they incurred uncovered medical expenses and/or tax penalties during the Class Period. Each Subclass member will receive a reasonable multiplier of their share on the basis that they incurred damages beyond the payment of fees and premiums. Especially given the limited Settlement Fund here, this method of approximating Subclass damages is preferable to the time and expense of a full claims-made procedure complete with the submission of medical records and tax returns, and the review and verification of medical expenses and tax penalties by paid experts.

In sum, when taking into consideration the substantial monetary benefits to the Settlement Class, the specific risks faced by the Settlement Class in prevailing on Plaintiffs' claims, the stage of the proceedings at which the Settlement was reached, the effectiveness of the proposed method for distributing relief to the Settlement Class and the proposed manner of allocating benefits to the Settlement Class: (i) the proposed Settlement provides for a recovery for the Settlement Class that is within range of what could be approved as fair, reasonable and adequate taking into account all of the potential risks, expense and delay of continued litigation; (ii) is the result of lengthy, good-faith, arm's-length negotiations that took place under the auspices of a prominent national mediator; (iii) is not deficient; (iv) otherwise meets the criteria for approval; and (v) warrants issuance of notice to the Settlement Class.

## V.     CONFIRMATION OF THE CLASS FOR SETTLEMENT IS APPROPRIATE

In granting preliminary approval, the Court should also confirm the Class for settlement purposes. For the reasons set forth in this Court's Certification Order [D.E. 208], certification remains appropriate for the Classes and Subclasses certified in that Order, as they continue to comply with Rules 23(a) and 23(b)(3). This Court should further ratify and certify those Classes and Subclasses as a Settlement Class.

## VI.    THE PROPOSED NOTICE PLAN IS ADEQUATE

Class notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 114 (2d Cir. 2005). "Notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 172 (1974). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Id.* at 175.

Here, the form and method of notice of settlement jointly proposed by the Parties satisfies all due process considerations and meets the requirements of Rule 23(e)(1). The Class Notice attached as **Exhibit 1.A** is modeled after the Federal Judicial Center models and fully apprises Settlement Class Members of the existence of the lawsuit and the claims asserted, the proposed Settlement Agreement and the information they need to make informed decisions about their rights. This includes (i) the risks attendant to continued litigation; (ii) the terms and operation of the Settlement Agreement; (iii) the nature and extent of the release; (iv) the maximum attorneys' fees, expenses and Service Awards that will be sought; (v) the procedure and timing for opting out of the Settlement; (vi) the procedure and timing for objecting to the Settlement Agreement; and (vi) the date and place of the Fairness Hearing.

The Settlement Class Members are identifiable because they were customers of the HII Defendants. The HII Defendants will make reasonable efforts to provide current or last-known contact information for Settlement Class Members in their possession. (*See* HII Decl. ¶ 8). Notice of Settlement will be sent to the Settlement Class Members by email within 45 days of the entry of a Preliminary Approval Order. Within that time, the Settlement Administrator shall also establish a Settlement Website containing the Class Notice and the Settlement Agreement, and will cause the Notice to be published on the Receiver's website. For those Settlement Class

Members for which there is no email address, or whose emails are undeliverable, direct notice shall be made by U.S. mail to the last-known mailing addresses.

## VII.    REQUEST FOR FAIRNESS HEARING

Rule 23(e)(2) provides that if a settlement proposal would bind class members, the court may give final approval of it "only after a hearing and on a finding that it is fair, reasonable, and adequate."  Plaintiffs ask this Court to set a Fairness Hearing for the purpose of considering the fairness, reasonableness and adequacy of the Settlement Agreement, the payment of attorneys' fees, expenses and Service Awards, and whether the Settlement Agreement should be finally approved.  Class Counsel will file a memorandum in support of final approval prior to the Fairness Hearing.  Plaintiffs respectfully request that the Fairness Hearing be set for a date approximately 180 days from the entry of the Preliminary Approval Order.  This would allow ample time for notice to the Class Members and for the Parties to address any objections that may be filed.

## VIII.   CONCLUSION

For the reasons stated above, Plaintiffs ask this Court to enter the proposed Preliminary Approval Order attached as **Exhibit 1.C** and (i) grant preliminary approval of the Settlement of this Action as fair, adequate and reasonable, and within the reasonable range of possible final approval; (ii) confirm the Class, Settlement Class Representatives and Class Counsel for settlement purposes; (iii) approve the form and content of the Class Notice and find that the notice program set forth constitutes the best notice practicable under the circumstances, and satisfies due process and Rule 23; (iv) set the Objection Deadline and Opt-Out Deadline; and (v) schedule a Fairness Hearing, as well as any other or further relief the Court deems necessary or proper.

CASE NO. 0:19-cv-61430-SINGHAL/Valle

Dated: September 22, 2021.

LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP

By: /s/Jason Kellogg
  Jeffrey C. Schneider, P.A.
  Florida Bar No. 933244
  Primary email: jcs@lklsg.com
  Secondary email: ah@lklsg.com
  Lawrence A. Kellogg, P.A.
  Florida Bar No. 328601
  Primary email: lak@lklsg.com
  Secondary email: ah@lklsg.com
  Jason K. Kellogg, P.A.
  Florida Bar No. 0578401
  Primary email: jk@lklsg.com
  Secondary email: ah@lklsg.com
  Victoria J. Wilson, Esq.
  Florida Bar. No. 92157
  Email: vjw@lklsg.com
  Secondary email: acd@lklsg.com
  201 South Biscayne Boulevard
  Citigroup Center, 22nd Floor
  Miami, Florida  33131
  Telephone: (305) 403-8788
  Facsimile: (305) 403-8789

Respectfully submitted,

THE DOSS FIRM, LLC

By: /s/Jason Doss
  Jason R. Doss
  Florida Bar No. 0569496
  Primary email: jasondoss@dossfirm.com
  The Brumby Building
  127 Church Street, Suite 220
  Marietta, Georgia 30060
  Telephone: (770) 578-1314
  Facsimile: (770) 578-1302

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 22, 2021, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ Jason Kellogg
  Jason K. Kellogg, P.A.