UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(FT LAUDERDALE DIVISION)

CASE NO. 0:19-cv-61430-SINGHAL/Valle

ELIZABETH E. BELIN, *et al*.,

      Plaintiffs,

v.

HEALTH INSURANCE INNOVATIONS, INC., *et al*.,

      Defendants.

_____/

**PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES AND SERVICE AWARDS,
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, Elizabeth Belin, Christopher Mitchell, Kevin Furman, Mitchell Kirby, Kathryn Svenson, Gabrielle Watson, Jesse Manley, Randall Spitzmesser and Michael Escobar ("Plaintiffs"), for themselves and the Settlement Class Members, and pursuant to the Court's September 27, 2021 Order Preliminarily Approving Settlement and Providing for Notice [D.E. 265], move for (i) an award of attorneys' fees to Class Counsel of 33.33% of the $27.5 million Class Payment,[1] (ii) reimbursement of expenses in the amount of $178,872.61, and (iii) a service award of $6,250 to each of the Plaintiffs, and state:

## I.      INTRODUCTION

After more than two years of extensive litigation, Plaintiffs, through Class Counsel, reached a settlement (the "Settlement") with Defendants, Health Insurance Innovations, Inc. ("HII"), Health Plan Intermediaries Holdings, LLC ("HPIH," and collectively with HII, the "HII

---

[1] Unless otherwise noted, all capitalized terms shall have the meanings set forth in the Parties' Settlement Agreement.

Defendants")[2] and Michael Kosloske ("Kosloske").  The Settlement requires the HII Defendants to pay $27.5 million and implement changes to their business practices.  In return, Defendants receive a class release from all Settlement Class Members, except those who timely opt out.

Despite the substantial Class Payment, recovery in this case was far from guaranteed. Plaintiffs alleged that Defendants, along with other nonparties, worked together and conspired to mislead hundreds of thousands of consumers into buying their limited benefit indemnity plans and medical discount plans.  While consumers thought they were buying major medical insurance, they were really buying plans that provided little to no coverage for medical expenses and that did not comply with the Affordable Care Act's individual mandate.  On a class basis, Plaintiffs sought to hold Defendants liable for the return of premiums paid and for damages resulting from the limited coverage provided by the Defendants' plans.

Plaintiffs faced an uphill battle in prosecuting their claims.  Class counsel fully briefed four attempts to dismiss Plaintiffs' claims and then competing motions on class certification, along with *Daubert* motions targeting Plaintiffs' experts.  The racketeering claims and the nature of Plaintiffs' damages made the pleading and class certification stages particularly challenging, and required skillful research, analysis and briefing.  Indeed, the class certification order in this case remains subject to Defendants' petition for review to the U.S. Court of Appeals for the Eleventh Circuit. That petition has been fully briefed by the Parties.  To obtain meaningful discovery, Class Counsel served more than two dozen party and non-party discovery requests, and had to file nine motions to compel.  Class Counsel reviewed more than 98,000 documents containing hundreds of thousands of pages of material, and took or defended 16 depositions.

---

[2]      HII and HPIH (the "HII Defendants") now go by the name Benefytt Technologies, Inc. ("Benefytt").  Benefytt is a signatory to the Settlement Agreement.

Class Counsel also devoted substantial time and resources to mediation efforts. The Parties engaged in two mediation sessions, the latter with nationally recognized class action mediator Hunter R. Hughes III. Critically, during settlement discussions, it became clear that Defendants' financial viability precluded Defendants from satisfying a possible judgment for the Class or even funding a multimillion-dollar settlement. Defendants' insurers had denied coverage for this case, and a multimillion-dollar judgment likely would have pushed Defendants into bankruptcy. Thus, while the damages facing Defendants could amount to hundreds of millions of dollars, the probability that the Class Members recover that amount — or anything approaching it — was remote. It was not until the HII Defendants secured third-party financing to fund a settlement payment that the Parties could agree to the Settlement. Accordingly, under the circumstances the Settlement marks an excellent result for the Class.

Class Counsel at Levine Kellogg Lehman Schneider + Grossman LLP and The Doss Firm, LLC, brought this case on a contingency basis and spent thousands of hours prosecuting it, advancing nearly $200,000 in out-of-pocket expenses. The firms are entitled to reasonable compensation for their efforts in prosecuting this case and obtaining the Settlement. Given the complexity, risk and labor required to reach the Settlement, Class Counsel seeks 33.33% of the Settlement Fund ($9,165,750), plus reimbursement of litigation expenses. This request is well within the range of reasonable fee awards in this Circuit and is justified by the significant risk that Plaintiffs would take nothing from Defendants through this action. Applying the factors in *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991), this Court should grant the requested fee to Class Counsel because of the substantial recovery Plaintiffs were able to obtain despite the obstacles they faced.

Class Counsel's fee expert, William R. Scherer, Jr., who has more than four decades of complex litigation experience in South Florida, agrees that the Settlement is a significant

achievement under the circumstances.  (Scherer Decl. ¶ 17).[3]  In the attached declaration, Mr. Scherer highlights the substantial risks and uncertainties facing Class Counsel in taking this case on a contingency fee basis, even suggesting that bringing this action was a risk he would not have taken.  (*Id.* ¶ 29).  Mr. Scherer goes through the *Camden I* factors and concludes that Class Counsel's request for a 33.33% fee award is reasonable.  (*Id.* ¶¶ 24-33).

Further, Plaintiffs seek reimbursement of the $178,872.61 in expenses incurred by Class Counsel in prosecuting this action.  These expenses include, for example, mediator fees, expert witness and consulting fees, court reporter costs and other discovery-related expenses.  These expenses were necessary to further Plaintiffs' claims and facilitate the Settlement.  The Court should therefore grant the reimbursement request and order that Class Counsel's expenses also be paid from the Settlement Fund.

Finally, Plaintiffs request that the Court award each of the nine Plaintiffs $6,250 as a service award, for a total payment of $56,250.[4]

## II.    BACKGROUND

On June 7, 2019, Plaintiffs commenced this action against the HII Defendants alleging their involvement in a scheme designed to mislead consumers nationwide into purchasing the HII Defendants' limited benefit indemnity and medical discount plans.  [D.E. 1].  Defendants sold their plans to consumers through brokers like Simple Health and Donisi Jax, Inc. f/k/a Nationwide

---

[3]    The Declaration of William R. Scherer, Jr. in support of this Motion (the "Scherer Decl.") is attached as **Exhibit A**.

[4]    Plaintiffs recognize that, under *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), service awards are currently prohibited in this Circuit.  However, as discussed in Plaintiffs' motion for preliminary approval of the Settlement, there are indications that the Eleventh Circuit may reconsider that decision.  [D.E. 264 at 8 n.5].  Plaintiffs therefore ask the Court to retain jurisdiction so that if the Eleventh Circuit withdraws or recedes from its current panel opinion in *Johnson v. NPAS Solutions*, this Court can order a reasonable service award to each Plaintiff for their contribution as a class representative.

Health Advisors and d/b/a Atlantic Health ("Nationwide Health"). Plaintiffs allege that Defendants, along with Simple Health, Nationwide Health and others, acted together to trick consumers into believing that these plans were major medical insurance plans that complied with the Affordable Care Act. As damages, Plaintiffs sought to recover the premiums they paid for the Defendants' plans, their uncovered medical expenses resulting from the limited coverage provided by those plans and any tax penalties they received for not having ACA-compliant insurance.

Plaintiffs filed an Amended Complaint adding Kosloske as a Defendant and RICO claims against all Defendants. [D.E. 18]. Defendants sought to stay discovery pending their motion to dismiss the Amended Complaint. [D.E. 24, 27]. The Court denied that request. [D.E. 33].

After the Court disposed of Defendants' motion to dismiss by adopting Magistrate Judge Seltzer's report and recommendation [D.E. 39, 47], Plaintiffs filed their Second Amended Complaint, adding two more class representative and other allegations. [D.E. 53]. Defendants again moved to dismiss Plaintiffs' claims. [D.E. 68, 69]. After briefing and a hearing, the Court denied Defendants' request for dismissal. [D.E. 133].

In discovery, Plaintiffs expended considerable time and resources to obtain what they needed to prosecute this case. (Sept. 2021 Kellogg Decl. ¶ 5).[5] Plaintiffs served no less than 12 requests for production and four interrogatories to Defendants, along with 15 third-party subpoenas. (*See id.*). Plaintiffs filed nine motions to compel against Defendants and nonparties. [D.E. 59, 63, 64, 67, 71, 73, 130, 148, 154]. Magistrate Judge Valle heard many of those motions during a three-hour hearing on March 13, 2020. [D.E. 108]. All told, Plaintiffs obtained more

---

[5]     The September 17, 2021 Declaration of Jason Kellogg (the "Sept. 2021 Kellogg Decl.") is attached to the Plaintiffs' Motion for Preliminary Approval of Settlement Agreement as Exhibit 3. [D.E. 264-3].

than 98,000 documents from Defendants and third parties and reviewed hundreds of thousands of pages of these documents.  (Sept. 2021 Kellogg Decl. ¶ 5).

Plaintiffs also deposed the HII Defendants' corporate representatives over four days, and the Defendants' expert witnesses.  (*Id.*).  Eight of the nine Plaintiffs, along with Plaintiffs' two experts, prepared for and sat for deposition.  (*Id.*).  Plaintiffs also responded to comprehensive requests for production, interrogatories and requests for admission.  (*See id.*).  They produced more than 4,800 documents, including material containing their private health and personal information.  (*See id.*).  Such efforts in taking and participating in discovery required considerable time and resources.  (*See id.*).

On August 18, 2020, the Parties attended a full-day mediation.  (*See id.* ¶ 7).  All of the Plaintiffs, along with the Receiver for Simple Health, attended.  (*See id.*).  The mediation ended in an impasse.  [D.E. 141].

Plaintiffs then sought to amend their complaint to add information learned through discovery, add a class representative and add three other current or former HII executives as Defendants.  [D.E. 144].  The Court granted Plaintiffs' request in part, while denying the request to add the other individual defendants.  [D.E. 174].

Plaintiffs filed the operative Third Amended Complaint, and on October 15, 2020, moved to certify the class.  [D.E. 168].  The motion included more than 128 exhibits obtained through discovery.  Defendants filed a competing motion to deny class certification [D.E. 167] and *Daubert* motions relating to Plaintiffs' two experts.  [D.E. 185, 186].  All of these certification-related motions were fully briefed.  [D.E. 182, 184, 185, 186, 192, 194, 196, 197, 203, 204].

On February 1, 2021, the Court certified two main Classes (the "Simple Health Class" and the "Nationwide Health Class") and two Subclasses (the "Medical Expense Subclass" and "Tax

Penalty Subclass"). [D.E. 208]. The Court also appointed the undersigned as Lead Class Counsel. [D.E. 229].

Defendants petitioned the Eleventh Circuit for review of the Court's class certification order under Rule 23(f). (Sept. 2021 Kellogg Decl. ¶ 8). The Parties fully briefed Defendants' petition for review. (*Id.*).

On March 23, 2021, the Parties' counsel attended a second mediation, this time with nationally renowned class action mediator Hunter R. Hughes III. (*See id.* ¶ 9). While the case did not settle during this mediation session, the Parties and Mr. Hughes continued informal settlement discussions. (*See id.*). At Plaintiffs' request, the HII Defendants provided documents and information showing their financial viability. (*See id.*). Class Counsel consulted a forensic accounting firm about the information they received. (*See id.*). The HII Defendants provided Plaintiffs with assurances that, when they were sold in a private sale in August 2020, no reserve of funds was created or withheld relating to the outcome of this lawsuit. (*See id.*). Plaintiffs also obtained copies of the HII Defendants' insurance policies and had separate insurance counsel review the policies to assess potential coverage. (*See id.*). Notably, the HII Defendants' relevant liability insurance companies have contested coverage for this litigation and have paid only $100,000 for defense litigation costs previously incurred. (Sept. 2021 HII Decl. ¶ 4).[6] The HII Defendants confirmed that before they could agree to a substantial, multimillion-dollar settlement payment, they had to seek and obtain third-party financing. (*Id.* ¶ 6).

While still in consultation with mediator Hughes, the Parties finally agreed to the Settlement and executed a formal Settlement Agreement. [D.E. 264-1]. On September 27, 2021,

---

[6]     The September 20, 2021 Declaration of Domenick C. DiCicco Jr., as CEO of the HII Defendants, (the "Sept. 2021 HII Decl.") is attached to the Plaintiffs' Motion for Preliminary Approval of Settlement Agreement as Exhibit 4. [D.E. 264-4].

the Court granted preliminary approval (the "Preliminary Approval Order") of the Settlement and approved the proposed notice procedure for the Settlement Class. [D.E. 265]. In relevant part, the Preliminary Approval Order and Settlement Agreement require Plaintiffs to file their papers in support of Class Counsel's fee application, reimbursement of litigation expenses, and service awards on or before November 12, 2021. [*Id.* ¶ 20].

## III. ARGUMENT

### A. Legal Standard for an Award of Attorneys' Fees in Common Fund Cases

The Supreme Court has long recognized that where counsel's efforts have created a "common fund" for the benefit of a class, counsel should be compensated from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Such compensation ensures those who benefit are not "unjustly enriched." *Id.* In the Eleventh Circuit, "attorneys' fees awarded from a common fund must be based upon a reasonable percentage of the fund established for the benefit of the class." *See Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Gevaerts v. TD Bank*, No. 11:14-cv-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) ("[C]lass counsel is awarded a percentage of the fund generated through a class action settlement."). "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden I*, 946 F.2d at 774; *see also, e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (1999) (discussing district courts' discretion to fix fee awards based on "individual circumstances of each case"). District courts have substantial discretion in determining the appropriate fee percentage awarded to counsel. *See, e.g.*, *Gevaerts*, 2015 WL 6751061, at *10.

*Camden I* directs district courts to consider 12 nonexclusive factors when evaluating the reasonable percentage to award class counsel: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4)

the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.  946 F.2d at 772 n.3, 775 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action."  *Id.* at 775.  In addition, the Eleventh Circuit encourages district courts to consider any other factors unique to the particular case.  *See id.*  Most fundamentally, "monetary results achieved predominate over all other criteria."  *See id.* at 774.

The lodestar approach to determining a reasonable fee award is inapplicable when calculating class plaintiff "attorneys' fees awarded from a common fund."  *Id.*  A lodestar cross-check is unnecessary.  In fact, "in the Eleventh Circuit, 'the lodestar approach should not be imposed through the back door via a 'cross-check.'"  *Wilson v. EverBank*, No. 14-cv-22264, 2016 WL 457011, at *13 (S.D. Fla. Feb. 3, 2016) (quoting *In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011)).  "The Eleventh Circuit made clear in *Camden I* that percentage of the fund is the *exclusive* method for awarding fees in common fund class actions."  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362 (emphasis added).  Lodestar "encourages inefficiency" and "creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation."  *Id.* at 1362-63.  Thus, *"*courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all."  *Id.* at 1363; *see, e.g.*, *In re Takata Airbag Prods. Liability Litig.*, No. 15-02599,

2017 WL 5706147, at \*4-5 (S.D. Fla. Nov. 1, 2017); *Reyes v. AT&T Mobility Servs., LLC*, No. 10-20837, 2013 WL 12219252, at \*6 (S.D. Fla. Jun. 21, 2013).

Relevant here, district courts routinely apply the percentage method and *Camden I* factors to order fee awards totaling one-third or more of the common fund recovered for the class.  *See Wolff v. Cash 4 Titles*, 2012 WL 5290155, at \*5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide — roughly one-third"); *see also Waters v. Int'l Precious Metals Corp*., 190 F.3d 1291, 1295-98 (11th Cir. 1999) (affirming class action fee award of 33 1/3 % of the total available settlement fund); *Hanley v. Tampa Bay Sports & Ent. LLC*, No. 819CV00550CEHCPT, 2020 WL 2517766, at \*6 (M.D. Fla. Apr. 23, 2020) (awarding a "slight increase from the one-third benchmark"); *Pritchard v. APYX Med. Corp.*, No. 819CV00919SCBAEP, 2020 WL 6937821, at \*1 (M.D. Fla. Nov. 18, 2020) (33 1/3%); *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1382 (N.D. Ga. 2019) (discussing the normality of 33% contingency fees); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2017 WL 7798110, at \*4 (S.D. Fla. Dec. 18, 2017) (35%); *Swift v. BancorpSouth Bank*, No. 1:10-CV-00090-GRJ, 2016 WL 11529613, at \*19 (N.D. Fla. July 15, 2016) (35%); *Reyes*, 2013 WL 12219252, at \*3 (awarding "one-third of the total maximum settlement fund"); Eisenberg, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. REV. 937, 951 (2017) (empirical study showing the median award in Eleventh Circuit is 33%).

## B.      The Requested 33.33% Fee Award is Reasonable

Applying the percentage method and the factors referenced in *Camden I*, the Court should grant Class Counsel's request for a fee award of $9,165,750, which constitutes 33.33% of the $27.5 million Settlement Fund.  Class Counsel's request is justified here by the needs and complexity of this case, the results obtained by Class Counsel, the heavy investment of time and resources by Class Counsel, the risk of nonrecovery surrounding this case and similar one-third fee awards in

comparable class action cases.[7]   Indeed, the reasonableness of Class Counsel's request has been examined by William R. Scherer, Jr., a prominent South Florida attorney with over four decades of experience with complex and multiparty litigation.  (*See* Scherer Decl. ¶ 5).  After reviewing relevant material and becoming acquainted with the procedural posture of this case, Mr. Scherer agrees that Class Counsel's requested fee award is reasonable. (*See id.* ¶ 19).

### 1.   This action required a significant amount of time and labor

First, the Court should consider the significant time and labor devoted by Class Counsel to prosecute this case and reach a settlement.  *See Camden I*, 946 F.2d at 772 n.3, 775 (examining "the time required to reach a settlement" and "the time and labor required").  The scope and complexity of this case required Class Counsel to focus on it exclusively for extended periods of time.  Class Counsel spent thousands of hours on this case without compensation, and have advanced nearly $200,000 in out-of-pocket expenses.  (Nov. 2021 Kellogg Decl. ¶¶ 6-7; Nov. 2021 Doss Decl. ¶¶ 6-7).[8]  Before bringing suit, Class Counsel conducted a months-long investigation of publicly available information regarding Plaintiffs' losses, and spent considerable time learning about the Affordable Care Act and the limited indemnity benefit products at issue in this case.  (*See* Sept. 2021 Kellogg Decl. ¶¶ 4, 10, 12).  Class Counsel also conducted extensive research into the viability of potential claims, including the complexities of RICO claims.  (*See id.*).  Class Counsel was able to craft claims that, after substantial briefing, survived four dismissal bids.  (*See id.* ¶ 5).  Class Counsel took or defended at least 16 depositions and reviewed hundreds of

---

[7]   As of the filing of this Motion, there have not been any objections to the Settlement.  The deadline to object to the Settlement is December 27, 2021.  Accordingly, one of the *Camden I* factors — "whether there are any substantial objections" — is premature at this time.

[8]   The Declarations of Jason Kellogg, Esq. dated November 12, 2021, (the "Nov. 2021 Kellogg Decl.") and Jason Doss, Esq. dated November 12, 2021, (the "Nov. 2021 Doss Decl."), in support of this Motion are attached hereto as **Exhibit B** and **Exhibit C,** respectively.

thousands of pages of documents received in discovery from Defendants and third parties, later using that material to build a detailed record in support of class certification.  (*See id.* ¶¶ 5-8). Class Counsel also assisted in preparing Plaintiffs for their depositions and in responding to Defendants' comprehensive discovery requests.  (*See id.* ¶ 6).  Plaintiffs sought certification and responded to Defendants' motion for decertification, as well as multiple *Daubert* motions directed at their experts, ultimately achieving an order granting certification.  [D.E. 208].  Plaintiffs responded to Defendants' petition to appeal that certification order before this case was ultimately settled after two, full-day mediation sessions and months of additional negotiations.  (*See* Sept. 2021 Kellogg Decl. ¶¶ 7-9).  During these negotiations, Class Counsel spent considerable time and resources evaluating Defendants' financial viability and insurance coverage.  (*See id.* ¶ 9).

It is therefore apparent from the record that substantial time and labor were required of Class Counsel in prosecuting this case and to obtain the Settlement.  (*See* Scherer Decl. ¶ 31). These factors weigh in favor of Class Counsel's requested fee award.  *See Dear*, 2018 WL 1830793, at *3.

> ### 2.  Class Counsel achieved an excellent result for the Settlement Class despite the complexity of the case and obstacles to recovery

Next, the Court should consider the results obtained by Class Counsel in light of the complexity of the case and the considerable obstacles to recovery.  *See Camden I*, 946 F.2d at 772 n.3, 775 (examining "the novelty and difficulty of the questions involved" and "the amount involved and the results obtained," and "any non-monetary benefits conferred upon the class").

Here, the Settlement demonstrates a hard-fought achievement under the circumstances. The HII Defendants must pay $27.5 million for the benefit of the Class, plus up to $150,000 in initial notice and administration costs.  (*See* Settlement Agreement ("SA") §§ I(f), III(a)).[9]  In

---

[9]     The Settlement Agreement is attached to the Plaintiffs' Motion for Preliminary Approval

addition, the Settlement provides for changes to the HII Defendants' business practices to ensure fair and honest sales of their plans going forward and to discourage their agents from engaging in improper sales tactics.  (*Id.* § III(c)).

These benefits to the Class are remarkable given the challenges that the Class faced and would continue to face if a settlement were not reached.  As discussed above, Plaintiffs survived four attempts by Defendants to dismiss their claims and successfully obtained class certification. Class Counsel achieved this despite the inherent difficulties in pleading and certifying class actions in cases where causation and reliance are critical to establishing damages.  Through extensive discovery and briefing, Class Counsel successfully showed the uniform actions by Defendants that made class certification appropriate.  But even then, class certification was at risk given the Defendants' petition for review to the Eleventh Circuit.

Bringing RICO claims also introduced another angle of complexity, as those claims require additional evidence pertaining to Defendants' intentional wrongdoing and involvement with the alleged scheme.  Moreover, with various nonparties alleged to have been involved in the Defendants' scheme, the Defendants stood to benefit from a so-called "empty chair" defense at trial.  Defendants would likely attempt to shift the blame and give the jury a reason to reduce their liability for the Class' damages.  Mr. Scherer, drawing on his decades of experience representing plaintiffs in complex litigation, acknowledges these difficult legal and factual issues facing the Class and Class Counsel.  (Scherer Decl. ¶¶ 17, 28).

Critically, the potential for nonrecovery in this case was compounded by questions about HII Defendants' financial viability and their ability to even fund a settlement absent third-party financing.  The HII Defendants informed Class Counsel regarding their financial status and

_____

of Settlement Agreement as Exhibit 1.  [D.E. 264-1].

inability to satisfy a large judgment or to fund a meaningful settlement without obtaining outside financing. (Sept. 2021 Kellogg Decl. ¶ 9). Class Counsel reviewed the HII Defendants' financial information and even retained an accounting firm to assist in their evaluation. (*Id.*). Class Counsel also hired insurance counsel to confirm that there was no insurance coverage available to cover Plaintiffs' damages. (*Id.*). Thus, while Plaintiffs' claims, if fully successful, could yield a damages award against Defendants in the hundreds of millions of dollars, the recovery in this case is remarkable given the very real possibility that the Class walk away from this case with little to no recovery. Again, Mr. Scherer acknowledges the Class' potential for nonrecovery when opining that the Settlement constitutes a favorable result. Thus, the Settlement is an excellent achievement under the circumstances, even if it does not provide a near-full recovery to the Class. *See Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-CV-20880-UU, 2016 WL 10518902, at *10 (S.D. Fla. Oct. 17, 2016) (awarding a 33.33% fee to class counsel and describing as "excellent" and an "outstanding result" a recovery of 5.5% of the class' maximum damages and 10% of the class' most likely damages).

### 3. The action posed considerable risks to Class Counsel

The Court should place great weight on risks assumed by Class Counsel in bringing this case on a contingency fee basis. *See Camden I*, 946 F.2d at 772 n.3, 775 (examining "whether the fee is fixed or contingent," "the 'undesirability' of the case," and "the economics involved in prosecuting a class action"). "Where class counsel undertakes such risks on a pure contingency fee basis, as it did here, it 'often justifies an increase in the award of attorney's fees.' . . . In fact, this Court has recognized that the undertaking of such risk alone 'can support a fee award of over 30% of the settlement fund.'" *Cabot East Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *4.

Class Counsel brought this case on a pure contingency fee basis and have not received any compensation for their efforts. (Sept. 2021 Kellogg Decl. ¶ 4). As of this Motion, Class Counsel

have collectively devoted thousands of hours in attorney and paralegal time in prosecuting this case.  (Nov. 2021 Kellogg Decl. ¶ 6; Nov. 2021 Doss Decl. ¶ 6).  They have also incurred nearly $200,000 in unreimbursed expenses.  (Nov. 2021 Kellogg Decl. ¶ 7; Nov. 2021 Doss Decl. ¶ 7).  Both firms have less than 20 attorneys combined, so the financial impact of this case on Class Counsel was significant.

As discussed above, such time and resources were necessary to aggressively prosecute Plaintiffs' claims and achieve class certification.  As also discussed above, Class Counsel made this investment of time and resources despite the various legal and factual obstacles to recovery for the Class.  Put simply, Class Counsel took a sizable risk in prosecuting this action.  Mr. Scherer confirms the "gamble" taken by Class Counsel in bringing this case.  (Scherer Decl. ¶ 28).

Adding to the undesirability of the case, only one other similar case was contemporaneously filed, and that case was voluntarily dismissed within months of its filing.  *See Parker v. Health Ins. Innovations, Inc.*, No. 19-cv-22316-KMW (S.D. Fla. Aug. 6, 2019).  Another lawsuit involving the corporate defendants is pending before this Court but was filed nearly a year after Class Counsel brought this case.  *See Griffin v. Benefytt Techs., Inc.*, 20-cv-62371 (S.D. Fla. May 5, 2020).  As a result, Class Counsel has been at the lead of prosecuting the Class' claims against Defendants.

These factors pertaining to the risks assumed by Class Counsel thus support the requested fee award.  *See Cabot E. Broward 2 LLC*, 2018 WL 5905415, at *4 (finding substantial risk by class counsel because of "novel and difficult issues and . . . several affirmative defenses that could have reduced the value of the case to zero").

**4.  This case required Class Counsel's high level of skill and a meaningful relationship with the Plaintiffs**

The next *Camden I* factors pertain to Class Counsel's capabilities, reputation and handling of the action for the Plaintiffs.  *See Camden I*, 946 F.2d at 772 n.3, 775 (examining "the skill requisite to perform the legal service properly," "the experience, reputation, and ability of the attorneys," and "the nature and length of the professional relationship with the client").  These factors similarly weigh in favor of a 33.33% fee award to Class Counsel.

Class Counsel has significant experience with class action and complex litigation and are well-respected litigators.  (*See* Sept. 2021 Kellogg Decl. ¶ 16; Sept. 2021 Doss Decl. ¶ 16; Scherer Decl. ¶ 32).  Class Counsel deployed this experience and skill here to address the complicated pleading, discovery, certification and settlement issues that were presented in this case.  *See supra* Section B(1)-(2).  Class Counsel faced formidable and sophisticated opposition from a 200-plus lawyer law firm, Greenspoon Marder, and a 1,100-plus lawyer firm, King & Spalding.

As to their relationship with Plaintiffs, Class Counsel had never met the Plaintiffs before this case arose.  Plaintiffs approached Class Counsel seeking representation to pursue their claims. None of the Plaintiffs had ever participated in a class action lawsuit before.  Class Counsel developed a meaningful working relationship with Plaintiffs to collaborate on, for example, their investigation, pleadings, discovery obligations and settlement discussions.  Through this collaboration and Class Counsel's skill, Plaintiffs were able to obtain a significant settlement with the Defendants.  These factors therefore weigh in favor of Class Counsel's requested fee award.

**5.  Preclusion from other employment and time limits imposed justify the requested fee**

Class Counsel's requested fee award is also supported by the *Camden I* factors bearing on Class Counsel's preclusion from other employment as a result of this case and the time limits imposed by the circumstances.  *See Camden I*, 946 F.2d at 772 n.3 (examining "the preclusion of

other employment by the attorney due to acceptance of the case" and "time limitations imposed by the client or the circumstances").

Class Counsel devoted thousands of hours to this case and nearly $200,000 in out-of-pocket expenses in the pursuit of Plaintiffs' claims. Given the size of Class Counsel's law firms (less than 20 attorneys combined), a case of this magnitude took away from their ability to pursue matters with guaranteed compensation from clients, as well as other contingency fee matters. Class Counsel complied with scheduling deadlines and acted expeditiously in prosecuting this case. At certain points, this required various attorneys' complete attention to this case. Mr. Scherer, who is familiar with plaintiff contingency fee arrangements and law firm management, makes specific note of the impact this case had on Class Counsel. (Scherer Decl. ¶ 32). These factors further justify Class Counsel's request for a 33.33% fee award.

### 6. The requested fee award is consistent with customary fees and awards in similar class action cases

Finally, the factors pertaining to fee awards in other class action cases weigh in favor of Class Counsel's requested fee of 33.33% of the Settlement Fund. *See Camden I*, 946 F.2d at 772 n.3, 775 (examining "the customary fee" and "awards in similar cases"). As noted by Judge Scola, a "one-third recovery . . . is a customary fee" for class actions. *Diakos v. HSS Sys., LLC*, No. 14-61784, 2016 WL 3702698, at *6 (S.D. Fla. Feb. 4, 2016). Courts in this Circuit routinely grant fee awards of one-third or more of the class settlement fund. *See, e.g., Swift*, 2016 WL 11529613, at *19 (35%); *Owens*, No. 2:14-cv-00074 (N.D. Ga. Nov. 19, 2019) (33.33%); *Cabot East Broward 2 LLC*, 2018 WL 5905415, at *11 (33.33%); *Dear*, 2018 WL 1830793, at *5 (33.3%); *Fernandez*, 2017 WL 7798110, at *4 (35%); *Wolff*, 2012 WL 5290155, at *7 (33%); *Hanley*, 2020 WL 2517766, at *6 ("slight increase from the one-third benchmark"); *Pritchard*, 2020 WL 6937821, at *1 (33 1/3%); *Reyes*, 2013 WL 12219252, at *3 ("one-third of the total maximum

settlement fund"); *Atkinson v. Wal-Mart Stores, Inc.*, No. 8:08-CV-691-T-30TBM, 2011 WL 6846747, at *7 (M.D. Fla. Dec. 29, 2011) (33 1/3%); *In re Clarus Corp. Sec. Litig.*, No. 1:00-cv-02841 (N.D. Ga. Jan. 6, 2005), D.E. 148 (33.33%); *In re Profit Recovery Group Int'l, Inc.* Sec. Litig., No. 1:00-CV-1416-CC (N.D. Ga. May 26, 2005), D.E. 203 (33.33%); *In re Theragenics Corp., Sec. Litig.*, No. 1:99-CV-0141-TWT (N.D. Ga. Sept. 29, 2004), D.E. 143 (33.33%); *In re Harbinger Corp. Sec. Litig.*, No. 1:99-CV-2353-MHS (N.D. Ga. Oct. 18, 2001), D.E. 38 (33.33%); *In re The Maxim Group, Inc. Sec. Litig.*, No. 1:99-CV- 1280-CAP (N.D. Ga. July 20, 2004), D.E. 143 (33.33%); *In re Medirisk, Inc. Sec. Litig.*, No. 1:98-CV-1922-CAP (N.D. Ga. Mar. 22, 2004), D.E. 181 (33.33%); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-98 (11th Cir. 1999) (33 1/3 %); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1252 (S.D. Fla. 2016) (awarding 33%); *In re Terazosin Hydrochloride Antitrust Litig.*, 1:99-MD-01317-PAS, 2005 WL 8181045, *4-5 (S.D. Fla. April 19, 2005) (33 1/3 %); *Gutter v. E.I. Dupont De Nemours & Co.*, 1:95-cv-02152 (S.D. Fla. May 30, 2003), D.E. 626 (33 1/3 %).

Further, Mr. Scherer opines that a one-third contingency fee arrangement with a plaintiff is customary in complex multiparty litigation.  (Scherer Decl. ¶ 33).  Plaintiffs' arrangement with Class Counsel here was no different.   Class Counsel took this case on a contingency fee arrangement and seek compensation consistent with the above-cited awards in class action cases. As a result, these factors weigh in favor of awarding Class Counsel the requested 33.33% fee.

## C.       The Court Should Grant the Request for Reimbursement of Expenses

Plaintiffs also ask that Class Counsel be reimbursed for the litigation expenses incurred in prosecuting this case.   Courts routinely award reimbursement from the common fund for reasonable litigation expenses.  *See, e.g.*, *In re Checking Account Overdraft Litig.*, 2015 WL 12641970, at *18; *Gevaerts*, 2015 WL 6751061, at *14.  "Indeed, courts normally grant expense requests in common fund cases as a matter of course."  *Hanley*, 2020 WL 2517766, at *6.

Here, Class Counsel incurred a total of $178,872.61 in expenses to date, with Levine Kellogg Lehman Schneider + Grossman LLP incurring $152,548, (Nov. 2021 Kellogg Decl. ¶ 7), and The Doss Firm, LLC incurring $26,324.61, (Nov. 2021 Doss Decl. ¶ 7).  These expenses include mediation fees, expert witness fees, electronic legal research, court reporters, deposition transcripts, process servers, photocopying and postage.  Class Counsel submit that these expenses were necessarily incurred in furtherance of the litigation and should therefore be reimbursed from the Settlement Fund.  *See, e.g.*, *In re Checking Account Overdraft Litig.*, 2015 WL 12641970, at *18 (granting request for expenses of $976,191.34 from the settlement fund, where the expenses included expert fees, court reporter fees and transcripts, and mediator fees, which "were necessarily incurred in furtherance of the litigation of the Action and the Settlement"); *Cabot East Broward 2 LLC*, 2018 WL 5905415, at *9 (granting $1,728,947 in reimbursement of expenses from settlement fund).

### D.    The Court Should Reserve Jurisdiction to Grant Service Awards

The Settlement Agreement contemplates that Plaintiffs, as class representatives, may seek service awards in the amount of $6,250 for each Plaintiff, for a total of $56,250.  (SA § IV(c)).  Plaintiffs acknowledge that, under the Eleventh Circuit's panel decision in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), courts should not grant service awards to class representative plaintiffs.  Plaintiffs note, however, that a petition for rehearing *en banc* has been filed with the Eleventh Circuit in that case, and a judge of the Eleventh Circuit has withheld the mandate pertaining to the panel opinion.  *See Dickenson v. NPAS Solutions, LLC*, 18-12344 (11th Cir. Nov. 9, 2020).  Therefore, Plaintiffs ask the Court to reserve jurisdiction to order the requested service awards pending the Eleventh Circuit's final disposition on the issue.

If this Court eventually reaches the propriety of the service awards to the Plaintiffs, Plaintiffs submit that a service award to each Plaintiff in the amount of $6,250 is appropriate in

this case.  Such awards are common in class action settlements and are meant to compensate the class representatives for their efforts and sacrifices in bringing their claims and participating in the action.  *See, e.g.*, *Hanley*, 2020 WL 2517766, at *7 (discussing reasoning for service awards and awarding $10,000 to each plaintiff); *Thorpe*, 2016 WL 10518902, at *12 (awarding $15,000 to each class representative); *Fernandez*, 2017 WL 7798110, at *4.

In this case, Plaintiffs sought out Class Counsel to bring their claims.  (Sept. 2021 Kellogg Decl. ¶ 6).  Eight of the nine Plaintiffs prepared for and sat for deposition, taking a day away from their work and/or personal life and subjecting themselves to cross-examination.[10]  (*Id.*).  Each of them participated in discovery by responding to Defendants' written requests and producing documents that included their sensitive personal information.  (*Id.*).  As well, they each spent an entire workday at mediation and participated with subsequent settlement discussions.  (*Id.* ¶ 7).  Such efforts and sacrifices justify the requested service awards to Plaintiffs of $6,250 each.  *See Hanley*, 2020 WL 2517766, at *7.  The Court should therefore reserve jurisdiction to make these awards pending the Eleventh Circuit's final ruling in *Johnson v. NPAS Solutions, LLC*.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court (i) award Class Counsel attorneys' fees in the amount of $9,165,750, which constitutes 33.33% of the Settlement Fund, (ii) order the reimbursement of $178,872.61 in litigation expenses to Class Counsel, and (iii) subject to the Eleventh Circuit's final disposition of *Johnson v. NPAS Solutions, LLC*, order service awards to the Plaintiffs of $6,250 each.  The proposed final order and judgment attached as Exhibit 1.D. to the Settlement Agreement reflects the relief sought in this Motion.

---

[10]     The deposition of the ninth Plaintiff was pending at the time of the Settlement.

CASE NO. 0:19-cv-61430-SINGHAL/Valle

**Local Rule 7.1(a)(3) Certification**:  Undersigned counsel conferred with counsel for Defendants who, pursuant to Section IV(a), (c) of the Settlement Agreement, do not oppose the relief requested herein.

Dated: November 12, 2021.

LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP

By: /s/Jason Kellogg
    Jeffrey C. Schneider, P.A.
    Florida Bar No. 933244
    Primary email: jcs@lklsg.com
    Secondary email: gb@lklsg.com
    Lawrence A. Kellogg, P.A.
    Florida Bar No. 328601
    Primary email: lak@lklsg.com
    Secondary email: gb@lklsg.com
    Jason K. Kellogg, P.A.
    Florida Bar No. 0578401
    Primary email: jk@lklsg.com
    Secondary email: gb@lklsg.com
    Victoria J. Wilson, Esq.
    Florida Bar No. 92157
    Email: vjw@lklsg.com
    Secondary email: acd@lklsg.com
    Marcelo Diaz-Cortes, Esq.
    Florida Bar No. 118166
    Primary email: md@lklsg.com
    201 South Biscayne Boulevard
    Citigroup Center, 22nd Floor
    Miami, Florida  33131
    Telephone: (305) 403-8788
    Facsimile: (305) 403-8789

Respectfully submitted,

THE DOSS FIRM, LLC

By: /s/Jason Doss
Jason R. Doss
Florida Bar No. 0569496
Primary email: jasondoss@dossfirm.com
The Brumby Building
127 Church Street, Suite 220
Marietta, Georgia 30060
Telephone: (770) 578-1314
Facsimile: (770) 578-1302

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that on November 12, 2021, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Jason Kellogg*
Jason K. Kellogg, P.A.