UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(FT LAUDERDALE DIVISION)

CASE NO. 0:19-cv-61430-SINGHAL/Valle

ELIZABETH E. BELIN, *et al*.,

      Plaintiffs,

v.

HEALTH INSURANCE INNOVATIONS, INC., *et al*.,

      Defendants.

_____/

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT AND FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT
OF EXPENSES, AND INCORPORATED MEMORANDUM OF LAW**

      Plaintiffs, Elizabeth Belin, Christopher Mitchell, Kevin Furman, Mitchell Kirby, Kathryn Svenson, Gabrielle Watson, Jesse Manley, Randall Spitzmesser and Michael Escobar ("Plaintiffs"), for themselves and the Settlement Class Members, move for (i) final approval of the Settlement[1] of this Action against Defendants, Health Insurance Innovations, Inc. ("HII"), Health Plan Intermediaries Holdings, LLC ("HPIH")[2] and Michael Kosloske ("Kosloske") (collectively, the "Defendants"); (ii) an award of attorneys' fees to Class Counsel and reimbursement of expenses advanced by Class Counsel to prosecute the Action; and (iii) a Case Contribution Fee to Plaintiffs, and state:

**I.    INTRODUCTION**

      On September 27, 2021, following more than two years of hard-fought litigation, the Court preliminarily approved a $27.5 million settlement to resolve this class action, which alleges that

---

[1]     All capitalized terms shall have the meanings set forth in the Settlement Agreement. [D.E. 264-1].

[2]     HII and HPIH (the "HII Defendants") now go by the name Benefytt Technologies, Inc. ("Benefytt"). Benefytt is a signatory to the Settlement Agreement.

Defendants violated the Racketeer Influenced Corrupt Organizations Act ("RICO") and aided and abetted a scheme by Simple Health and Nationwide Health to mislead consumers to believe they were buying comprehensive medical insurance when they were really buying limited benefit indemnity plans and medical discount plans.

Nothing has occurred in the interim to change the Court's preliminary conclusion that the settlement is fair, reasonable and adequate and in the best interest of class members. **Indeed, not a single one of the more than 230,000 Settlement Class Members has objected to the Settlement, and just three have opted out**.

After establishing a Settlement Website, in mid-November 2021 the Settlement Administrator sent 238,835 Direct Notices to Settlement Class Members via email or U.S. mail. In early January 2022, Settlement Class Members received an email reminder notice, the cost of which Class Counsel has agreed to advance. A few weeks later, the Parties requested and this Court approved a Supplemental Notice that was sent to Settlement Class Members by U.S. Mail. The HII Defendants have agreed to advance that cost. And in February 2022, Class Counsel agreed to advance the cost of a final reminder email notice sent out about two weeks ago.

As a result of these multiple notices, 7,653 Claim Forms[3] were submitted by the claims deadline (which this Court had extended to February 23, 2022, at the request of the Parties). This claims submission rate represents 3.3% of all 230,113 Settlement Class Members, which is within the reasonable claims rate in this District and elsewhere for a suit with this many class members. (*See infra* Section V).

Of the Participating Class Members, 6,291 joined the Medical Expense Subclass and 4,217 joined the Tax Penalty Subclass. After the Settlement Administrator calculates each Participating

---

[3]    This figure will likely change slightly in advance of the Final Approval Hearing on March 31, 2022. The Settlement Administrator has identified 45 duplicate claims so far, and has not yet finished its claim review to verify claims for completeness and eligibility. Pursuant to Section IV(q) of the Settlement Agreement, the Settlement Administrator will separately submit a Declaration describing the giving of Notice and its results.

Class Member's pro rata share of the Settlement Fund as provided in Section VI(d) of the Settlement Agreement, each Participating Class Member will receive his or her pro rata share of the Net Consideration. Medical Expense Subclass members will receive a 25% multiplier on their *pro rata* distribution, with Tax Penalty Subclass members receiving a 3.5% multiplier. Given the size of the settlement amount compared to the number of claimants, the concept of a multiplier is preferable to a lengthy and likely far more expensive claims process with its considerable costs relating to expert review of medical and tax records.

The $27.5 million settlement amount represents a significant recovery, particularly given the HII Defendants' financial condition, the lack of available insurance and the risks of continued litigation. If finally approved, the Settlement will end nearly three years of litigation and a pending Eleventh Circuit appeal, and provide immediate compensation to consumer victims. The agreed-upon Settlement Fund is nonreversionary, so no money will revert to Defendants.

Importantly, the Settlement also contains nonmonetary relief aimed at protecting consumers from future harm. Subsequent to the filing of this lawsuit, the HII Defendants discontinued the sale of limited benefit indemnity plans through all but one distributor. For those remaining plans, the HII Defendants agree to make business practice changes and/or maintain changes implemented within the last two years, including requiring agents and distributors of the plans to record and maintain all sales calls.

While the Settlement is necessarily a compromise, the path to a greater recovery is daunting. After avoiding Rule 23(f) review, Plaintiffs would then likely face additional risks and delays presented by summary judgment before reaching a trial of peers who may or may not accept Plaintiffs' claims. Even if Plaintiffs obtain a successful verdict, Defendants likely could not pay a verdict of the size sought by Plaintiffs. For these reasons, Plaintiffs and Class Counsel, who have experience in similar litigation, support the Settlement. The Simple Health Receiver, Michael I. Goldberg, Esq. (the "Receiver"), attended mediation and also supports the Settlement, which provides another form of recovery for Simple Health victims. **(Goldberg Decl. ¶ 6 [D.E. 264-2])**.

The thorough record developed over years of litigation, the extensive mediation talks leading to the Settlement and the consensus support from concerned parties give every indication that the Settlement is procedurally and substantively fair, and merits the Court's final approval.

## II.      BACKGROUND AND PROCEDURAL HISTORY

In late 2018, the FTC filed a lawsuit against Simple Health Plans LLC and related entities and individuals (collectively, "Simple Health") alleging that Simple Health misled consumers to believe they were buying comprehensive medical insurance when they were really buying limited benefit indemnity plans and medical discount plans.  *See FTC v. Simple Health Plans LLC*, No. 18-cv-62593-GAYLES (S.D. Fla.).  That court appointed the Receiver, finding after an evidentiary hearing that "[t]hough consumers believed they were purchasing comprehensive health insurance coverage, [Simple Health] sold them practically worthless limited indemnity or discount plans."

On June 7, 2019, Plaintiffs brought this class action alleging that Defendants and a group of companies and individuals, including Simple Health and Donisi Jax, Inc. f/k/a Nationwide Health Advisors and d/b/a Atlantic Health ("Nationwide Health"), working together, misled hundreds of thousands of consumers nationwide to believe that their limited benefit indemnity plans and medical discount plans were major medical insurance.  [D.E. 1].  Plaintiffs claimed violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), aiding and abetting fraud and fiduciary duty and unjust enrichment.

On July 17, 2019, Plaintiffs filed an Amended Complaint adding Kosloske and claims for RICO conspiracy and aiding and abetting a RICO violation.  [D.E. 18].  Defendants moved to stay discovery pending their motion to dismiss the Amended Complaint, arguing that Plaintiffs failed to state a claim.  [D.E. 24, 27].  Judge Moreno denied the motion to stay [D.E. 33], and Magistrate Judge Seltzer issued a Report and Recommendation denying the substantive portions of Defendants' motion to dismiss (while instructing Plaintiffs to correct some technical pleading deficiencies).  [D.E. 39].  Defendants objected to the R&R [D.E. 42, 43] but Judge Moreno overruled the objections and adopted the R&R.  [D.E. 47].  Shortly thereafter, the case was

reassigned to Judge Singhal.  [D.E. 49].  Plaintiffs filed a Second Amended Complaint adding allegations and two more class representatives.  [D.E. 53].  Defendants filed a motion to dismiss [D.E. 68, 69], which the Court denied after a hearing on April 9, 2020.  [D.E. 133].

Plaintiffs engaged in extensive and hard-fought discovery.  (**Kellogg Decl. ¶ 5 [D.E. 264-3]**.  Plaintiffs issued 12 requests for production and four interrogatories to Defendants.  (*See id.*).  Plaintiffs also served 15 third-party subpoenas.  (*See id.*).  Ultimately, Plaintiffs were forced to file no less than *nine motions to compel*, including four directed at Defendants and five directed at recipients of the third-party subpoenas.  [D.E. 59, 63, 64, 67, 71, 73, 130, 148, 154].  Several of those motions were the subject of a three-hour hearing held by Magistrate Judge Valle on March 13, 2020.  [D.E. 108].  Plaintiffs' efforts paid off, as they obtained more than 98,000 documents from Defendants and third parties.  (Kellogg Decl. ¶ 5).  Plaintiffs' counsel reviewed hundreds of thousands of pages of these documents.  (*See id.*).

Plaintiffs took the HII Defendants' corporate representative depositions over the course of four days, as well as depositions of Defendants' experts  (*See id.*).  Eight of the nine Plaintiffs, as well as Plaintiffs' two experts, spent considerable time preparing for and sitting for their depositions.[4]  (*See id.* ¶ 6).  Plaintiffs each responded to lengthy requests for production, interrogatories and requests for admission.  (*See id.*).  Together Plaintiffs produced more than 4,800 documents, including health-related documents containing personal information.  (*See id.*).

On August 18, 2020, the Parties held an all-day mediation.  (*See id.* ¶ 7).  Each of the Plaintiffs and the Simple Health Receiver attended.  (*See id.*).  That mediation ended in an impasse.  [D.E. 141].  Plaintiffs then moved for leave to file a Third Amended Complaint to make additional allegations based on information gleaned in discovery, to add a class representative and to add three more current or former HII executives as Defendants.  [D.E. 144].  This Court granted the amendment in part, denying Plaintiffs' request to add the individual defendants.  [D.E. 174].

---

[4]     The deposition of the ninth Plaintiff, Mr. Escobar, was pending at the time of settlement. (Kellogg Decl. ¶ 6).

On October 15, 2020, Plaintiffs moved to certify the class. [D.E. 168]. Plaintiffs' motion included more than 128 exhibits obtained during discovery. Defendants concurrently moved to deny class certification [D.E. 167] and filed *Daubert* motions directed at Plaintiffs' two experts. [D.E. 185, 186]. All of these certification-related motions were fully briefed. [D.E. 182, 184, 185, 186, 192, 194, 196, 197, 203, 204].

On February 1, 2021, the Court granted Plaintiffs' motion for class certification. [D.E. 208]. In its 30-page Order, the Court certified the following Classes and Subclasses:

> "Simple Health Class." All individuals who purchased the HII Defendants' limited benefit indemnity plans and/or ancillary products such as medical discount plans through Simple Health within the applicable statute(s) of limitation, and paid fee(s) and/or a premium(s) that were not completely recovered through a refund or chargeback.

> "Nationwide Health Class." All individuals who purchased the HII Defendants' limited benefit indemnity plans and/or ancillary products such as medical discount plans through Nationwide Health within the applicable statute(s) of limitation, and paid fee(s) and/or a premium(s) that were not completely recovered through a refund or chargeback.

> "Medical Expense Subclass." All individuals within the Simple Health Class or Nationwide Health Class who incurred uncovered medical expense(s).

> "Tax Penalty Subclass." All individuals within the Simple Health Class or Nationwide Health Class who incurred a penalty under the ACA's individual mandate provisions.

Plaintiffs then moved for the appointment of undersigned counsel to be Lead Class Counsel [D.E. 218], which this Court granted on February 19, 2021. [D.E. 229].

On February 16, 2021, Defendants filed a Rule 23(f) petition with the U.S. Court of Appeals for the Eleventh Circuit, seeking review of the Court's class certification Order. (Kellogg Decl. ¶ 8). The Parties fully briefed the petition. (*See id.*).

On March 23, 2021, counsel for the parties and the Simple Health Receiver attended a second mediation, this time with nationally recognized class action mediator Hunter R. Hughes III. (*See id.* ¶ 9) An agreement was not reached on March 23, but Hughes and the Parties continued to have informal discussions. (*See id.*). Plaintiffs requested, and the HII Defendants provided on

a confidential basis, documents and information regarding the HII Defendants' financial viability. (*See id.*).  Plaintiffs' counsel consulted a forensic accounting firm about the information it received. (*See id.*).  Plaintiffs obtained the HII Defendants' assurance that when they were sold in a private sale in August 2020, no reserve of funds was created or withheld relating to the outcome of this lawsuit.  (*See id.*).  Plaintiffs obtained copies of the HII Defendants' insurance policies and hired and paid an insurance attorney to carefully review the policies to analyze potential coverage.  (*See id.*).  The HII Defendants' relevant liability insurance companies have contested insurance coverage for this litigation and have only paid $100,000 for defense litigation costs previously incurred.  **(HII Decl. ¶ 4 [D.E. 264-4])**.  And before Defendants could agree to make a substantial, multimillion-dollar settlement payment, the HII Defendants sought and obtained third-party financing.  (*See id.* ¶ 6).  The parties reached settlement in the amount of $27.5 million, and a formal Settlement Agreement was executed.

## III.   THE TERMS OF THE SETTLEMENT AGREEMENT

The Parties have agreed to the following settlement terms.

### A.      The Settlement Class

The Settlement Class Members include those Classes and Subclasses certified by this Court on February 1, 2021.

### B.      The Settlement Consideration

The HII Defendants will pay $27.5 million to resolve this class action.  The Settlement Administrator received $150,000 in its escrow account from the HII Defendants shortly after preliminary approval, and received the remaining $27.35 million by February 1, 2022.  (The Settlement Administrator will separately submit a Declaration supporting this and other statements below pursuant to Section VI(q) of the Settlement Agreement).

No portion of the Settlement Fund will revert to Defendants.  (*See* Settlement Agreement ("SA") § IV(m)).  Notice and Administrative Expenses will be deducted from the Settlement Fund and paid to the Settlement Administrator.  (*See id.* § VI(e)).  Attorneys' fees and expense

reimbursements as approved by the Court will be paid to Class Counsel.  (*See id.* § IV(a)). Plaintiffs seek an award of 33 1/3% of the class action settlement payment in attorneys' fees plus reimbursement of litigation expenses.  (*See id.*) [D.E. 266].  The balance, along with any interest accrued on the Settlement Fund, will be applied to pay claims of Settlement Class Members. Plaintiffs also ask this Court to reserve jurisdiction over the payment of a $6,250 Service Award to each of Plaintiffs (a total of $56,250), pending the resolution of *Johnson v. NPAS Solutions, LLC*.  (*See id.* § IV(c)).

The class release simply encompasses claims that were or could have been asserted in the case.  (*See id.* §§ I(cc), IX).  The Released Parties and Releasing Parties are comprised of (i) Defendants, (ii) Settlement Class Members who do not timely opt out of the Settlement and (iii) Class Counsel.

The Settlement also contains nonmonetary relief.  (*See id.* § III(c)).  Shortly after Defendants reached an agreement in principle to settle the Action, the HII Defendants announced that they would be almost entirely discontinuing the sale of limited benefit indemnity plans.  (HII Decl. ¶ 7).  For those plans that the HII Defendants may still market, they have agreed to make business practice changes to the extent not already implemented within the last two years.  (*See id.*).  Specifically, the HII Defendants must:

- Require agents and distributors of limited benefit indemnity and ancillary products to record and maintain all sales calls;
- Engage outside vendors to conduct secret shopper investigations for the purpose of detecting deceptive or fraudulent sales practices;
- Where the website of the HII Defendants or any of its distributors mentions limited benefit indemnity or ancillary products, require that a conspicuous disclaimer stating products are not major medical insurance and are not compliant with Affordable Care Act;
- Require the HII Defendants' compliance department to communicate directly with distributors about secret shopper reports and other compliance issues;
- Require the collection of credit card information in the verification stage or thereafter in sales calls; and

- Develop a disciplinary process for agents who mislead customers about coverage.

(SA § III(c)).

### C.    Notice and Administration

The Court appointed the Parties' suggested administrator, JND Class Action Administration, to act as Settlement Administrator.  [D.E. 265 at 4].  The Administrator established the Settlement Website at www.hiiclassaction.com.  On November 12, 2021, JND sent 213,501 Direct Notices via email and 25,334 Direct Notices via U.S. mail.  In early January 2022, JND sent 202,590 reminder notices via email.  In mid-January 2022, the Administrator sent 226,297 Supplemental Notices via U.S. mail.  This supplemental mailing occurred after the Court granted the Parties' joint motion to provide additional notice [D.E. 269], the cost of which was advanced by the HII Defendants.   Then in mid-February 2022, the Administrator sent 197,090 final remainder notices via email.  Class Counsel agreed to advance the cost of the reminder emails.

These notices drove 19,131 visits and 117,305 page views to the Settlement Website.  The Administrator received 4,731 phone calls from Settlement Class Members.  A total of 7,653 Claim Forms was received, comprised of 6,631 online claims and 1,022 paper claims.  Among the 7,653 Claim Forms, 6,291 claimed inclusion in the Medical Expense Subclass and 4,217 in the Tax Penalty Subclass.

The Settlement Administrator shall be responsible for overseeing the calculation of, and implementing the distribution of, the Net Consideration to Settlement Class Members.  (*See* SA § VI(d)).  Each Participating Settlement Class Member shall receive his or her *pro rata* share of the Settlement Fund.  (*See id.*).  The Settlement Administrator shall calculate each share according to a formula provided in the Settlement Agreement.   (*See id.*).   Participating Settlement Class Members in the Medical Expense Subclass will receive a multiplier of 1.25 times his or her base share.  Participating Settlement Class Members in the Tax Penalty Subclass shall receive a tax penalty multiplier of 1.035 times his or her base share.  These multipliers, while not an exact determination of Participating Class Members' shares, recognize the enhanced damages of

Subclass members while avoiding the considerable administrative burdens and costs of having a document-intensive, evidentiary claim process.  (Kellogg Decl. ¶¶ 12-13).

Finally, shortly after preliminary approval, the HII Defendants caused the mailing of CAFA Notices to appropriate officials pursuant to 28 U.S.C. § 1715(b).  (*See* SA § 6(f)).  No objections were received in response to the CAFA Notice.  (Decl. of Tim Lee, Esq., ¶ 4, attached as **Exhibit 1**).  Only the state of Indiana inquired about the Settlement, asking for the number of its residents involved.  (*See id.*).  The HII Defendants responded to the inquiry and have heard nothing further from Indiana.  (*See id.*).

## IV.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

The Court reviews a class action settlement for fairness, reasonableness and adequacy.  *See Fraught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011).  "There exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex."  *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (Altonaga, J.) (citations omitted).  "Thus, in reviewing a proposed settlement, as here, the Court must take into account 'the clear policy in favor of encouraging settlements, . . . particularly in an area where voluntary compliance by the parties over an extended period will contribute significantly toward ultimate achievement of statutory goals.'"  *Id.* (quoting *Patterson v. Newspaper & Mail Deliverers' Union,* 514 F.2d 767, 771 (2d Cir.1975)).

The Court "will not substitute its business judgment for that of the parties . . . ."  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011) (quoting *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006)).  Rather, the Court shall consider the question of "whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval."  *Id*.

Final approval requires the Court to evaluate a number of factors.  The December 2018 amendments to Rule 23 provide explicit new instructions, requiring notice if the court is likely to

approve the settlement and certify a settlement class. *See* Fed. R. Civ. P. 23(e)(1)(B). The amendments specify that before finally approving a settlement, the court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

*Id.* 23(e)(2).

In exercising its discretion, courts in this Circuit also continue to analyze class action settlements using the so-called *Bennett* factors. *See Ferron v. Kraft Heinz Foods Co.*, 2021 WL 2940240, at \*7-\*8 (S.D. Fla. July 13, 2021) (analyzing the Rule 23(e) and *Bennett* factors together to approve settlement). The *Bennett* factors consider (i) the likelihood of success at trial; (ii) the range of possible recovery; (iii) the range of possible recovery at which a settlement is fair, adequate and reasonable; (iv) the anticipated complexity, expense and duration of litigation; (v) the opposition to the settlement; and (vi) the stage of proceedings at which the settlement was achieved. *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.1984)).

Here, an analysis of both the new Rule 23(e)(2) factors and the *Bennett* factors shows that the proposed Settlement is fair, adequate and reasonable.

**A.      The Adequacy of Representation by Class Representatives and Class Counsel**

Rule 23(e)(2)(A) considers whether the class received adequate representation. Here, the Court already has ruled in its Certification Order that Plaintiffs are adequate class representatives, and has appointed Plaintiffs as such. [D.E. 208]. As for Class Counsel, adequacy is "presumed"

absent specific proof to the contrary. *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1309 (S.D. Fla. 2015). In its Order dated February 19, 2021, this Court previously appointed the undersigned as Class Counsel in this case. [D.E. 229]. There has been no challenge to Class Counsel's adequacy to serve as Class Counsel.

### B. Whether Negotiations Were Conducted at Arms-Length

Rule 23(e)(2)(B) looks at whether the parties negotiated an arms-length settlement. "In determining whether there was fraud or collusion, the Court examines whether the settlement was achieved in good faith through arm's-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel." *Berman v. Gen. Motors, LLC*, 2019 WL 6163798, at *4 (S.D. Fla. Nov. 18, 2019) (citations omitted).

There is no hint of collusion here. The Parties attended a full mediation in August 2020 (well after discovery had commenced) that resulted in an impasse. [D.E. 141]. After this Court entered its Certification Order, the Parties returned to mediation in March 2021 with mediator Hunter R. Hughes III. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of Mr. Hughes, a highly experienced mediator, lends further support to the absence of collusion."). Negotiations lasted nearly four months, with the HII Defendants sharing certain confidential financial information with Class Counsel that informed the nature and amount of the eventual Settlement. The HII Defendants warrant in the Settlement Agreement that the information they provided to Class Counsel was true and correct, and acknowledge that the information was essential and material to Plaintiffs' decision to enter into the Settlement. (SA § XIII(a)).

Furthermore, no portion of the settlement will revert to Defendants. (*See id.* § VI (m)). And although Defendants agree not to oppose Class Counsel's request for an attorneys' fee award of up to 33 1/3%, Settlement is not contingent upon any particular award to Class Counsel. (*See id.* § VI(d-f)).

12

Relatedly, the sixth *Bennett* factor looks at the stage of litigation at which the parties reached settlement. By the time the Parties reached settlement here, they had been litigating heavily for nearly two years, had conducted significant discovery, briefed numerous motions relating to potentially dispositive legal issues and hired experts in the fields of insurance and consumer marketing to analyze their claims and defenses. The Parties were well-positioned to evaluate the benefits of the Agreement and consider the expense, risks and uncertainty of continued and likely protracted litigation.

### C.      The Adequacy of Relief Provided by the Settlement

Rule 23(e)(2)(C) looks at whether the relief provided in the settlement is adequate, taking into account: (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of distributing relief and processing claims; (iii) the terms of any attorney's fees award, including timing of payment; and (iv) any agreements made in connection with the proposed settlement. Relatedly, the first through fifth *Bennett* factors analyze the likelihood of success at trial; the range of possible recovery; the range of possible recovery at which a settlement is fair, adequate and reasonable; the anticipated complexity, expense and duration of litigation; and any opposition to the settlement. *See Saccoccio*, 297 F.R.D. at 691.

Addressing the *Bennett* factors first, in determining whether the Settlement is adequate and fair in comparison to the potential range of recovery, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Berman*, 2019 WL 6163798, at *5 (quoting *Lipuma*, 406 F. Supp. 2d at 1323). "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Ferron*, 2021 WL 2940240, at *7-8 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988)). "A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.*

Here, the potential damages that Class Members could be awarded at trial are immense.

The fees and premiums paid by Class Members amount to hundreds of millions of dollars, and a successful RICO verdict would treble that number.  In addition, Medical Expense Subclass and Tax Penalty Subclass members incurred millions more in expenses.  Given the potential size of Plaintiffs' claims and Defendants' current financial positions, the possibility that class members collect on a victorious Final Judgment against solvent HII Defendants, or even collect $27.5 million, is remote.

The analysis therefore focuses on whether Plaintiffs and Class Counsel achieved an adequate settlement given the financial realities of this case.  To determine the parameters of that financial reality, Class Counsel obtained Defendants' insurance policies and hired an insurance expert to analyze their applicability to the claims brought by Plaintiffs, and the potential for coverage.  None of the Settlement Consideration to be paid by the HII Defendants comes from insurance proceeds.  The HII Defendants' relevant liability insurance companies have contested insurance coverage for this litigation and have only paid $100,000 for defense litigation costs previously incurred.  Class Counsel also requested during settlement negotiations, and the HII Defendants provided and warranted the accuracy of, confidential information relating to the HII Defendants' financial condition.  Class Counsel confirmed that no "reserve funds" exist to pay this Settlement arising out of the HII Defendants' private sale in August 2020.  Relying upon this information, Plaintiffs and Class Counsel reached a $27.5 million settlement.  To pay that amount, the HII Defendants represented that they had to seek, and did receive, third-party financing.

The Settlement's nonmonetary benefits also factor in.  Shortly after the HII Defendants reached an agreement in principle to settle the Action, the HII Defendants announced that they would be almost entirely discontinuing the sale of limited benefit indemnity plans and ancillary products.  For those plans that the HII Defendants may continue to sell, they have agreed to a host of business practice changes.

In determining whether a settlement is adequate, the Court may rely at least somewhat upon the judgment of experienced counsel.  *See, e.g., Nelson v. Mead Johnson & Johnson Co.*,

484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel."). Here, Class Counsel have significant experience in class action and complex fraud litigation, and believe that under these circumstances, the multimillion-dollar relief provided by the Settlement is fair, reasonable and adequate under the circumstances. (Kellogg Decl. ¶ 15; Doss Decl. ¶ 15).

Regarding the fifth *Bennett* factor, Plaintiffs emphasize that of the hundreds of thousands of Settlement Class Members who received notice, none has objected to the Settlement.

### i.       The Risks, Costs and Delay of Continued Litigation

The Settlement also finds support from the four factors enumerated in new Rule 23(e)(C). Under Rule 23(e)(2)(C)(i), which examines the risks, costs and delay of continued litigation, the Court must "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Berman*, 2019 WL 6163798, at *6 (quoting *Lipuma*, 406 F. Supp. 2d at 1323). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigations." *Id.* (quoting *Behrens*, 118 F.R.D. at 543).

Here, the potential costs and delay of continued litigation in this case are substantial. The Settlement will bring to conclusion a complex class action lawsuit pending for nearly three years. It will also bring to conclusion Defendants' Rule 23(f) appeal pending before the Eleventh Circuit. But for the Settlement, the Parties will continue to incur significant additional legal fees and expenses related to further discovery, motion practice and potentially trial. Any trial of this matter would not likely occur in the near future (and possibly not in person given the ongoing COVID issues), and any appeals would likely delay a final resolution by an additional year. A trial and final resolution would likely take years, delaying any benefit to the Class by years as well. Moreover, the risk for Plaintiffs and Class Members includes the potential that after a trial and possibly an appeal, any judgment against Defendants would be uncollectible.

Relatedly, the first *Bennett* factor examines the likelihood of success at trial. Here,

Plaintiffs have successfully navigated through multiple motions to dismiss and achieved class certification.  But Defendants have appealed class certification and have the ability to move to decertify the Class at any time before trial should new factual or legal arguments emerge. Defendants also possess defenses that they may assert at trial or via summary judgment, including but not limited to defenses based on the McCarran-Ferguson Act, evidentiary challenges and causation.  Given these circumstances and the fact that a trial victory is rarely a given for any party, the risks attendant to continued litigation supports a settlement now.

Plaintiffs and Class Counsel also have considered the fact that Defendants continue to deny that they violated RICO or aided and abetted Simple Health and/or Nationwide Health, or that this case is susceptible to class treatment.  Defendants have shown the willingness and ability to defend the lawsuit through trial and possibly appeal.  Yet Defendants have concluded that it is desirable to settle the claims to avoid the costs, disruption and distraction of further litigation.

### ii.       The Effectiveness of Distributing Relief to the Class

Rule 23(e)(2)(C)(ii) examines the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  Of the Participating Class Members, 6,291 joined the Medical Expense Subclass and 4,217 joined the Tax Penalty Subclass.  The Settlement Administrator will calculate each Participating Class Member's pro rata share of the Settlement Fund as provided in Section VI(d) of the Settlement Agreement, assigning each Participating Class Member his or her pro rata share of the Net Consideration.  Medical Expense Subclass members will receive a 25% multiplier on their *pro rata* distribution, with Tax Penalty Subclass members receiving a 3.5% multiplier.  When the numbers are calculated, the Settlement Administrator will send checks to Participating Class Members for their respective shares of the Distribution.

### iii.      The Reasonable Terms Relating to Attorneys' Fees

Rule 23(e)(2)(C)(iii) looks at "the terms of any proposed award of attorney's fees, including timing of payment."  Here, Class Counsel have requested 33 1/3% of the net Settlement Amount

of $27.5 million.  [D.E. 266].  That request is consistent with *Camden I Condominium Association, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), which mandates use of the percentage method. Following *Camden I*, fee awards in the Eleventh Circuit have averaged around one-third.  *See Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide — roughly one-third"); *see also George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1382 (N.D. Ga. 2019) (discussing the normality of 33% contingency fees); Eisenberg, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. LAW REV. 937, 951 (2017) (empirical study showing the median award in Eleventh Circuit is 33%).  Given the diligence and experience of Class Counsel, which investigated and developed the claims, the complexity of the issues involved, the substantial amount of time dedicated to the Action and Settlement and the financial risk associated with the representation, a fee of 33 1/3% is reasonable here.

As to the timing of payment to the attorneys, the Settlement Agreement calls for payment within seven days of a Final Approval Order and Judgment of this Court.  (*See* SA §IV(b)).  Class Counsel agrees that to the extent its fees or costs are reduced, vacated or reversed, or should this Settlement be terminated or cancelled for any reason, it will return the funds to the Escrow Agent within 15 days.  (*See id.*).

### iv.    Whether There Are Side Agreements

The Parties represent that they have made no agreements in connection with the proposed settlement.  (Kellogg Decl. ¶ 14; HII Decl. ¶ 8).

### D.    The Equitable Treatment of Class Members Relative to Each Other

Finally, Rule 23(e)(2)(D) analyzes whether the Settlement Agreement treats all members of the Settlement Class equally.  Here, the Settlement Agreement treats all members of the Settlement Class equally as each received the opportunity to submit a Claim Form and be paid a *pro rata* amount based on the amount of unrefunded or unforgiven fees and premiums they paid. Also, members of the Medical Expense Subclass and Tax Penalty Subclass had the opportunity to

affirm under penalty of perjury that they incurred uncovered medical expenses and/or tax penalties during the Class Period.  Each Subclass member will receive a reasonable multiplier of their share on the basis that they incurred damages beyond the payment of fees and premiums.  Especially given the limited Settlement Fund here, this method of approximating Subclass damages is preferable to the time and expense of a full claims-made procedure complete with the submission of medical records and tax returns, and the review and verification of medical expenses and tax penalties by paid experts.

Nor do the scope of the Settlement Agreement's release provisions operate in an inequitable manner.  *See Burrow v. Forjas Taurus, S.A.*, 2019 WL 4247284, at \*10 (S.D. Fla. Sept. 6, 2019) (citing Fed. R. Civ. P. 23(e)(2)(D), 2018 committee notes (Rule instructs courts to evaluate whether "the scope of the release may affect class members in different ways")).  Here, the release applies equally to all Settlement Class Members.  (*See* SA I(cc)).  And the release is narrowly tailored to the claims that were advanced or could have been advanced in this lawsuit.  And it specifically does not impact any claims held by the Simple Health Receiver, or any claims relating to the Telephone Consumer Protection Act.  (*See id.*).

## V.  SETTLEMENT CLASS MEMBERS RECEIVED ADEQUATE NOTICE AND AN OPPORTUNITY TO BE HEARD

For a court to exercise jurisdiction over the claims of absent class members, those class members must have received "'the best practicable' notice which was 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1341 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985)).

Here, this Court approved the Class Notice in the preliminary approval stage.  That Class Notice was fashioned after the Federal Judicial Center models and fully apprised Settlement Class Members of the existence of the lawsuit and the claims asserted, the proposed Settlement Agreement and the information they needed to make informed decisions about their rights.  The Court also approved a Supplemental Notice proposed jointly by the parties that was sent by U.S.

mail.  Two additional email reminder notices were also sent.  The notices generated tens of thousands of Settlement Website page views and thousands of phone calls to the Settlement Administrator's hotline.  Ultimately, Settlement Class Members submitted 7,653 claim forms.

This claims submission rate represents 3.3% of all Settlement Class Members, which is within the reasonable claims rate for a suit with large numbers of class members.  *See, e.g.*, *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029, 2017 WL 9472860, at *3 (S.D. Fla. Nov. 20, 2017) (Middlebrooks, J.) (approving class settlement where 2% of 374,399-person settlement class submitted claim forms); *see also Poertner v. Gillette Co.*, 618 Fed. Appx. 625, 625-26 (11th Cir. 2015) (affirming class settlement where 0.017% of 7.26 million settlement class members submitted claims); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 941 (9th Cir. 2015) (affirming class settlement where 0.33% of 35 million class members submitted claims); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (Seitz, J.) (approving class settlement where 1.1% of 10 million class members returned claim forms); *Saccochio*, 297 F.R.D. at 696 (approving settlement of more than 700,000 class members and stating "this Court notes that courts in this district have approved claims-made settlements where the participation rate was very low."); *Ebarle v. Lifelock, Inc.*, 2016 WL 5076203, at *6 (N.D. Cal. Sept. 20, 2016) (2.5% of 6.5 million class members) *LaGarde v. Support.com, Inc.*, 2013 WL 1283325, at *2 (N.D. Cal. March 26, 2013) (0.17% of 759,000 class members); *In re Apple IPhone 4 Prods. Lia. Litig.*, 2012 WL 3283432, at *1 (N.D. Cal. Aug. 10, 2012) (less than 0.28% of 15.7 million class members).

## VI.   THE COURT SHOULD AWARD ATTORNEY'S FEES AND COSTS TO CLASS COUNSEL

As stated in detail in Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Service Awards [D.E. 266], Plaintiffs seek an attorneys' fee award of 33.33% of the $27.5 million Settlement, and reimbursement of $189,730.63 in expenses. On November 15, 2021, this Court specifically referred Plaintiffs' Unopposed Motion for Award of Attorneys' Fees and Reimbursement of Expenses and Services Awards to the Magistrate Judge.

[D.E. 267].  Based on Plaintiffs' analysis of the *Camden I* factors contained in their fees motion, Plaintiffs ask this Court to include in its Final Approval Order the requested fees and expenses.

## VII.    THE COURT SHOULD RETAIN JURSIDICTION REGARDING SERVICE AWARDS TO PLAINTIFFS

Plaintiffs seek a total of $56,250 (or $6,250 apiece) in Service Awards.  [D.E. 266 (SA § IV(c)].  A panel of the U.S. Court of Appeals for the Eleventh Circuit entered an order last year that forbids Service Awards for lead plaintiffs in class settlements in this Circuit.  *See Johnson v. NPAS Solutions, LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020).  A petition for rehearing *en banc* has been filed, and the Eleventh Circuit clerk of court has entered an order indicating that a judge of the Eleventh Circuit has withheld the issuance of the mandate for the panel's opinion.  *See Dickenson v. NPAS Solutions, LLC*, 18-12344 (11th Cir. Nov. 9, 2020).

Plaintiffs ask this Court to reserve jurisdiction over the issue should the Eleventh Circuit reverse, abrogate or recede from the *Johnson* opinion's prohibition on Service Awards.  (SA § IV(c)).  Plaintiffs further ask that the $56,250 in potential Service Awards be held in escrow by the Settlement Administrator pending the resolution of the *Johnson* appeal, to be distributed to Participating Settlement Class Members if the panel's holding is upheld.

## VIII.   CONCLUSION

In sum, Plaintiffs ask this Court to enter the proposed Final Approval Order attached as **Exhibit 2**, grant final approval of the Settlement of this Action and dismiss the Action with prejudice, as well as any other or further relief the Court deems necessary or proper.

CASE NO. 0:19-cv-61430-SINGHAL/Valle

Dated: March 1, 2022.                      Respectfully submitted,

**LEVINE KELLOGG LEHMAN**          **THE DOSS FIRM, LLC**
**SCHNEIDER + GROSSMAN LLP**

By: /s/Jason Kellogg                       By: /s/Jason Doss
    Jeffrey C. Schneider, P.A.             Jason R. Doss
    Florida Bar No. 933244                 Florida Bar No. 0569496
    Primary email: jcs@lklsg.com           Primary email: jasondoss@dossfirm.com
    Secondary email: gb@lklsg.com          The Brumby Building
    Lawrence A. Kellogg, P.A.              127 Church Street, Suite 220
    Florida Bar No. 328601                 Marietta, Georgia 30060
    Primary email: lak@lklsg.com           Telephone: (770) 578-1314
    Secondary email: gb@lklsg.com          Facsimile: (770) 578-1302
    Jason K. Kellogg, P.A.
    Florida Bar No. 0578401
    Primary email: jk@lklsg.com
    Secondary email: gb@lklsg.com
    Victoria J. Wilson, Esq.
    Florida Bar. No. 92157
    Email: vjw@lklsg.com
    Secondary email: jhd@lklsg.com
    201 South Biscayne Boulevard
    Citigroup Center, 22nd Floor
    Miami, Florida  33131
    Telephone: (305) 403-8788
    Facsimile: (305) 403-8789

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that on March 1, 2022, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Jason Kellogg*
Jason K. Kellogg, P.A.