UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 19-CV-61430-SINGHAL/VALLE

ELIZABETH E. BELIN,
*et al.*,

    Plaintiffs,

v.

HEALTH INSURANCE
INNOVATIONS, INC., *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards (ECF No. 266) (the "Motion"). United States District Judge Raag Singhal has referred the Motion to the undersigned for disposition. (ECF No. 267).

Having reviewed the Motion, the record in this case, and being otherwise duly advised in the matter, the undersigned recommends that the Motion be **GRANTED**. Class counsel should be awarded $9,165,750 in fees (constituting 33.33% of the $27.5 million Class Payment)[1] and $198,044.76 in expenses incurred in connection with the litigation through March 10, 2022.[2] The District Court should also reserve jurisdiction to award service awards to lead Plaintiffs pending the Eleventh Circuit mandate in *Johnson v. NPAS Sols.,* No. 18-12344 (11th Cir. Nov. 9, 2020)

---

[1] Unless otherwise noted herein, all capitalized terms shall have the same meaning as in the Parties' Settlement Agreement (ECF No. 264-1).

[2] The award of expenses is based on the Notice of Filing Supplemental Declarations in Support of Expenses Incurred by Class Counsel, which includes additional costs not in the initial Motion. *Compare* (ECF No. 266) *with* (ECF No. 273).

(withholding issuance of the panel's decision in *Johnson v. NPAS Sols.*, *LLC,* 975 F.3d 1244 (11th Cir. 2020)).

## I.     BACKGROUND

The background and procedural history of this case have been summarized in the Court's prior Orders, which are incorporated by reference. *See, e.g.*, (ECF No. 208) (Order on Motion for Class Certification); (ECF No. 265) (Order Preliminarily Approving Settlement and Providing for Notice); *see also* (ECF No. 264) (Plaintiffs' Motion for Preliminary Approval of Settlement Agreement, Confirmation of Class, Approval of Class Notice and Scheduling of Fairness Hearing); (ECF No. 270) (Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and for Award of Attorneys' Fees and Reimbursement of Expenses ("Plaintiffs' Motion for Final Approval of Settlement Agreement")).  In summary, nine lead Plaintiffs brought this action against Defendants Health Insurance Innovations, Inc. and Health Plan Intermediaries Holdings, LLC (the "corporate Defendants"), alleging that Defendants' fraudulent scheme caused Plaintiffs and other consumers to purchase Defendants' products believing that they were purchasing major medical insurance when, in fact, Plaintiffs purchased limited benefit indemnity plans and medical discount plans that, at best, defrayed a fraction of out-of-pocket medical costs.[3]  *See generally* (ECF No. 1); *see also* (ECF No. 208 at 1).

The case proceeded through extensive litigation for more than two years.  In February 2021, the District Court granted Plaintiffs' Motion for Class Certification under Federal Rule of Civil Procedure 23.  *See generally* (ECF No. 208).  Thereafter, in September 2021, the District Court preliminarily approved a $27.5 million settlement to resolve the class action.  *See generally* (ECF No. 265).  Plaintiffs now seek final approval of the proposed class action settlement, which

---

[3] In July 2019, Plaintiffs amended their Complaint to add individual Defendant Michael Kosloske (together with the corporate Defendants, "Defendants").  *See* (ECF No. 18).

2

is pending before the District Judge. *See generally* (ECF No. 270). As part of the class settlement and through the instant Motion, Plaintiffs seek an award of attorneys' fees, reimbursement of costs, and approval of service awards for the lead Plaintiffs. Plaintiffs also assert that Defendants do not oppose the Motion and "not a single one of the more than 230,000 Settlement Class Members has objected to the Settlement." (ECF Nos. 266 at 21, 270 at 2).

## II. LEGAL STANDARD

Under the "American Rule," all parties are to bear their own costs in litigation. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). One of the recognized exceptions to the American Rule, however, is the "common fund" exception. *Camden I*, 946 F.2d at 771. Thus, attorneys in a class action (in which a common fund is created for the benefit of the class members) are entitled to compensation for their services from that fund in an amount subject to court approval. *Id.*; *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (noting that where counsel's efforts have created a "common fund" for the benefit of a class, counsel should be compensated from that fund). Such compensation ensures those who benefit are not "unjustly enriched." *Boeing*, 444 U.S. at 478.

In the Eleventh Circuit, "attorneys' fees awarded from a common fund must be based upon a reasonable percentage of the fund established for the benefit of the class." *See Camden I*, 946 F.2d at 774; *Gevaerts v. TD Bank*, No. 14-CV-20744, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) ("[C]lass counsel is awarded a percentage of the fund generated through a class action settlement."). "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden I*, 946 F.2d at 774; *see also, e.g., Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (1999) (discussing district courts' discretion to fix fee awards based on "individual circumstances of each case"). Indeed, District Courts have substantial discretion in

3

determining the appropriate percentage to be awarded to counsel as fees. *See Gevaerts*, 2015 WL 6751061, at *10.

In exercising that discretion, *Camden I* directs courts to initially consider 12 nonexclusive factors to evaluate the reasonableness of the percentage award to class counsel for fees, including: (i) the time and labor required; (ii) the novelty and difficulty of the questions involved; (iii) the skill required to perform the legal service properly; (iv) the preclusion of other employment by the attorney due to acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) time limitations imposed by the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and the length of the professional relationship with the client; and (xii) awards in similar cases. 946 F.2d at 772 n.3, 775 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).[4]

Additionally, other pertinent factors are: (xiii) the time required to reach a settlement; (xiv) whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel; (xv) any non-monetary benefits conferred upon the class by the settlement; and (xvi) the economics involved in prosecuting a class action.[5] *Camden I*, 946 F.2d at 775. The Eleventh Circuit also encourages district courts to consider any other factors unique to the case. *Id.* Importantly, "monetary results achieved predominate over all other criteria." *Id.* at 774.

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit issued prior to the close of business on September 30, 1981.

[5] *Camden I* discussed the 12 nonexclusive *Johnson* factors and these four additional factors. *Camden I*, 946 F.2d at 775. For ease of reference, the undersigned has renumbered the factors consecutively.

As well, "[t]he Eleventh Circuit made clear in *Camden I* that [a] percentage of the fund is the exclusive method for awarding fees in common fund class actions." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011). Thus, "courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all." *Id.* at 1363; *see, e.g., In re Takata Airbag Prods. Liability Litig.*, No. 15-CV-02599, 2017 WL 5706147, at *4-5 (S.D. Fla. Nov. 1, 2017); *Reyes v. AT&T Mobility Servs., LLC*, No. 10-CV-20837, 2013 WL 12219252, at *6 (S.D. Fla. Jun. 21, 2013). Courts often apply the percentage method and *Camden I* factors resulting in fee awards totaling one-third or more of the common fund recovered for the class. *See, e.g., Wolff v. Cash 4 Titles*, No. 03-CV-22778, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third"); *Waters*, 190 F.3d at 1298 (affirming class action fee award of 33 1/3 % of the settlement fund); *Hanley v. Tampa Bay Sports & Ent. LLC*, No. 19-CV-00550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (awarding a "slight increase from the one-third benchmark"); *Pritchard v. APYX Med. Corp.*, No. 19-CV-00919-0SCB-AEP, 2020 WL 6937821, at *1 (M.D. Fla. Nov. 18, 2020) (awarding 33 1/3%); *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1382 (N.D. Ga. 2019) (discussing that 33% contingency fees are common); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 15-CV-22782, 2017 WL 7798110, at *4 (S.D. Fla. Dec. 18, 2017) (awarding 35%); *Swift v. BancorpSouth Bank*, No. 10-CV-00090-GRJ, 2016 WL 11529613, at *19 (N.D. Fla. July 15, 2016) (awarding 35%); *Reyes*, 2013 WL 12219252, at *3 (awarding "one-third of the total maximum settlement fund"); *see also* Eisenberg, *Attorneys' Fees in Class Actions*: 2009-2013, 92 N.Y.U. L. REV. 937, 951 (2017) (empirical study showing the median award in Eleventh Circuit is 33%).

### III. DISCUSSION

#### A. The Fee Award to Class Counsel is Proper and Reasonable

The fundamental issue presented in the Motion is whether, under the *Camden I* factors discussed above, Class Counsel is entitled to recover the fees and costs proposed in the Motion. For the reasons set forth below and under the circumstances of this case, the undersigned finds that an award of fees is appropriate.

*1. Time and Labor Required (Factor 1)*

A review of the record and the declarations submitted in support of the Motion confirms that Class Counsel has actively litigated this case for more than two years. During this time, Counsel spent thousands of hours working without compensation and advanced nearly $200,000 in out-of-pocket expenses. (ECF No. 266-2) (Nov. 2021 Kellogg Decl. ¶¶ 6-7); (ECF No. 266-3) (Nov. 2021 Doss Decl. ¶¶ 6-7); *see also* (ECF No. 266-1) (Scherer Decl. ¶ 31); (ECF No. 273). Moreover, even before filing suit, Class Counsel conducted a months-long investigation of publicly available information regarding Plaintiffs' losses, and spent considerable time learning about the Affordable Care Act and the limited indemnity benefit products at issue in this case. (ECF No. 266 at 11); *see also* (ECF No. 264-3) (Sept. 2021 Kellogg Decl. ¶¶ 4, 10, 12). Class Counsel also conducted extensive research into the viability of potential claims, including the complexities of RICO claims. (ECF No. 266 at 11); *see also Swift*, 2016 WL 11529613, at *16 (awarding fees where counsel had devoted substantial time to investigatimg the claims of potential plaintiffs against defendants). Thus, Class Counsel was able to craft claims that, after substantial challenges, survived four dismissal attempts by Defendants. (ECF No. 266 at 11).

During the litigation, Class Counsel participated in extensive discovery, including 12 requests for production, four sets of interrogatories, 15 third-party subpoenas, nine motions to compel, 16 depositions, and review of more than 98,000 documents. (ECF No. 266 at 5-6); *see*

6

*also* (Sept. 2021 Kellogg Decl. ¶ 5). Class Counsel also engaged in extensive briefing at the pleading and class certification stages. *See* (ECF No. 32) (Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss Amended Class Action Complaint and to Strike); (ECF No. 76) (Plaintiffs' Omnibus Response in Opposition to Defendants' Motions to Dismiss Class Action Complaint); (ECF No. 168) (Plaintiffs' Motion for Class Certification); (ECF No. 182) (Plaintiffs' Response in Opposition to Defendants' Motion to Deny Class Certification); (ECF No. 194) (Plaintiffs' Reply in Support of Class Certification). Moreover, Plaintiffs deposed the corporate Defendants over four days and Defendants' expert witnesses, and the parties attended mediations in August 2020 and in March 2021. (ECF No. 266 at 6, 7); *see also* (Sept. 2021 Kellogg Decl. ¶¶ 5, 7). Class Counsel devoted substantial time and resources to settlement discussions and evaluating Defendants' financial status and lack of insurance coverage, issues that are discussed further below. (ECF No. 266 at 7); *see also Swift*, 2016 WL 11529613, at *16 (awarding fees where counsel had expended substantial time in settlement negotiations, including preparing for and attending two medication conferences over the year of litigation). Accordingly, this factor weighs in favor of awarding Class Counsel the fees requested.

    *2. The Novelty and Difficulty of the Questions Involved (Factor 2)*

The Court next considers the novelty and difficulty of the questions involved. *Camden I*, 946 F.2d at 722. On this factor, the legal and practical challenges that Class Counsel surmounted also support a fee award. First, Plaintiffs' claims survived multiple motions to dismiss. *See* (ECF Nos. 27, 39, 47, 68, 69, 133). Moreover, class certification was not guaranteed, as the class claims depended on a showing of reliance and causation. (Scherer Decl. ¶ 28). Nonetheless, Class Counsel succeeded in showing with specificity the uniform actions by Defendants that made class

certification appropriate.[6]  (Scherer Decl. ¶ 28); *see also* (ECF No. 208) (Order granting class certification after overruling Defendants' numerous and vigorous objections).

Beyond class certification, Class Counsel also faced difficulties in proving that Defendants—and not Simple Health, Nationwide Health, or other nonparties—should be held responsible for the class' damages.  (Scherer Decl. ¶ 28).  Thus, recovery was uncertain because, even if Class Counsel could prove Plaintiffs' claims, a jury could nonetheless find that Defendants should not be liable for all or some of the damages.  *Id.*

Finally, Class Counsel faced significant collectability issues because insurance did not cover the class claims, and Defendants' financial situation exacerbated the threat of bankruptcy and nonrecovery on the class claims.  *Id*.  Accordingly, this factor weighs in favor of awarding Class Counsel the fees requested.

> *3. Counsel's Skills, Experience, Reputation, and Relationship with Plaintiffs (Factors 3, 9, and 11)*

The record confirms that counsel Levine Kellogg Lehman Schneider + Grossman LLP and The Doss Firm, LLC have significant experience in class action and complex litigation and are well-respected litigators.  (Sept. 2021 Kellogg Decl. ¶ 16; Sept. 2021 Doss Decl. ¶ 16) (listing numerous class action cases litigated by counsel); *see also* (Scherer Decl. ¶ 32).  As noted above, this case presented difficult legal and practical challenges, and the Settlement was hard fought. Class Counsel are both boutique firms with less than 20 attorneys combined, so the risk and effect of this case was significant.  *Id.*  Class Counsel also faced formidable opposition from a 200-plus law firm of Greenspoor Marder, and a 1,100-plus law firm of King & Spading.  (ECF No. 266 at 16).

---

[6] To date, the class certification Order remains subject to Defendants' petition for review to the Eleventh Circuit, which has been stayed pending final approval of the Settlement Agreement. *See Health Insurance Innovations Inc. v. Belin*, No. 21-90009 (11th Cir. June 3, 2021).

Despite these challenges and although Class Counsel had not met Plaintiffs before this litigation, Class Counsel developed a meaningful working relationship with Plaintiffs, which facilitated the investigation, pleadings, discovery, and settlement discussions. *Id.* For these reasons, courts have recognized the importance of providing incentives to experienced counsel to tackle complex litigation cases on a contingent fee basis so those cases can be prosecuted both efficiently and effectively. *See, e.g., Wolff*, 2012 WL 5290155, at *5 (citations omitted) (concluding that class counsel should be compensated in a manner that will encourage other competent attorneys to undertake complex fraud actions and vigorously enforce the RICO laws), *report and recommendation adopted*, 2012 WL 5289628 (S.D. Fla. Oct. 25, 2012). Accordingly, these factors weigh in favor of awarding Class Counsel the fees requested.

*4. Preclusion of Other Employment and Time Limitations Imposed (Factors 4 and 7)*

The Court next considers Class Counsel's preclusion of other employment resulting from involvement in this case and the time limits imposed by the client or circumstances. *Camden I*, 946 F.2d at 772 n.3. As noted above, Class Counsel devoted thousands of hours and hundreds of thousands of dollars in out-of-pocket expenses in pursuit of Plaintiffs' claims. Given the relatively small size of Class Counsel's law firms (less than 20 attorneys combined), a case of this magnitude limited their ability to pursue other matters with guaranteed compensation from clients, as well as other contingency fee matters. (ECF No. 266 at 17). Nevertheless, Class Counsel consistently complied with scheduling deadlines and expeditiously prosecuted this case during more than two years of litigation, which at times required that several attorneys give their complete attention to this case. *Id.* Accordingly, these factors weigh in favor of awarding Class Counsel the fees requested.

> 5. *Contingency Fees, Undesirability of the Case, and Economics of Prosecuting a Class Action (Factors 6, 10, and 16)*

The undersigned next considers: (i) whether Counsel's fee for the case was fixed or contingent; (ii) the undesirability of the case; and (iii) the economics involved in prosecuting a class action. *Camden I*, 946 F.2d at 772 n.3, 775. First, undertaking a case on a pure contingency fee basis is risky and often justifies an increase in the award of attorney's fees. *Cabot E. Broward 2 LLC v. Cabot*, No. 16-CV-61218, 2018 WL 5905415, at *4 (S.D. Fla. Nov. 9, 2018) (citing *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364). Indeed, other Judges in this District have "recognized that the undertaking of such risk alone can support a fee award of over 30% of the settlement fund." *Cabot,* 2018 WL 5905415, at *4 (citation and quotations omitted). Here, Class Counsel brought this action on a pure contingency fee basis and, to date, have not received any compensation for their years' long efforts. (Sept. 2021 Kellog Decl. ¶ 4). As noted above, the attorneys and paralegals in this case have devoted thousands of hours, and counsel has incurred hundreds of thousands of dollars in expenses. (Nov. 2021 Kellog Decl. ¶¶ 6, 7; Nov. 2021 Doss Decl. ¶¶ 6, 7). The case presented legal and factual obstacles to class recovery, including a lack of insurance to cover Plaintiffs' damages and the possibility that the class would have little or no recovery at all. (ECF No. 266 at 14). Indeed, Mr. Scherer considers Class Counsel to have taken "a serious gamble by bringing this case" and would "not have taken this case on a contingency fee basis because of the[] risks." (Scherer Decl. ¶¶ 28, 29). The record also confirms that, in contrast to other cases, Class Counsel successfully prosecuted the claims against Defendants where other cases have not progressed. *See, e.g., Parker v. Health Ins. Innovations, Inc.*, No. 19-CV-22316-KMW (S.D. Fla. Aug. 6, 2019) (a similar case contemporaneously filed in June 2019 by other plaintiffs and different counsel, but voluntary dismissed approximately two months later); *Griffin v. Benefytt Techs., Inc.*, 20-CV-62371-AHS (S.D. Fla. May 5, 2020) (a subsequent case brought against the corporate Defendants after nearly a year of Class Counsel

10

litigating the instant case). Accordingly, these factors also weigh in favor of awarding Class Counsel the fees requested.

> 6. *Amount Involved, Results Obtained, and Time Required to Reach a Settlement (Factors 8 and 13)*

The Court next considers the amount involved and the results obtained, including the time required to reach a settlement. *See Camden I*, 946 F.2d at 772 n.3, 775. According to the Settlement Agreement, the corporate Defendants must pay $27.5 million for the benefit of the Class, plus up to $150,000 in initial notice and administration costs. *See* Settlement Agreement §§ I(f), III(a)). According to Plaintiffs' request for final approval of the Settlement Agreement, there are more than 230,000 Settlement Class Members. (ECF No. 270 at 2). After calculating each Participating Class Members *pro rata* share of the Settlement Fund, Medical Expense Subclass members will receive a 25% multiplier on their *pro rata* distribution, with Tax Penalty Subclass members receiving a 3.5% multiplier. *Id*. Plaintiffs assert that, given the size of the settlement amount compared to the number of claimants, the concept of a multiplier is preferable to a lengthy and more expensive claims process. *Id.* at 3. Thus, although the Settlement Agreement may not provide a full recovery to the Class, it is still a significant achievement, which took more than two years of extensive litigation. *See., e.g., Thorpe v. Walter Inv. Mgmt. Corp.*, No. 14-CV-20880, 2016 WL 10518902, at *10 (S.D. Fla. Oct. 17, 2016) (awarding a 33.33% fee to class counsel and describing as "excellent" and an "outstanding result" a recovery of 5.5% of the class' maximum damages and 10% of the class' most likely damages). Lastly, the court-appointed FTC receiver in the enforcement action also supports the settlement. (ECF No. 264-2) (Sept. 2021 Goldberg Decl. ¶ 6); *see also* (Scherrer Decl. ¶18). Accordingly, these factors also weigh in favor of awarding Class Counsel the fees requested.

> 7. *Nonmonetary Benefits to Class and Lack of Objections to the Fees Requested (Factors 14 and 15)*

The Court next considers that the Settlement Agreement in this case also provides nonmonetary relief aimed at protecting consumers from future harm. *See generally* (ECF No. 270). According to Plaintiffs' request for final approval of the Settlement Agreement, the corporate Defendants discontinued the sale of the limited indemnity plans through all but one distributor. *Id.* at 3. Moreover, for the remaining plans, the corporate Defendants agreed to change their business practice and/or maintain changes implemented within the last two years (while this action was pending), including requiring agents and distributors of those plans to record and maintain all sales calls. *Id.*

Additionally, in seeking final approval of the Settlement Agreement, Plaintiffs assert that "not a single one of the more than 230,000 Settlement Class Members has objected to the Settlement." *Id.* at 2. Accordingly, these factors also weigh in favor of awarding Class Counsel the fees requested.

> 8. *Customary Fee and Awards in Similar Cases (Factors 5 and 12)*

Class Counsel seeks 33.33% of the Settlement Award ($9,165,750). (ECF No. 266 at 1, 3). Other courts in this District have noted that a "one-third recovery . . . is a customary fee" for class actions. *Diakos v. HSS Sys., LLC*, No. 14-CV-61784-SCOLA, 2016 WL 3702698, at *6 (S.D. Fla. Feb. 4, 2016). Indeed, courts in this Circuit often grant fee awards of one-third or more of the class settlement fund. *See, e.g., Swift*, 2016 WL 11529613, at *19 (awarding 35%); *Owens*, No. 14-CV-00074 (N.D. Ga. Nov. 19, 2019) (awarding 33.33%); *Cabot E. Broward 2 LLC*, 2018 WL 5905415, at *11 (same); *Dear v. Q Club Hotel, LLC*, No. 15-CV-60474, 2018 WL 1830793, at *5 (S.D. Fla. Mar. 14, 2018), *report and recommendation adopted*, 2018 WL 1813565 (S.D. Fla. Apr. 5, 2018) (same); *Fernandez*, 2017 WL 7798110, at *4 (awarding 35%); *Wolff*, 2012 WL 5290155, at *7 (awarding 33%); *Hanley*, 2020 WL 2517766, at *6 ("slight increase from the one-

third benchmark"); *Pritchard*, 2020 WL 6937821, at *1 (awarding 33 1/3%); *Reyes*, 2013 WL 12219252, at *3 ("one-third of the total maximum settlement fund"); *see also* (ECF No. 266 at 17-18) (compiling additional cases with similar fee awards dating back to 2003). Accordingly, these factors also weigh in favor of awarding Class Counsel the fees requested.

In sum, the undersigned recommends that Class Counsel be awarded $9,165,750 in fees (constituting 33.33% of the $27.5 million Class Payment).

### B. Class Counsel Should be Awarded Costs

The Court next considers whether Class Counsel should be reimbursed for the litigation expenses incurred in prosecuting this case. (ECF No. 266 at 19). Class Counsel initially requested $178,872.61 in expenses. *Id*. Thereafter, in response to an Order from the Court for documentation to support the costs, Class Counsel filed a Notice of Supplemental Declarations in Support of Expenses Incurred by Class Counsel (ECF No. 273) (the "Supplemental Notice of Costs"), seeking a higher award of $198,044.76 in expenses. (ECF No. 273 at 1).

Courts routinely award reimbursement from the common fund for reasonable litigation expenses. *See, e.g., In re Checking Account Overdraft Litig.*, 2015 WL 12641970, at *18; *Gevaerts*, 2015 WL 6751061, at *14. "Indeed, courts normally grant expense requests in common fund cases as a matter of course." *Hanley*, 2020 WL 2517766, at *6. Here, the Supplemental Notice of Costs includes a breakdown of expenses incurred by Class Counsel and further explains that the increased amounts partially result from a payment to the Settlement Administrator for expenses related to notice to the class. (ECF Nos. 273 at 1 n.1, 273-2 at 2, 4). Based on a review of the itemized breakdown, the undersigned finds that the costs are reasonable. *See, e.g., Hanley*, 2020 WL 2517766, at *6 (awarding $27,452.47 in costs where plaintiffs included a "line item breakdown of actual costs incurred"); *Dear*, 2018 WL 1830793, at *5 (awarding $304,684.54 in costs supported by invoices); *Cabot E. Broward 1*, 2018 WL 5905415, at *9 (awarding

13

$1.7 million in costs supported by an itemized schedule detailing the costs); *Gevaerts*, 2015 WL 6751062, at *14 (awarding more than $300,000 in costs supported by an itemized schedule entered at ECF No. 99-4 in docket); *see also Waters*, 190 F.3d 1291 (affirming award of expenses after district court "conducted an exhaustive an detailed examination of plaintiff's counsel's claimed expenses," including requiring more specific documentation for the costs).

Accordingly, the undersigned recommends that Class Counsel be awarded $198,044.76 in costs incurred in connection with the litigation through March 10, 2022.

### C. The District Court Should Reserve Jurisdiction on the Service Awards Pending an Eleventh Circuit Mandate

Plaintiffs seek a total of $56,250 (or $6,250 individually) in Service Awards. (ECF No. 266 at 19-20). Contrary to all other Circuits, a panel of the U.S. Court of Appeals for the Eleventh Circuit entered an order in 2020 that forbids Service Awards for lead plaintiffs in class settlements in this Circuit. *See Johnson v. NPAS Solns., LLC*, 975 F.3d 1244 (11th Cir. Sept. 17, 2020). A petition for rehearing en banc has been filed, and the Eleventh Circuit clerk of court has entered an order indicating that a judge of the Eleventh Circuit has withheld the issuance of the mandate for the panel's opinion. *See Dickenson v. NPAS Solutions, LLC*, 18-12344 (11th Cir. Nov. 9, 2020). Here, Plaintiffs request that the District Court reserve jurisdiction on this issue pending the Eleventh Circuit's final decision on service awards. (ECF Nos. 266 at 19, 20, 270 at 20). In the Motion seeking final approval of the Settlement Agreement, Plaintiffs further request that the $56,250 in potential Service Awards be held in escrow by the Settlement Administrator, pending resolution of the *Johnson* appeal, to be distributed to Participating Settlement Class Members if the holding of the panel of the Eleventh Circuit (forbidding service awards) is upheld. (ECF No. 270 at 20).

Based upon a review of the record and pending the Eleventh Circuit's mandate in *Johnson*, the undersigned agrees with Plaintiffs and recommends that the District Court reserve jurisdiction on this issue.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards (ECF No. 266) be **GRANTED** as follows:

1. Class counsel should be awarded $9,165,750 in fees (constituting 33.33% of the $27.5 million Class Payment) and $198,044.76 in expenses incurred in connection with the litigation through March 10, 2022.

2. The District Court should reserve jurisdiction to award service awards to Plaintiffs pending the Eleventh Circuits' mandate in *Johnson v. NPAS Solutions,* No. 18-12344 (11th Cir. Nov. 9, 2020) (withholding issuance of the panel's decision).

Within **seven (7) days** after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. J. R. 4(b). Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2021); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on March 10, 2022.

*/s/ Alicia O. Valle*
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Raag Singhal
    All Counsel of Record